## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PHILLIP LEE; PAMELA WHITE; PATRICIA VANDUSEN; RONALD ALLIX; and RANDY WELCH, individually and on behalf of others similarly situated, ) ) ) ) ) ) | |
| ) | Case No. 4:22-cv-12153 |
| ) | |
| Plaintiffs, ) | Hon. Shalina D. Kumar |
| ) | |
| vs. ) | |
| ) | |
| BELVOIR MEDIA GROUP, LLC, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT BELVOIR MEDIA GROUP, LLC'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant Belvoir Media Group, LLC ("Belvoir") respectfully moves this Court to dismiss Plaintiffs' Complaint with prejudice because Plaintiffs fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and seek relief for time-barred claims.

Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on November 17, 2022, they communicated to Plaintiffs' counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief. Plaintiffs' counsel stated that Plaintiffs would oppose this Motion.

Dated: November 21, 2022          Respectfully submitted,


                                  /s/ *Kristen C. Rodriguez*
                                  DENTONS US LLP
                                  Kristen C. Rodriguez
                                  Deborah H. Renner
                                  233 S. Wacker Drive, Suite 5900
                                  Chicago, IL 60606-6404
                                  Tel: (312) 876-8000
                                  kristen.rodriguez@dentons.com
                                  deborah.renner@dentons.com


                                  CLARK HILL PLC
                                  Peter B. Kupelian (P31812)
                                  Carol G. Schley (P51301)
                                  151 South Old Woodward Avenue,
                                  Suite 200
                                  Birmingham, MI 48009
                                  Tel: (248) 530-6336
                                  pkupelian@clarkhill.com
                                  cschley@clarkhill.com

                                  *Counsel for Defendant*,
                                  *Belvoir Media Group, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| PHILLIP LEE; PAMELA WHITE; PATRICIA VANDUSEN; RONALD ALLIX; and RANDY WELCH, individually and on behalf of others similarly situated, | ) ) ) ) ) ) | |
| | ) | Case No. 5:22-cv-12153 |
| | ) | |
| Plaintiffs, | ) | Hon. Shalina D. Kumar |
| | ) | |
| vs. | ) | |
| | ) | |
| BELVOIR MEDIA GROUP, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF DEFENDANT BELVOIR MEDIA GROUP, LLC'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iv

STATEMENT OF ISSUES PRESENTED ............................................... vii

STATEMENT OF CONTROLLING/MOST APPROPRIATE
AUTHORITY ......................................................................................... viii

INTRODUCTION ...................................................................................... 1

STATEMENT OF FACTS ........................................................................... 3

    I.    The Michigan PPPA Protects Against Invasion of Customers' Privacy. ............................................................................................. 3

    II.    Procedural History ...................................................................... 5

    III.    Plaintiffs Make Untimely, Conclusory Allegations of PPPA Violations. ................................................................................... 6

ARGUMENT ............................................................................................. 7

    I.    Plaintiffs Fail to State a Claim. ................................................... 7

    II.    Plaintiffs' Claims Are Barred by the Statute of Limitations .............. 13

        A.    Plaintiffs Fail to Allege When Their Claims Accrued, and Their Claims Thus Fail Even Under a Six-Year Limitations Period………………………………………………13

        B.    The Three-Year Limitations Period Applies…………………14

        C.    Plaintiffs Are Not Entitled to Class Action-Trolling…………16

            1.    Federal class action tolling rules govern in this case….16

            2.    Federal law precludes class action tolling here………..18

3.      Michigan law also would preclude class action
        tolling…………………………………………….…19

D.      Plaintiffs Are Not Entitled to Extend Their Filing Deadlines
        Pursuant to COVID Tolling…………………….…………….20

        1.      Michigan COVID-19 Orders do not apply here……….20

        2.      The plain language of the COVID-19 Orders renders
                tolling in appropriate here…………………………...21

III.    Dismissal with Prejudice is Warranted. ..................................................... 23

CONCLUSION ........................................................................................................24

## Table of Authorities

**Page(s)**

**Cases**

*American Pipe & Const. Co. v. Utah*,
    414 U.S 538 (1984).......................................................................*passim*

*Arent v. Hatch*,
    349 N.W.2d 536 (Mich. Ct. App. 1984)............................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................7, 8

*Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*,
    569 F. App'x 438 (6th Cir. 2014) .....................................................23

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................7, 8

*Bishop v. Lucent Techs., Inc.*,
    520 F.3d 516 (6th Cir. 2008) .............................................................9

*Browning v. Buko*,
    2022 WL 4117478 (Mich. Sept. 9, 2022)..........................................21

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800..........................................................................*passim*

*Cleary v. Am. Airlines*, Inc.,
    2022 WL 5320126 (N.D. Tex. July 22, 2022)..................................20

*Coulter-Owens v. Time Inc.*,
    695 Fed. App'x 117 (6th Cir. 2017) ...................................................4

*Cowles v. Bank W.*,
    719 N.W.2d 94 (Mich. 2006) ...........................................................19

*Dabish v. McMahon*,
    818 F. App'x 423 (6th Cir. 2020) .....................................................15

iv

*Derderian v. Genesys Health Care Sys.*,
    689 N.W.2d 145 (Mich. Ct. App. 2004) ............................................................ 14

*Fisher v. Perron*,
    30 F.4th 289 (6th Cir. 2022) ................................................................. 13

*Green v. Lansing Automakers Fed. Credit Union*,
    No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) .................... 14

*Hall v. Farm Journal, Inc.*,
    No. 2:21-cv-11811, ECF 26 (E.D. Mich. Apr. 5, 2022) ................................... 15

*In re Certified Questions from the U.S. District Court for the Western
    District of Michigan*,
    958 N.W.2d 1 (Mich. 2020) ................................................................. 23

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    446 F. Supp. 3d 218 (E.D. Mich. 2020) ............................................................ 20

*Krassick v. Archaeological Inst. of Am.*,
    No. 2:21-CV-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) .................... 15

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ................................................................. 7

*Long v. Insight Commc'ns of Cent. Ohio, LLC*,
    804 F.3d 791 (6th Cir. 2015) ................................................................. 13

*Marks v. Hulstrom*,
    No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010) .................... 15

*McCree v. Cont'l Mgmt., LLC*,
    No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021) .................... 15

*Nashel v. The New York Times*,
    No. 2:22-cv-10633-SJM-DRG, 2022 WL 6775657 (E.D. Mich.
    Oct. 11, 2022), ...................................................................... *passim*

*Porter v. S. Nevada Adult Mental Health Servs.*,
    788 F. App'x 525 (9th Cir. 2019) ................................................................. 19

*Pratt v. KSE Sportsman Media, Inc.*,
   No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) ................15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ...........................................................................................17

*TOMRA of N. Am., Inc. v. Dept. of Treasury*,
   952 N.W.2d 384 (Mich. 2020) .........................................................................17

*Torch v. Windsor Surry Co.*,
   No. 3:17-CV-00918-AA, 2019 WL 6709379 (Dec. 9, 2019) ...........................20

*Wheaton v. Apple Inc.*,
   No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25,
   2019) ..........................................................................................................11, 12

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
   413 F.3d 553 (6th Cir. 2005) ............................................................................20

## Statutes

28 United States Code
   § 1332(d) .........................................................................................................7, 17

Michigan Compiled Laws
   § 3.501 .......................................................................................................7, 17, 19
   § 445.1711, *et seq.* ............................................................................................1, 4
   § 445.1712 (1989) ........................................................................................1, 4, 8
   § 445.1715 (1989) ...............................................................................................4
   § 600.2940(1) ....................................................................................................15
   § 600.5805(2) ..............................................................................................14, 15
   § 600.5813 .........................................................................................................15
   § 750.147b .........................................................................................................15

## Rules and Regulations

Federal Rule of Civil Procedure
   Rule 8 ................................................................................................................14
   Rule 12(b)(6) .....................................................................................................13

## STATEMENT OF ISSUES PRESENTED

1.  Whether Plaintiffs' claims under the Michigan Preservation of Personal Privacy Act ("PPPA") should be dismissed because Plaintiffs fail to plausibly allege Defendant unlawfully disclosed their information in violation of the PPPA?

Defendant's Answer: YES.

2.  Whether Plaintiffs have failed to plead an actionable disclosure in violation of the PPPA within any relevant time period?

Defendant's Answer: YES.

3.  Whether Plaintiffs' claims are untimely in all events, even if a six-year limitations period applies, because they are not entitled to the benefit of any tolling of the statute of limitations?

Defendant's Answer: YES.

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for this Motion includes:

1. Federal Rule of Civil Procedure 12(b)(6).

2. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

3. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

4. Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-445.1715 (1989) (amended eff. July 31, 2016).

5. *Nashel v. The New York Times*, No. 2:22-cv-10633-SJM-DRG, 2022 WL 6775657 (E.D. Mich. October 11, 2022).

6. *Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

7. *Dabish v. McMahon*, 818 F. App'x 423 (6th Cir. 2020).

8. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).

9. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

## INTRODUCTION

Plaintiffs allege Defendant Belvoir Media Group, LLC ("Belvoir"), publisher of magazines such as *Kitplanes* and *Focus on Healthy Aging*, wrongfully disclosed their "Private Reading Information" ("PRI") in purported violation of the pre-July 31, 2016 version of Michigan's Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq*. (the "PPPA"). Plaintiffs' counsel initially filed essentially the same action, with a different named plaintiff, in the Western District of Michigan on May 30, 2022, and then amended their complaint to add named plaintiffs. Belvoir moved to dismiss that action for failure to state a claim and on statute of limitations grounds. Plaintiffs' counsel then voluntarily dismissed that action and filed the instant action, with new named plaintiffs, in this Court. Despite Plaintiffs' counsel's forum shopping, this Complaint is as deficient as the last complaints brought against Belvoir for three reasons, none of which is capable of being cured by further amendment:

*First*, the Complaint, which is almost verbatim to the prior complaints, consists of nothing more than vague and conclusory allegations, pled for the most part on information and belief, that fail to state a claim for a violation of the PPPA. Subject to certain exceptions, the PPPA prohibits disclosures of "information concerning the purchase" of written materials by a customer "that indicates the identity of the customer." M.C.L. § 445.1712 (1989). But the Complaint contains no specific allegations of the actual disclosure of any customer's information, let alone Plaintiffs'

information. Significantly, in a substantially similar case in this District, Judge Stephen J. Murphy, III recently dismissed a PPPA action with prejudice for failing to adequately plead disclosure, even when the allegations supporting disclosure were more detailed than here. *Nashel v. The New York Times*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022), attached hereto as Exhibit 1.

*Second*, the claim in this case stems from conduct allegedly occurring before July 31, 2016. Plaintiffs' counsel made the decision to bring this suit exclusively under the prior version of the PPPA, which only ran through July 30, 2016. Plaintiffs' claims are untimely because a three-year limitations period should apply, rendering claims brought after July 30, 2019 untimely.

*Third,* Plaintiffs will thus argue that a six-year limitations period should apply to their claims. But even that limitations period cannot save their claims because this case was filed on September 12, 2022, 44 days after the cut-off even under a six-year limitations period. Therefore, Plaintiffs must argue that the limitations period was tolled in order for their claims to be actionable. They likely will argue that they can rely on the class action filed against this Defendant by this same Plaintiffs' counsel in the Western District of Michigan to toll the limitation period—so called "class action tolling." They also will likely argue that Governor Whitmer's Executive Orders and the Michigan Supreme Court's Administrative Orders implemented in response to the COVID-19 pandemic (the "COVID-19 Orders") are

- 2 -

applicable and save their claims. But none of these "tolling" theories resuscitate their stale claims. Under the Supreme Court's decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), Plaintiffs are not entitled to class action tolling based on previous actions filed by their counsel, because as is the case here, it will inexorably lead to the filing of otherwise stale claims so long as Plaintiffs' counsel plays the game of filing and dismissing putative class actions before they can be decided upon by a court. The U.S. Supreme Court's *China Agritech* decision put a stop to such judicial gamesmanship. Nor was Plaintiffs' time to file this action extended by the COVID-19 Orders because those Orders only tolled filing deadlines that fell *within* the declared state of emergency, and Plaintiffs' deadlines did not.

Plaintiffs' counsel have played fast and loose here, filing and dismissing actions with different named plaintiffs in an effort to extend their time to file. The Court should not countenance their judicial legerdemain and should dismiss their third attempt to bring a viable action against Belvoir. The Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### I.     The Michigan PPPA Protects Against the Invasion of Customers' Privacy.

The Michigan Legislature passed the PPPA in the wake of a federal statute, the "Video Privacy Protection Act," which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper.

*Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 (attached to Compl. as Ex. B, ECF 1-3, PageID.12). However, Michigan's law went further than the federal Act. (*Id.*) In addition to video rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials." M.C.L. § 445.1712.

The allure of class actions under the PPPA was a statutory damages provision that permitted an action for actual damages *or* $5,000 in statutory damages, whichever was greater. M.C.L. § 445.1715 (1989). But in 2016, the Michigan Legislature amended the PPPA (the "2016 Amendment").[1] Among other things, the 2016 Amendment expressly removed the provision for $5,000 statutory damages, and in its place, provided only for actual damages. MCL § 445.1715(2) (2016). The 2016 Amendment took effect July 31, 2016. Thus, July 30, 2016 was the last day the $5,000 statutory damages provision was in place.[2]

## II.   Procedural History.

***The First Lawsuit (Western District).*** On May 30, 2022, a single plaintiff, Jason Taylor, filed a class-action suit against Belvoir in the District Court of the

---

[1] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at MCL § 445.1711 *et seq.* (2016)).

[2] The Sixth Circuit ruled that the 2016 Amendment applies only prospectively. *Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117, 121 (6th Cir. 2017).

- 4 -

Western District of Michigan. *Taylor v. Belvoir Media Group, LLC*, No. 1:22-cv-00477, ECF No. 1 (E.D. Mich. May 30, 2022). Not only was Taylor represented by the same counsel as Plaintiffs, but his complaint is identical to Plaintiffs' Complaint here. On July 23, 2022, an amended complaint was filed in the Western District action, adding five newly named plaintiffs. *Id.*, at ECF No. 15. Belvoir filed a Motion to Dismiss on August 19, 2022. *Id.* at ECF No. 20. Before filing any resistance, the Western District plaintiffs voluntarily dismissed their action against Belvoir on September 14, 2022. *Id.* at ECF No. 24. Plaintiffs' counsel did not allow the court to rule on the substance of their claims or whether the putative class could be certified. Instead, they ran to another court, this Court, with new named plaintiffs in the hopes of finding a favorable forum.

**This Second, Untimely Lawsuit**. Plaintiffs filed this class-action suit on September 12, 2022, two days *prior to* the dismissal of the Western District case on September 14, 2022, seeking to represent the same putative class: "Michigan residents who, at any point during the relevant pre-July 31, 2016 time period, had their Private Reading Information disclosed to third parties by Belvoir without consent (the "Class")." (Compl. at ¶ 53; *Taylor*, ECF No. 15, at ¶ 54.) Plaintiffs named in the current Eastern District action were not named in the Western District lawsuit. However, they were putative class members in the Western District case

because, according to their Complaint, their PRI was allegedly improperly disclosed

"during the relevant pre-July 31, 2016 time period." *Id.* at ECF No. 1, ¶ 1.

## III.   Plaintiffs Make Untimely, Conclusory Allegations of PPPA Violations.

In their Complaint, Plaintiffs broadly and baldly claim Belvoir "rented,

exchanged, and/or otherwise disclosed detailed information" about its customers'

"Private Reading Information,"—*i.e.*, names, home addresses, and the "titles of

publications subscribed to"—to third parties without consent or notice, and that such

alleged disclosures violated the PPPA. (*See e.g.*, Compl. ¶¶ 1, 5-8.) Plaintiffs offer

no facts whatsoever to support their sweeping allegations that Belvoir disclosed

identifying information about any customer—much less the Plaintiffs—at any

time—let alone sometime prior to pre-July 31, 2016. Although Plaintiffs allege they

have "[d]ocumented evidence" that Belvoir "rented, exchanged, and/or otherwise

disclosed" the Plaintiffs' Private Reading Information prior to July 31, 2016 (*id.* ¶

1-2), that "evidence" is a recent NextMark, Inc. ("NextMark") data card dated April

30, 2022, which says nothing about 2016. (*Id.* ¶ 2, Ex. A.)

Plaintiffs seek to represent a class of all Michigan residents who allegedly had

their PRI disclosed to third parties by Belvoir without their consent prior to July 31,

2016. (*Id.* ¶ 53.) Plaintiffs' allegations and those of the putative class are brought

under the pre-July 31, 2016 version of the PPPA to take advantage of the $5,000

statutory penalty available under that version of the statute, avoid the obligation to

plead each class member's actual damages, and meet the aggregate amount necessary for federal jurisdiction, as the identical class action is not allowed in Michigan state court (*Id.* ¶ 1, n. 2.) [3]

## ARGUMENT

### I.   Plaintiffs Fail to State a Claim.

To survive a motion to dismiss, Plaintiffs must allege facially plausible *facts* surrounding their claims that Belvoir is liable under the PPPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("[A] formulaic recitation of a cause of action's elements will not do."). In other words, a plaintiff's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d

---

[3] Michigan Court Rule 3.501(A)(5) does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. To circumvent this prohibition, Plaintiff seeks to invoke federal jurisdiction through the Class Action Fairness Act, 28 U.S.C. § 1332(d). (*See* Compl. ¶ 15; *see also infra* at Section II(C).)

523, 527 (6th Cir. 2007) (emphasis in original). And of course, a court must not presume the truth of legal conclusions in a complaint. *Iqbal*, 556 U.S. at 678.

Here, the Complaint is devoid of any actual facts supporting Plaintiffs' allegations that Belvoir unlawfully disclosed their PRI in violation of the PPPA. To plead a claim under the PPPA, a plaintiff must allege facts that, if proved, would show both that (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information. M.C.L. § 445.1712 (prohibiting disclosure "to any person, other than the customer, [of] a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer.").

Plaintiffs' PPPA claims are broad and conclusory, cut and paste allegations, pled largely on information and belief, that Belvoir disclosed subscriber names and addresses to unnamed "data aggregators, data appenders, data cooperatives, and list brokers . . . during the relevant pre-July 31, 2016 time period." (Compl. ¶ 1.) Plaintiffs do not substantiate this barebones statement, thus failing to provide sufficient facts from which this Court could draw a plausible inference that Belvoir violated Plaintiffs' rights under the PPPA in 2016. *See Ashcroft*, 556 U.S. at 678; *Nashel*, 2022 WL 6775657, at *4-6 (Ex. 1).

In *Nashel*, a PPPA action filed by the same plaintiff's counsel as here, Judge Murphy granted defendant's motion to dismiss for failure to plead a plausible claim under the PPPA. *Id.* Just as Plaintiffs attempt to do here with their citation to a 2022 data card published by a third party, the *Nashel* plaintiffs supported the allegations in their complaint with third-party data cards from a different time period. *Nashel*, No. 2:22-cv-10633, ECF No. 16, PageID.687-88 (submitting data cards from nearly a decade before the relevant 2016 time period). The *Nashel* plaintiffs went even further, however, and made allegations about the defendant's privacy policy and cited a case study concerning Virginia Beach renting a list of defendant's subscriber's email addresses. *Id.* at PageID.689-90.

Nonetheless, the *Nashel* court found that "Plaintiff's allegations, even in light of that evidence, fail to clear the plausibility threshold." *Nashel*, No. 2022 WL 6775657, at *4. Judge Murphy found that the evidence relied upon by plaintiffs— the third-party data cards, the defendant's privacy policy, and the Virginia Beach case study—"create[d] only suspicion as to whether Defendant violated the PPPA during the pre-July 31, 2016 period." *Id.* And, "a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Id.* (citing *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)).

- 9 -

Here, as in *Nashel*, Plaintiffs create, if anything, nothing more than mere suspicion of a PPPA violation, which is insufficient to satisfy *Iqbal*. As an initial matter, the sole piece of so-called "documented evidence" Plaintiffs rely upon is a third-party data card published by NextMark, similar to the one attached to the *Nashel* complaint. (Compl. ¶ 2; Ex. A.) Neither the timing nor the content of this data card supports Plaintiffs' allegations that Belvoir violated the PPPA in the pre-July 31, 2016 time period. At most, the data card shows that after April 30, 2022—nearly *six years* after any alleged statutory violation—a third party offered to sell certain information about some of Belvoir's active subscribers. (*Id.*) Just as in *Nashel*, the relied upon data card from an irrelevant time period does not rise to the level of the requisite plausible inference. *Iqbal*, 556 U.S. at 678; *Nashel*, 2022 WL 6775657, at *4-6.

Plaintiffs' allegations here necessarily rely "on a legal-conclusion inference" that Defendant systematically violated the PPPA from 2022 backwards to 2016. *Nashel*, 2022 WL 6775657, at *5 (Ex. 1). This Court cannot "presume the truth of legal conclusions" and because "Plaintiffs cannot otherwise account for the . . . time gap, the data cards make the complaint's allegations merely *possible* rather than plausible." *Id.* (internal citation omitted).

In any event, the content of this data card or any "similar" data card does not establish that Belvoir plausibly violated the PPPA. The data card provides no

suggestion as to what information was accessible through the mailing list. (Compl. ¶ 2; Ex. A.) Nor does the data card explain the source of any information available in the mailing list, meaning that there is no connection between the data card and any alleged conduct by Belvoir. (FAC ¶ 2, Ex. A.) As a result, "nothing on the data cards explains how [NextMark] received Defendant's subscription list" and therefore "fail[s] to support a crucial element of Plaintiffs' alleged action: that *Defendant* engaged in the business of selling written material to disclose information personally identifying the customer." *Nashel*, No. 2022 WL 6775657, at *5 (Ex. 1). (internal citation omitted). This is a "gaping omission" that requires a "large inferential leap" to connect Belvoir's alleged conduct to the data cards, and Plaintiffs fail to "create a reasonable inference of Defendant's culpability." *Id.*

In addition to *Nashel*, in another action alleging claims under the Michigan PPPA brought by the same lawyers as here, the court dismissed a similar complaint against Apple for failure to plead plausible facts supporting its PPPA claim. *See Wheaton v. Apple Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), attached hereto as Exhibit 2. Just as in the Complaint against Belvoir, the *Wheaton* plaintiffs claimed that "to supplement its revenues," Apple "rents, transmits, or otherwise discloses" its customers' private information "to data aggregators, data miners, data brokers, data appenders, and other third parties." *Id.*

- 11 -

*Wheaton* found that plaintiffs' PPPA "complaint fail[ed] to plausibly allege with enough facts that Apple disclosed plaintiffs' personal listening information to third-party data brokers and similar entities," and the complaint's exhibits, including similar data cards as to the one Plaintiff relies on here, "d[id] not show that Apple disclosed customers' personal listening information." 2019 WL 5536214, at *5. The same result should follow here.

Finally, the only other remaining allegation supporting Plaintiffs' claims of PRI disclosure here is that she allegedly saw a "barrage of unwanted" junk mail during the undefined relevant timeframe. (Compl. ¶ 1.) But Plaintiffs do not specify any causal connection between their subscription to a Belvoir publication and that uptick. (*Id.*) There could be any number of reasons for an uptick in their junk mail, including for the reasons Plaintiffs themselves plead.[4] Moreover, if Belvoir had been making monthly disclosures of all customers' information, why would Plaintiffs suddenly receive a "barrage of unwanted" junk mail only during a short window of time in 2016? This implausible allegation is incapable of supporting Plaintiffs' claims. *Iqbal*, 556 U.S. at 678; *see also Nashel*, ECF No. 25, PageID.1457 (same "uptick in junk mail" arguments, which did not sway court).

---

[4] *See* Compl. ¶¶ 26-37 (describing a vast "information marketplace" where "data aggregators purchase, trade, and collect massive databases of information about consumers" from "*numerous offline and online sources*.") (emphasis added).

- 12 -

Without factual allegations "facially support[ing] the conclusion" that their personal information was wrongfully disclosed to a third party, Plaintiffs have not pled the requirements for a claim under the PPPA. *Bishop*, 520 F.3d at 520. The Sixth Circuit has consistently found that bare allegations of purported disclosures are insufficient in cases alleging illegal disclosures of private information. *Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022) (bare allegations of disclosure insufficient in case alleging disclosure of private information); *Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 792 (6th Cir. 2015) (affirming dismissal of a claim under the Stored Communications Act because plaintiffs failed to plead that the defendant knowingly or intentionally divulged plaintiffs' information).

In sum, Plaintiffs have not and cannot cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (internal citation omitted). Their claims must be dismissed with prejudice under Rule 12(b)(6).

## II.     Plaintiffs' Claims Are Barred by the Statute of Limitations.

### A.     Plaintiffs Fail to Allege When Their Claims Accrued, and Their Claims Thus Fail Even Under a Six-Year Limitations Period.

Plaintiffs allege that a six-year limitations period should be applied to their claims. (Compl. ¶ 1, n. 1.) As discussed below, Belvoir contends the applicable period is three years. But under either scenario, Plaintiffs have failed to plead that their claims are timely, as this Court can make no reasonable inference as to the date Plaintiffs' claims accrued in the threadbare Complaint. *See Iqbal*, 556 U.S. at 678;

Fed. R. Civ. P. 8(a). Here, Plaintiffs plead only that they are subscribers and then allege in a conclusory fashion that their PRI was disclosed at some point in 2016. But Plaintiffs must plead an entitlement to relief within the narrow pre-July 30, 2016 timeframe because that is the exclusive basis for her claims so that she may attempt to recover statutory damages.  They have not adequately pled that their PRI was disclosed then, or at any time. Plaintiffs simply have not met even the low bar of an "entitlement to relief" under Rule 8 given this pleading deficiency.

### B.    The Three-Year Limitations Period Applies.

M.C.L. § 600.5805(2) provides that "the period of limitations is 3 years after the time of the death or injury for *all* actions to recover damages for the death of a person or for injury to a person or property." Michigan courts consistently apply Section 600.5805(2)'s three-year statute of limitations to common law privacy-based claims. *See, e.g., Green v. Lansing Automakers Fed. Credit Union*, No. 342373, 2019 WL 3812108, at *5 (Mich. Ct. App. Aug. 13, 2019) (three-year limitation period applied to invasion of privacy, unlawful intrusion claim); *Derderian v. Genesys Health Care Sys*., 689 N.W.2d 145, 159-60 (Mich. Ct. App. 2004) (three-year limitations period applied to invasion of privacy, false-light claim); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (three-year limitations period applied to invasion of privacy claim).

Nevertheless, Plaintiffs contend that a PPPA claim should be subject to the catch-all six-year limitations period in M.C.L. § 600.5813 because the PPPA does not contain an express limitations period.[5] (Compl. ¶ 1 n.1.) But there are decades of Michigan cases that have applied the three-year limitations in Section 600.5805(2) to *statutory* claims that, as here, allege injury to *persons*, even when the statute was otherwise silent on a limitations period. *See e.g.*, *Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir. 2020) (three-year limitations period applies to claims brought under Michigan's Ethnic Intimidation statute, M.C.L. § 750.147b, a specific right not found in common law); *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010) (applying Section 600.5805(2)'s limitations period to statutory nuisance claim under M.C.L. § 600.2940(1)); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (holding that the three-year limitations period applies to the Housing Act of Michigan and Truth in Renting Act).

---

[5] Although three judges in this District and one judge in the Western District of Michigan agree with Plaintiffs' position, holding the "catch all" six-year limitations period under M.C.L. § 600.5813 applies to PPPA claims, there has yet to be a Sixth Circuit or Michigan Supreme Court holding on the applicable limitations period for a PPPA claim. *See Pratt v. KSE Sportsman Media, Inc.*, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) (Ludington, J.); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) (Lawson, J.) slip op.; and *Krassick v. Archaeological Inst. of Am.*, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022) (Jarbou, J.); *Nashel*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) (Murphy, J.).

## C.     Plaintiffs Are Not Entitled to Class Action Tolling.

Plaintiffs' Complaint is untimely no matter which limitations period this Court applies because the Complaint was filed 44 days after the July 30, 2022 deadline applicable under a six-year limitations period. Belvoir expects that Plaintiffs will urge this Court to do one of the following to solve their statute of limitations problem: 1) toll the limitations period pursuant to Michigan state law based on the filing of the prior complaint in the Western District; 2) toll the limitations period pursuant to the COVID-19 Orders; or 3) a combination of the two. Plaintiffs are not entitled to tolling under any of these theories because 1) federal law, which this Court should find applies to the tolling question here, does not allow Plaintiffs to toll the statute of limitations from the filing date of the Western District complaint; and 2) the plain language of the COVID-19 Orders only allows pandemic tolling if the deadline to file this action fell during Michigan's state of emergency, which it did not.

### 1.     Federal class action tolling rules govern in this case.

The U.S. Supreme Court's recent decision in *China Agritech* precludes the class action tolling Plaintiffs seek to employ here: untimely successive class actions that "allow 'lawyers seeking to represent a plaintiff class [to] extend the statute of limitations almost indefinitely until they find a district court judge who is willing to

certify the class.'" *China Agritech, Inc.* 138 S. Ct. at 1808 (citing *Yang v. Odom*, 392 F.3d 97, 113 (3d Cir. 2004)).

And there can be no doubt that *China Agritech* applies here, despite the fact that the PPPA is a state statute. Here, the sole source of federal jurisdiction over this action is through the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d). Significantly, Michigan does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. MCR 3.501(A)(5). To circumvent this prohibition, Plaintiffs use a jurisdictional loophole by explicitly invoking federal jurisdiction through CAFA in their Complaint and bringing their action under Fed. R. Civ. P. 23. (*See* Compl. ¶ 15.) *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (holding Rule 23 permits a federal court sitting in minimal diversity to entertain a class action based on alleged violation of a state statute, even if that statute's rules would not permit such an action otherwise).

Because this Court only has jurisdiction through CAFA and the case is brought under Fed. R. Civ. P. 23, the Court must apply federal class tolling rules. Moreover, because Michigan does not and would not allow PPPA class actions in state court, the Michigan legislature never envisioned Michigan's class action tolling rules to be applied to this particular type of action. *TOMRA of North America, Inc. v. Dept. of Treasury*, 952 N.W.2d 384, 392-93 (Mich. 2020) (holding Michigan

- 17 -

courts read statutes as a whole "in view of its structure and of the physical and logical relation of its many parts."). The Court must therefore apply federal class action tolling to this case.

### 2.    Federal law precludes class action tolling here.

The U.S. Supreme Court first allowed for class action tolling in *American Pipe,* 414 U.S. at 552-53, and recently re-evaluated and limited the availability of such tolling precisely to avoid the filing of endless class actions in *China Agritech*.

*China Agritech* made clear that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action." 138 S. Ct. at 1806. Furthermore, the Court held that *American Pipe* and its progeny only addressed tolling for putative class members who choose to sue "individually" after the initial class action was unsuccessful.

The Court in *China Agritech* reasoned that "[t]he 'efficiency and economy of litigation' that support tolling of individual claims do not support maintenance of untimely successive class actions . . . ." *Id.* at 1806. An alternative reading

> would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation. . . . [T]olling for successive class actions could allow lawyers seeking to represent a plaintiff class [to] extend the statute of limitations almost indefinitely until they find a district court judge who is willing to certify the class . . . allow[ing] plaintiffs limitless bites at the apple.

*Id.* at 1808 (quotations omitted). Limiting class action tolling to successive individual actions properly balances the judicial economy gained by limiting a multiplicity of filings and the finality afforded to defendants by statutes of limitations. "The watchwords of *American Pipe* are efficiency and economy of litigation. . . . Extending *American Pipe* tolling to successive class actions does not serve that purpose." *Id.* at 1811.

Here, as set forth above, Plaintiffs' counsel seeks to do exactly what *China Agritech* sought to avoid—the filing of repetitive claims in which each class action stacks one on top of the other for an indefinite period of time—by filing an untimely class action *after* a timely class action encompassing the same putative class representatives was dismissed.

### 3.   Michigan law also would preclude class action tolling.

Even if, *arguendo*, Michigan state tolling law, as codified in M.C.R. 3.501(F), applied here, tolling would still not be permitted under these circumstances. Michigan has expressed the intention to interpret its tolling rule in a manner consistent with federal law. *See Cowles v. Bank W*., 719 N.W.2d 94, 109-110 (Mich. 2006); MCR 3.501(F). Where state courts have "adopted federal class action tolling principles," courts may use federal precedent to interpret the state rule. *Porter v. S. Nevada Adult Mental Health Servs*., 788 F. App'x 525, 526 n.2 (9th Cir. 2019) (applying *China Agritech* without resolving whether state class tolling rules applied

in federal class actions under Rule 23); *Torch v. Windsor Surry Co.*, No. 3:17-CV-00918-AA, 2019 WL 6709379, at *7 (D. Or. Dec. 9, 2019) (dismissing claims under *China Agritech* where Oregon law adopted *American Pipe*). *Cf. Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 567 (6th Cir. 2005) (noting that the district court and parties agreed that Ohio *American Pipe*-style class tolling rules applied, but "looked to federal class action principles for guidance in applying class action tolling"). Thus, the reasoning of *China Agritech* should apply under state law as well, precluding this action.[6]

### D.   Plaintiffs Are Not Entitled to Extend Their Filing Deadline Pursuant to COVID Tolling.

Belvoir anticipates Plaintiffs will ask this Court to apply additional tolling based on the COVID-19 Orders. There are two potential sources of law for such tolling: (a) Executive Orders 2020-58 and 2020-122 issued by the Governor of Michigan on April 22, 2020 and June 12, 2020, respectively; and (b) Administrative Orders 2020-3, 2020-8, and 2020-18, promulgated by the Michigan Supreme Court

---

[6] Additionally, federal courts siting in diversity routinely apply *China Agritech* to state law claims. In the Eastern District of Michigan, Judge David M. Lawson dismissed untimely class claims under a Florida statute under *China Agritech* but held that *American Pipe* tolled the named plaintiff's individual claim, over the defendant's objections that Florida law did not permit class tolling. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 224; ECF No. 292, PageID.8749-50; ECF. No. 339, PageID.16798-800 (E.D. Mich. 2020). *See, e.g.*, *Cleary v. Am. Airlines*, Inc., 2022 WL 5320126, at *3-*4 (N.D. Tex. July 22, 2022) (applying *China Agritech* to Texas breach of contract claims).

on March 23, 2020, May 1, 2020, and June 12, 2020, respectively. Putting aside the unconstitutionality of the COVID-19 Orders, which has not yet been fully resolved, and which Belvoir reserves the right to challenge,[7] the plain language of the orders themselves does not confer additional time to file years after the state of emergency has ceased.

The explicit intent of the orders was "to extend **all deadlines** pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters **during the state of emergency** declared by the Governor related to COVID-19." Mich. Sup. Ct., Administrative Order No. 2020-3 (March 23, 2020) (emphasis added); *see also*. Executive Order No. 2020-58.

And although the Michigan Supreme Court and Governor Whitmer rescinded their initial COVID-19 Orders on June 12, 2020, the subsequent Orders providing for COVID-tolling periods contained the same tolling limitation: "all **deadlines** applicable to the commencement of all civil and probate actions and proceedings . . . are tolled from March 10, 2020[8] to June 19, 2020." Executive Order No. 2020-122

---

[7] *See In re Certified Questions from the U.S. District Court for the Western District of Michigan*, 958 N.W.2d 1, 24 (Mich. 2020) (holding the executive orders issued after April 30, 2020 exceeded state statutory and constitutional authority); *see also Browning v. Buko*, 2022 WL 4117478, at \*197 (Mich. Sept. 9, 2022) (Viviano, J., dissenting) (noting significant concern with the constitutionality of the COVID-19 Orders that the Michigan Supreme Court should address).

[8] Governor Whitmer's first executive order was issued on March 10, 2020, which declared the state of emergency across the state of Michigan. Executive Order No. 2020-4.

(emphasis added); *see also* Mich. Sup. Ct., Administrative Order No. 2020-18 (June 12, 2020).

Plaintiffs will likely suggest they are entitled to 101 days of tolling under the various COVID-19 Orders despite having no filing **deadlines** between March 10, 2020 and June 20, 2020 and despite their failure to allege that they could not have filed this action sooner. The plain language of the COVID-19 Orders allow only for the tolling of deadlines that fall within the declared states of disaster and emergency. *Id.* Under Plaintiffs' logic, any plaintiff with a statute of limitations period that expires after the close of Michigan's state of emergency would still be entitled to 101 more days to file their complaint pursuant to the COVID-19 Orders. For example, under Plaintiffs' theory, if an individual breached a contract in Michigan on March 1, 2020—just prior to the declared state of emergency—the plaintiff would still have an additional 101 days past the close of the six-year statute of limitations on March 1, 2026 to file a claim, to and including June 10, 2026, even though years have passed after the state of emergency was rescinded. This makes little sense.

Although some courts have found that the COVID-19 Orders allowed for additional time to file even when the limitations period did not end during the declared state of emergency, some of those cases were decided without the benefit of contested briefing, and in all events, none of them were class actions or occurred in the context of the egregious gamesmanship that Plaintiffs' counsel has

demonstrated here.[9] Additionally, Plaintiffs' counsel has been filing PPPA class actions for *years* and were not stopped from commencing such actions in federal court during the declared state of emergency.[10] Plaintiffs' demand for additional tolling through the COVID-19 Orders is a misuse of the legal system in their continued quest for millions of dollars of statutory damages for these long-dead claims.

## III. Dismissal with Prejudice is Warranted.

This is the third attempt Plaintiffs' counsel have made to articulate a cognizable PPPA claim against Belvoir. Even with the benefit of Belvoir's first motion to dismiss, and the opportunity to revise their vague and conclusory claims for this action, Plaintiffs have still failed to do so. Having presumably put forth Plaintiffs' best allegations here, it is clear that Plaintiffs cannot cure the pleading deficiencies or the fundamental defects of their claims. *See Asset Mgmt. One LLC v.*

---

[9] *Bownes v. Borroughs Corp.*, 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021) (COVID-tolling was uncontested); *Bowles v. Sabree*, 2022 WL 141666, at *9 (E.D. Mich. Jan. 14, 2022) (defendant conceded the argument as to COVID-tolling by failing to address it); *Mackey v. Rising*, 2021 WL 4034226, at *2 (E.D. Mich. Sept. 3, 2021).

[10] Plaintiffs may also claim that they are further entitled to extend their class period backwards pursuant to the COVID-19 Orders, in addition to receiving more time to file, as their counsel has argued in other cases. *See Gaines v. National Wildlife Federation*, 5:22-cv-11173, ECF No. 21, PageID.1267-68, n. 2 (E.D. Mich. 2022) (arguing that with the COVID-tolling, "the six-year limitation period governing Plaintiff's claims reaches back."). But that argument has even less support in the plain language of the Orders, which refers exclusively to filing submission dates.

*U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 443 (6th Cir. 2014) (dismissal with prejudice proper where plaintiff "could prove no set of facts in support of its allegations that would entitle it to relief" rendering amendment futile). Accordingly, any attempt by Plaintiffs to amend would be futile, and Plaintiffs' Complaint should be dismissed with prejudice, as the *Nashel* court did in similar circumstances.

## CONCLUSION

For the foregoing reasons, Belvoir respectfully requests that the Complaint be dismissed with prejudice.

Date: November 21, 2022              Respectfully submitted,

/s/ *Kristen C. Rodriguez*
DENTONS US LLP
Deborah Renner
Kristen C. Rodriguez

CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
*Counsel for Defendant*, *Belvoir Media Group*

- 24 -

## <u>Certificate of Service</u>

I hereby certify that on November 21, 2022, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ <i>Kristen C. Rodriguez</i>
Kristen Rodriguez

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| PHILLIP LEE; PAMELA WHITE; PATRICIA VANDUSEN; RONALD ALLIX; and RANDY WELCH, individually and on behalf of others similarly situated,<br><br>         Plaintiffs,<br><br>   vs.<br><br>BELVOIR MEDIA GROUP, LLC,<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 5:22-cv-12153<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**INDEX OF EXHIBITS CITED IN DEFENDANT BELVOIR MEDIA
GROUP, LLC'S MOTION TO DISMISS COMPLAINT AND
<u>BRIEF IN SUPPORT</u>**

**Exhibit 1:** Omnibus Opinion and Order, *Nashel v. The New York Times,* No. 2:22-cv-10633-SJM-DRG, ECF No. 30 (E.D. Mich. Oct. 11, 2022).

**Exhibit 2:** Unpublished opinion, *Wheaton v. Apple Inc.,* No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).