## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

PHILLIP LEE; PAMELA WHITE; )
PATRICIA VANDUSEN; RONALD )
ALLIX; and RANDY WELCH, )
individually and on behalf of others )
similarly situated, )
                                  )  Case No. 4:22-cv-12153
                                  )
             Plaintiffs, )  Hon. Shalina D. Kumar
                                  )
    v. )
                                    )
BELVOIR MEDIA GROUP, LLC, )
                                    )
                        Defendant. )

## DEFENDANT BELVOIR MEDIA GROUP, LLC'S
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Belvoir Media Group, LLC ("Belvoir") respectfully moves this Court to dismiss Plaintiffs' First Amended Complaint ("FAC") with prejudice because: (i) Plaintiffs seek relief for time-barred claims; (ii) Plaintiffs fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); and (iii) the named Plaintiffs lack statutory and Article III standing to sue.

Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on January 22, 2023 and January 24, 2023 they communicated to Plaintiffs' counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief. Plaintiffs' counsel stated that Plaintiffs would oppose this Motion.

Dated: January 27, 2023    Respectfully submitted,


/s/ *Kristen Rodriguez*
DENTONS US LLP
Kristen C. Rodriguez
Deborah H. Renner
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606-6404
Tel: (312) 876-8000
kristen.rodriguez@dentons.com
deborah.renner@dentons.com


CLARK HILL PLC
Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
151 South Old Woodward Avenue,
Suite 200
Birmingham, MI 48009
Tel: (248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant,*
*Belvoir Media Group, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| PHILLIP LEE; PAMELA WHITE; PATRICIA VANDUSEN; RONALD ALLIX; and RANDY WELCH, individually and on behalf of others similarly situated, | **)** **)** **)** **)** **)** **)** | |
| | **)** | Case No. 4:22-cv-12153 |
| Plaintiffs, | **)** **)** | Hon. Shalina D. Kumar |
| v. | **)** **)** | |
| BELVOIR MEDIA GROUP, LLC, | **)** **)** | |
| Defendant. | **)** **)** **)** | |

## BRIEF IN SUPPORT OF DEFENDANT BELVOIR MEDIA GROUP, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................4

I.   Michigan State Law Prohibits PPPA Class Actions in State Court, So This Case Was Filed in Federal Court Pursuant to CAFA.............................4

II.   The Pre-July 31, 2016 Version of the Michigan PPPA...................................4

    A.   The Availability of Statutory Damages Incentivizes the Plaintiffs' Bar to Sue. ............................................................................ 4

    B.   The PPPA Is Amended, Removing Statutory Damages. ...................... 5

    C.   Plaintiffs' Counsel Sue Under the Pre-July 31, 2016 Version of the PPPA........................................................................................... 6

III.   The FAC Is Plaintiffs' Counsel's Fourth Attempt to Bring a Viable Class Action Against Belvoir. ......................................................................7

IV.   Plaintiffs Make Untimely, Conclusory Allegations of PPPA Violations.....................................................................................................8

V.   The Named Plaintiffs Were Not Subscribers. ..............................................10

ARGUMENT .......................................................................................................10

I.   Plaintiffs' Claims Are Time-Barred. ...........................................................10

    A.   Plaintiffs Are Not Entitled to Class Action Tolling. .......................... 11

        1.   Federal class action tolling rules govern in this case................11

        2.   Federal law precludes successive class action tolling here.......................................................................................13

        3.   In any event, Michigan follows the Federal tolling rules. ........15

    B.   The COVID-19 Orders Are Inapplicable. .......................................... 16

C.     The Three-Year Limitations Period Applies, Rendering
       Plaintiffs' Claims Time-Barred Even if Tolling Were Permitted...... 20

II.    Plaintiffs Fail to State a Claim.........................................................................22

III.   Plaintiffs Lack Standing to Sue. ..................................................................28

CONCLUSION .....................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974)........................................................................12, 13

*Arent v. Hatch*,
    349 N.W.2d 536 (Mich. Ct. App. 1984)...........................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................22, 23, 24

*Bishop v. Lucent Techs., Inc.*,
    520 F.3d 516 (6th Cir. 2008) ........................................................24, 28

*Boelter v. Hearst Comms, Inc.*,
    269 F. Supp. 3d 172 (S.D.N.Y. 2017) ...............................................13

*Bowles v. Sabree*,
    No. 20-cv-12838, 2022 WL 141666 (E.D. Mich. Jan. 14, 2022)......................18

*Bownes v. Borroughs Corp.*,
    No. 20-cv-964, 2021 WL 1921066 (W.D. Mich. May 13, 2021) ......................18

*Browning v. Buko*,
    No. 163538, 2022 WL 4117478 (Mich. Sept. 9, 2022)......................................20

*Cartwright v. Garner*,
    751 F.3d 752 (6th Cir. 2014) ...............................................................28

*Casey v. Merck & Co. Inc.*,
    653 F.3d 95 (2d Cir. 2011) ...................................................................13

*In re Certified Question from U.S. Ct. of Appeals for Ninth Cir.*,
    885 N.W.2d 628 (Mich. 2016)............................................................29

*In re Certified Questions from the U.S. District Court for the Western
District of Michigan*,
    958 N.W.2d 1 (Mich. 2020).................................................................19

*China Agritech, Inc. v. Resh*,
  138 S. Ct. 1800 (2018) ................................................................................*passim*

*Coulter-Owens v. Time Inc.*,
  695 Fed. App'x 117 (6th Cir. 2017) ...........................................................6

*Cowles v. Bank W.*,
  719 N.W.2d 94 (Mich. 2006) ....................................................................15

*Currithers v. FedEx Ground Package System, Inc.*,
  No. 1:04-cv-10055, 2012 WL 458466 (E.D. Mich. Feb. 13, 2012) ..................12

*Dabish v. McMahon*,
  818 F. App'x 423 (6th Cir. 2020) ..............................................................21

*Derderian v. Genesys Health Care Sys.*,
  689 N.W.2d 145 (Mich. Ct. App. 2004) .....................................................20

*Dickey v. Hoff*,
  No. 21-0859, 2022 WL 12127101 (Iowa Oct. 21, 2022) .................................19

*Donovan v. FirstCredit, Inc.*,
  983 F.3d 246 (6th Cir. 2020) .....................................................................18

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  446 F. Supp. 3d 218 (E.D. Mich. 2020) ...............................................12, 14

*Fisher v. Perron*,
  30 F.4th 289 (6th Cir. 2022) .....................................................................28

*Green v. Lansing Automakers Fed. Credit Union*,
  No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) ....................20

*Hall v. Farm Journal, Inc.*,
  No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022)..................................21

*Hanna v. Plumer*,
  380 U.S. 460 (1965).................................................................................11

*Horton v. Dow Jones*,
  804 Fed. App'x 81 (2d Cir. 2020) ..............................................................15

*In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*,
    No. 3:18-cv-00850, 2020 WL 2110931 (E.D. Va. May 4, 2020) ......................15

*Krassick v. Archaeological Inst. of Am.*,
    No. 2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) ....................21

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ..............................................................................22

*Lee v. Belvoir Media Group, LLC*,
    No. 4:22-cv-12153 (E.D. Mich. Sept. 12, 2022) ..................................................7

*Long v. Insight Commc'ns of Cent. Ohio, LLC*,
    804 F.3d 791 (6th Cir. 2015) ..............................................................................28

*Loren v. Blue Cross & Blue Shield of Mich.*,
    505 F.3d 598 (6th Cir. 2007) ..............................................................................30

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................................29

*Mackey v. Rising*,
    No. 20-cv-13408, 2021 WL 4034226 (E.D. Mich. Sept. 3, 2021)....................18

*Marks v. Hulstrom*,
    No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010).....................21

*McCree v. Cont'l Mgmt., LLC*,
    No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021).....................21

*Murphy v. Active Interest Media, Inc.*,
    No. 2:22-cv-12159 (E.D. Mich. Sept. 12, 2022) ..................................................6

*Nashel v. The New York Times*,
    No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) ..........*passim*

*People v. Tennyson*,
    790 N.W.2d 354 (Mich. 2010)...........................................................................18

*PNC Bank, Nat'l Ass. v. Page*,
    186 NE.3d 633 (Ind. Ct. App. 2022) .................................................................19

*Porter v. S. Nevada Adult Mental Health Servs.*,
    788 F. App'x 525 (9th Cir. 2019) .......................................................15

*Pratt v. KSE Sportsman Media, Inc.*,
    586 F. Supp. 3d 666 (E.D. Mich. 2022) ............................................21

*Roberts v. Hamer*,
    655 F.3d 578 (6th Cir. 2011) .............................................................29

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)....................................................................11, 12

*Taylor v. Active Interest Media, Inc.*,
    No. 1:22-cv-00447 (W.D. Mich. May 17, 2022)..................................6

*Taylor v. Belvoir Media Group, LLC*,
    No. 1:22-cv-00477 (W.D. May 30, 2022) ...................................1, 6, 7

*Torch v. Windsor Surry Co.*,
    No. 3:17-CV-00918-AA, 2019 WL 6709379 (D. Or. Dec. 9, 2019) ................15

*Wenkel v. Farm Bureau Gen. Ins. Co. of Michigan*,
    No. 358526, 2022 WL 17364773 (Mich. Ct. App. Dec. 1, 2022).....................17

*Wheaton v. Apple Inc.*,
    No. C 19-02883, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) .......................27

**Statutes**

28 United States Code
    § 1332(d)........................................................................................4, 15
    § 2072............................................................................................11

Michigan Compiled Laws

§ 3.501(A)(5) ...........................................................................4, 11

§ 3.501(F) .................................................................................13, 15

§ 30.405(1)(a) ..................................................................................20

§ 445.1711, *et seq.* .......................................................................1, 29

§ 445.1712 (1989) ..........................................................3, 5, 22, 25

§ 445.1715 (1989) .......................................................................5, 29

§ 445.1715(2) (2016) ........................................................................6

§ 600.2940(1) ....................................................................................21

§ 600.5805(2) ..............................................................................20, 21

§ 600.5813 .........................................................................................21

§ 750.147b .........................................................................................21

## Rules and Regulations

Federal Rules of Civil Procedure

Rule 12(b)(1)...................................................................................28

Rule 12(b)(6) ..........................................................................*passim*

Rule 15 ...............................................................................................8

Rule 23 ...............................................................................................4

## Other Authorities

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements
and Their Fee Awards*, J. Empirical Legal Studies, Dec. 2010...........................5

Danielle Keats Citron & Daniel J. Solove,
*Privacy Harms*, 102 B.U. L. Rev. 793, 816–17 (2022)........................5

Class Action Fairness Act,
Pub. L. No. 109-2, 199 Stat. 4 .........................................................12

S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92
(codified at M.C.L. § 445.1711 *et seq.* (2016) ....................................5

Stephen B. Burbank & Tobias Barrington Wolff,
*Class Actions, Statutes of Limitations and Repose, and Federal
Common Law*, 167 Penn. L. Rev. 1, 35 (Dec. 2018)...................11, 12

## STATEMENT OF ISSUES PRESENTED

1.   Whether Plaintiffs' claims under the Michigan Preservation of Personal Privacy Act ("PPPA") are facially untimely?

     Defendant's Answer: Yes.

2.   Whether Plaintiffs' individual and class claims under the PPPA were tolled because of a previously-filed class action?

     Defendant's Answer: No.

3.   Whether Plaintiffs' individual and class claims under the PPPA were tolled pursuant to Orders issued by Governor Gretchen Whitmer and the Michigan Supreme Court extending filing deadlines in 2020 due to COVID, even though Plaintiffs had no such deadlines?

     Defendant's Answer: No.

4.   Whether Plaintiffs have statutory and Article III standing to sue Defendant?

     Defendant's Answer: No.

5.   Whether Plaintiffs' claims under the PPPA should be dismissed because Plaintiffs fail to plausibly allege that Defendant unlawfully disclosed their Private Reading Information in violation of the PPPA at all, let alone in the narrow time period of February 21, 2016 through July 30, 2016, which Plaintiffs allege as the relevant time period?

     Defendant's Answer: Yes.

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for this Motion includes:

1. Federal Rule of Civil Procedure 12(b)(1).

2. Federal Rule of Civil Procedure 12(b)(6).

3. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

4. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

5. Michigan Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-445.1715 (1989) (amended eff. July 31, 2016).

6. *Nashel v. The New York Times*, No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. October 11, 2022).

7. *Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

8. *Dabish v. McMahon*, 818 F. App'x 423 (6th Cir. 2020).

9. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018).

10. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

## INTRODUCTION

Plaintiffs allege Defendant Belvoir Media Group, LLC ("Belvoir") wrongfully disclosed their Private Reading Information ("PRI") in violation of the pre-July 31, 2016 version of Michigan's Preservation of Personal Privacy Act, M.C.L. § 445.1711, *et seq*. (the "PPPA"). Plaintiffs filed their original complaint in this action on September 12, 2022—44 days after the six-year limitations period they themselves contend applies in this case, which ended on July 30, 2022. Plaintiffs amended their original complaint on December 12, 2022 under Rule 15 in response to Belvoir's motion to dismiss. But the amendment cannot cure the fact that Plaintiffs' original complaint was untimely.

Knowing full well that the FAC, just like the original complaint, is untimely, Plaintiffs' counsel supplemented their FAC with a lengthy footnote arguing that their FAC is timely because their claims were tolled. They are wrong for two reasons:

*First*, Plaintiffs rely on the concept of "class action tolling," pursuant to which, in certain circumstances, an individual plaintiff can rely on a previously-filed class action to toll the time to file their own complaint. Plaintiffs' counsel here initially filed essentially the same action, with a different named plaintiff, Jason Taylor, in the Western District of Michigan on May 30, 2022 (the "Western District Action"). *Taylor v. Belvoir Media Group, LLC*, No. 1:22-cv-00477, ECF No. 1 (W.D. Mich. May 30, 2022). No doubt recognizing that Taylor never subscribed to a Belvoir publication

during the class period, counsel amended to add additional named plaintiffs. (*Id.* at ECF No. 15.) But the five new named plaintiffs did not subscribe to a Belvoir publication during the class period either. Belvoir thus moved to dismiss the Western District Action because, among other reasons, none of the named plaintiffs had standing to sue. (*Id.* at ECF No. 20.) In response, Plaintiffs' counsel voluntarily dismissed the Western District Action and filed the instant action, with yet new named plaintiffs. (*Id.* at ECF No. 24.)

The Western District Action was filed with named plaintiffs who had no basis to sue, which Plaintiffs' counsel should have known through their due diligence. The Western District Action was just a "placeholder" case, designed in an effort to stop the clock as Plaintiffs' counsel's self-proclaimed July 30, 2022 deadline to file was fast approaching. But the U.S. Supreme Court's *China Agritech* decision put a stop to such judicial gamesmanship. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018). Indeed, even if the Western District Action had been legitimate, *China Agritrech* prohibits the class action piggybacking Plaintiffs' counsel now attempts based on the filing of the Western District Action. *Id.*

*Second*, in the same footnote, Plaintiffs argue that they should be entitled to COVID tolling. This argument is predicated on Governor Gretchen Whitmer's Executive Orders and the Michigan Supreme Court's Administrative Orders implemented in response to the COVID-19 pandemic (the "COVID-19 Orders").

But those Orders only tolled filing **deadlines** in 2020 that fell within the declared state of emergency. Plaintiffs' deadline to file—by July 30, 2022, based on their own view of the applicable limitations period—did not fall within that 2020 timeframe. Plaintiffs' COVID tolling arguments are thus wholly unavailing.

Moreover, besides being filed too late, the FAC still consists of nothing more than vague and conclusory allegations, pled for the most part on information and belief, that fail to state a claim for a violation of the PPPA. Subject to certain exceptions, the PPPA prohibits disclosures of "information concerning the purchase" of written materials by a customer "that indicates the identity of the customer." M.C.L. § 445.1712 (1989). But the FAC contains no specific allegations of the actual disclosure of any customer's information, let alone Plaintiffs' information. Significantly, in a substantially similar case in this District, Judge Stephen J. Murphy, III recently dismissed a PPPA action with prejudice for failing to adequately plead disclosure, even though the allegations supporting disclosure were more detailed than here. *Nashel v. The New York Times*, No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).

Finally, the named Plaintiffs did not subscribe to any Belvoir-owned publication prior to July 30, 2016, and thus, they lack standing to sue. (*See generally* Declaration of Thomas Canfield, dated January 25, 2023 (the "Canfield Dec."), Ex. 1 hereto.) Their claims must be dismissed with prejudice.

Plaintiffs' counsel have played fast and loose, filing and dismissing actions with different named plaintiffs in an effort to extend their time to file. The Court should not countenance their gamesmanship and should dismiss with prejudice what is, in effect, their fourth attempt to bring a viable action against Belvoir.

## BACKGROUND

### I. Michigan State Law Prohibits PPPA Class Actions in State Court, So This Case Was Filed in Federal Court Pursuant to CAFA.

Michigan Court Rule 3.501(A)(5) does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class action, which the PPPA does not. To circumvent this prohibition, Plaintiffs have invoked federal jurisdiction through the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Accordingly, this action is brought pursuant to Fed. R. Civ. P. 23, not state class action law.

### II. The Pre-July 31, 2016 Version of the Michigan PPPA.

#### A. The Availability of Statutory Damages Incentivizes the Plaintiffs' Bar to Sue.

The Michigan Legislature passed the PPPA in the wake of a federal statute, the "Video Privacy Protection Act," which was enacted following the disclosure of Supreme Court nominee Judge Robert Bork's video rental choices in a newspaper. *Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989 (attached to FAC as Ex. B, ECF No. 16, PageID.627). However, Michigan's law went further than the federal Act. (*Id.*) In addition to video

rental records, its scope includes "books or other written materials," proscribing certain "disclosures" of records or information "concerning the purchase, lease, rental, or borrowing of those materials." M.C.L. § 445.1712.

Actual damages are difficult to prove in privacy-based cases and are rarely worth thousands of dollars per class member.[1] The allure of class actions under the PPPA was a statutory damages provision that permitted an action for actual damages or $5,000 in statutory damages per class member, whichever was greater. M.C.L. § 445.1715 (1989). Attorneys' fees, at least in settlement class actions, are typically between 25 and 30 percent of the total award to the class.[2] With $5,000 per class member as statutory damages, it is not difficult to imagine the motive for bringing these class actions.

### B.    The PPPA Is Amended, Removing Statutory Damages.

Following a slew of PPPA suits, the Michigan Legislature amended the PPPA in 2016 (the "2016 Amendment").[3] Among other things, the 2016 Amendment expressly removed the provision for $5,000 statutory damages and provided only for

---

[1] *See, e.g.,* Danielle Keats Citron & Daniel J. Solove, *Privacy Harms*, 102 B.U. L. Rev. 793, 816–17 (2022).

[2] Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, J. Empirical Legal Studies, Dec. 2010, at 834. Available at: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1733791#.

[3] S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (codified at M.C.L. § 445.1711 *et seq.* (2016)).

actual damages. M.C.L. § 445.1715(2) (2016). The 2016 Amendment took effect July 31, 2016.[4]

### C. Plaintiffs' Counsel Sue Under the Pre-July 31, 2016 Version of the PPPA.

Unsurprisingly, there have been no class actions filed under the post-2016 version of the PPPA that removed lucrative statutory damages. Plaintiffs' counsel here have filed approximately 90 putative class actions since 2016 under the pre-July 31, 2016 version of the PPPA.[5] Their recent *modus operandi* has been to file placeholder suits, amend with new named plaintiffs when a defendant moves to dismiss because the plaintiffs lack standing to sue the publisher, and then, when defendant moves to dismiss the amended complaint because, among other things, the new named plaintiffs also lack standing, voluntarily dismiss the putative class action and refile in another district in Michigan with yet other named plaintiffs.[6] That is exactly what happened here. *Taylor v. Belvoir Media Group, LLC,* No. 1:22-cv-00477 (W.D. May 30, 2022).

---

[4] The Sixth Circuit ruled that the 2016 Amendment applies only prospectively. *Coulter-Owens v. Time Inc*., 695 Fed. App'x 117, 121 (6th Cir. 2017).

[5] *See* Ex. 2 hereto, which lists PPPA class actions brought by Plaintiffs' counsel here under the pre-July 31, 2016 version of the statute.

[6] *See, e.g.*, *Taylor v. Active Interest Media, Inc.*, No. 1:22-cv-00447 (W.D. Mich. May 17, 2022); *Murphy v. Active Interest Media, Inc.*, No. 2:22-cv-12159 (E.D. Mich. Sept. 12, 2022).

III.   **The FAC Is Plaintiffs' Counsel's Fourth Attempt to Bring a Viable Class Action Against Belvoir.**

*The Western District Action and its Amendment.* On May 30, 2022, a single plaintiff, Jason Taylor, filed a class-action suit against Belvoir in the District Court of the Western District of Michigan. (*Taylor v. Belvoir Media Group, LLC*, No. 1:22-cv-00477 (W.D. May 30, 2022).) Taylor was represented by the same counsel as Plaintiffs here. (*Id.*) On July 23, 2022, Taylor's complaint was amended to add another named plaintiff. (*Id.* at ECF No. 15.) Belvoir then filed a motion to dismiss on August 19, 2022, arguing, among other things, that the named plaintiffs lacked standing because they did not subscribe to any Belvoir publication during the relevant period. (*Id.* at ECF No. 20.) Counsel responded by voluntarily dismissing their action against Belvoir on September 14, 2022. (*Id.* at ECF No. 24.)

*This Action and its Amendment.* The same Plaintiffs' counsel filed this putative class action on September 12, 2022, two days prior to voluntarily dismissing the Western District Action. But for the named plaintiffs and the venue, this action is virtually identical to the Western District Action. *Compare Taylor v. Belvoir Media Group, LLC*, No. 1:22-cv-00477 (W.D. May 30, 2022) *with Lee v. Belvoir Media Group, LLC*, No. 4:22-cv-12153, ECF No. 16 (E.D. Mich. Dec. 12, 2022). On November 21, 2022, Belvoir moved to dismiss the complaint as untimely, among other reasons. (*Lee*, No. 4:22-cv-12153, ECF No. 15.) Plaintiffs responded by

7

amending their Complaint pursuant to Rule 15 before the Court could rule on Belvoir's motion to dismiss. (*Id.* at ECF No. 16.)

## IV.    Plaintiffs Make Untimely, Conclusory Allegations of PPPA Violations.

In their FAC, as in their original complaint, Plaintiffs' allegations are made on "information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge." (FAC, preamble.) Plaintiffs broadly and baldly claim Belvoir "rented, exchanged, and/or otherwise disclosed detailed information" about its customers' "Private Reading Information,"—*i.e.*, names, home addresses, and the "titles of publications subscribed to"—to third parties without consent or notice, and that such alleged disclosures violated the PPPA. (*See, e.g.*, FAC ¶¶ 1, 10.) Plaintiffs offer no facts whatsoever to support their sweeping allegations that Belvoir disclosed identifying information about any customer—much less the Plaintiffs—at any time—let alone sometime prior to July 31, 2016. Although Plaintiffs allege they have "[d]ocumented evidence" that Belvoir "rented, exchanged, and/or otherwise disclosed" the Plaintiffs' Private Reading Information prior to July 31, 2016 (*id.* ¶ 2), that "evidence" is a recent advertisement, a so-called "data card," published by a third party, NextMark, Inc. ("NextMark"), dated April 30, 2022, which says nothing about 2016. (*Id.* ¶ 2, Ex. A.) Tellingly, there is no allegation tying anything on a third-party data card to any disclosure by Belvoir.

The new allegations in the FAC are pled on information and belief and are conjectural and conclusory. (*See, e.g.*, *Id.* preamble, ¶¶ 3-7.) Plaintiffs allege that another third-party data card "similar" to the NextMark card from 2022 existed in an undefined "relevant pre-July 31, 2016 time period," but do not attach that alleged card. (*Id.* ¶ 3.) Also, while Plaintiffs cite to a webpage for the alleged data card, that webpage is not accessible and does not appear to exist publicly. (*Id.* ¶ 3 n.3; *see* Declaration of Deborah H. Renner, dated January 24, 2023 (the "Renner Dec."), ¶ 3, Ex. 3 hereto.) Moreover, according to Plaintiffs' allegations, the purported data card was posted on the website of a third-party list broker called "SRDS," and not by Belvoir. (FAC ¶ 3.) Plaintiffs nevertheless allege that any representations on the card were made by Belvoir. (*Id.*, ¶¶ 3-5.)

One of those purported representations concerns Wiland, an alleged "data cooperative and data appending company." (*Id.* ¶ 4.) Plaintiffs allege that "Wiland's clients, such as Belvoir, … transmit[] their entire subscriber files to Wiland." (*Id.*) Plaintiffs allege a contractual relationship between Belvoir and Wiland on information and belief. (*Id.,* preamble, ¶ 4.) Based on these allegations, Plaintiffs then conclude that "Belvoir necessarily transmitted all of its subscribers' Personal Reading Information . . . to Wiland." (*Id.*) Plaintiffs further allege that they saw an "uptick of junk mail" "during the pre-July 31, 2016 time period," without identifying

that time period or specifying how they know that Belvoir caused any alleged uptick in junk mail. (*Id.* ¶ 7.)

Plaintiffs seek to represent a class of Michigan residents whose PRI was wrongfully disclosed to third parties by Belvoir prior to July 31, 2016. (*Id.* ¶ 59.)

## V.   The Named Plaintiffs Were Not Subscribers.

As detailed in the accompanying Canfield Declaration, Belvoir conducted a search of its database, which contains records of current and historical transactions related to subscribers and gift-givers of subscriptions. Based on that search, Plaintiffs did not subscribe or otherwise purchase any Belvoir-owned publication during the relevant pre-July 31, 2016 period. (*See* Canfield Dec., ¶¶ 8-18.)

### ARGUMENT

## I.   Plaintiffs' Claims Are Time-Barred.

Plaintiffs' original Complaint was filed too late. Plaintiffs allege that a six-year limitations period applies to PPPA claims. (FAC ¶ 1, n.1.) Under Plaintiffs' claimed limitations period, the last day to file a claim for a violation of the pre-July 31, 2016 version of the PPPA was July 30, 2022. But Plaintiffs filed their original complaint on September 12, 2022—44 days too late. (*See* ECF No. 1, Complaint.) Plaintiffs argue in footnote one in their FAC that they are entitled to toll the limitations period pursuant to: (1) Michigan state law based on the filing of the prior complaint in the Western District; and (2) the COVID-19 Orders. (FAC ¶ 1, n.1.) Federal law applies, but neither federal law nor Michigan law allows for the tolling

of class claims here, and the plain language of the COVID-19 Orders only allows tolling if the deadline to file fell in 2020 during Michigan's state of emergency, which it did not here.

### A.    Plaintiffs Are Not Entitled to Class Action Tolling.

#### 1.    Federal class action tolling rules govern in this case.

Plaintiffs contend that Michigan law dictates whether the Western District Action tolled the time for Plaintiffs to bring the instant case. (FAC ¶ 1, n.1.) Not so. Significantly, Michigan does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. MCR 3.501(A)(5). To circumvent this prohibition, Plaintiffs invoked federal jurisdiction through CAFA in their FAC. (*See* FAC ¶ 20.)[7]

Rule 23 thus governs here by Plaintiffs' own choice. Through the Rules Enabling Act, 28 U.S.C. § 2072, Congress delegated its "power to prescribe general rules of practice and procedure" for cases in the federal courts to the Supreme Court. As the Supreme Court made clear in *Hanna v. Plumer*, 380 U.S. 460 (1965), "the Federal Rules have the status of 'Acts of Congress' through the grant of delegated lawmaking authority that Congress made to the Supreme Court in the [Rules Enabling Act]." Stephen B. Burbank & Tobias Barrington Wolff, *Class Actions,*

---

[7] The Supreme Court has ruled that Rule 23 federal class actions are allowed even if they would not be allowed as a state class action. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

*Statutes of Limitations and Repose, and Federal Common Law*, 167 Penn. L. Rev. 1, 35 (Dec. 2018) (citing 380 U.S. 460 (1965); 28 U.S.C. § 2072(a)). Rule 23 is thus an Act of Congress, and CAFA—which extends Rule 23 and the Court's jurisdiction to this case—is *itself* an Act of Congress. Pub. L. No. 109-2, 199 Stat. 4.

"As with any federal statute, the federal courts have the power to carry into effect the policies of Federal Rules of Civil Procedure through judge-made common law." Burbank & Wolff, *supra*, at 35; *Shady Grove Orthopedic Assocs., P.A.*, 559 U.S. at 406 ("*Erie* involved the constitutional power of federal courts to supplant state law with judge-made rules."). Class action tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974) and its progeny is a creature of federal common-law, "crafted by the Supreme Court to carry into effect the provisions of Rule 23 and the policies they embody: to preserve efficiency in aggregate litigation and protect the opt-out right that absentees enjoy." *Id.* at 49.

Not surprisingly, Judge David M. Lawson and Judge Thomas L. Ludington, of this District, looking at state claims and determining class action tolling have looked to *American Pipe* and its progeny. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 224 (E.D. Mich. 2020) (Lawson, J.) (determining tolling of Florida consumer fraud claim under *American Pipe*); *Currithers v. FedEx Ground Package System, Inc.*, 2012 WL 458466 at *6-8 (E.D.

Mich. Feb. 13, 2012) (Ludington, J.) (analyzing tolling of Michigan common law claims under *American Pipe*).

Plaintiffs rely on a case from the United States District Court for the Southern District of New York, *Boelter v. Hearst Comms, Inc.*, 269 F. Supp. 3d 172, 187-89 (S.D.N.Y. 2017), which erroneously reasoned that because the applicable limitations for the PPPA was provided by state law, the tolling of that period must also be supplied by state law. (*see* FAC, ¶ 1 n.1.) The *Boelter* court mistakenly relied on M.C.R. 3.501(F), which is the Michigan class action court rule.[8] Because this PPPA class action could not be brought under Michigan state law, that court rule, on its face, simply cannot govern this federal class action.

### 2.    Federal law precludes successive class action tolling here.

The U.S. Supreme Court first allowed class action tolling in *American Pipe.* 414 U.S. at 552-53. In *China Agritech*, the Court recently re-evaluated and limited the availability of such tolling precisely to avoid the filing of endless class actions. 138 S. Ct. at 1808. *China Agritech* made clear that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely

---

[8] The *Boelter* court relied on *Casey v. Merck & Co. Inc.,* 653 F.3d 95 (2d Cir. 2011), to reason that federal courts look to state law to determine tolling. However, *Casey* concerned a Virginia state tolling statute, which would have applied to the class action in that case had it been brought in Virginia state court. Here, however, the court rule at issue applies solely to Michigan state court class actions, but, as discussed previously, a PPPA action could not be brought as a class action in Michigan state court. Therefore, the reasoning in *Casey* is not applicable here.

filed class action." *Id.* at 1806. Furthermore, the Court held that *American Pipe* and its progeny only addressed tolling for putative class members who choose to sue individually after the initial class action was unsuccessful. *Id.*

The Court in *China Agritech* reasoned that "[t]he 'efficiency and economy of litigation' that support tolling of individual claims do not support maintenance of untimely successive class actions . . . ." *Id.* An alternative reading "would allow the statute of limitations to be extended time and again. . . [T]olling for successive class actions could allow lawyers seeking to represent a plaintiff class [to] extend the statute of limitations almost indefinitely…" *Id.* at 1808 (quotations omitted). "The watchwords of *American Pipe* are efficiency and economy of litigation. . . . Extending *American Pipe* tolling to successive class actions does not serve that purpose." *Id.* at 1811.

Plaintiffs' counsel seeks to do exactly what *China Agritech* sought to avoid— the filing of repetitive claims in which each class action stacks one on top of the other for an indefinite period of time. A court in this district was recently confronted with a similar scenario in *In re FCA US LLC Monostable Electric Gearshift Litig.*, 446 F. Supp. 3d at 224. The court applied *China Agritech* to a claim under a Florida consumer fraud statute and held that the previous class action would not toll the new one. *Id.* at 224. But the court allowed tolling as to the named plaintiff's claims. *Id.*

Here, this Court should reach a similar result and find that the prior class action does not toll this class action.[9]

### 3.  In any event, Michigan follows the Federal tolling rules.

Finally, even if, *arguendo*, Michigan state tolling law, as codified in M.C.R. 3.501(F), applied here, the end result would be the same. Michigan has expressed the intention to interpret its tolling rule in a manner consistent with federal law. *See Cowles v. Bank W*., 719 N.W.2d 94, 109-110 (Mich. 2006) (cited by Plaintiffs in footnote 1 of the FAC); M.C.R. 3.501(F). Where state courts have "adopted federal class action tolling principles," courts may use federal precedent to interpret the state rule. *Porter v. S. Nevada Adult Mental Health Servs*., 788 F. App'x 525, 526 n.2 (9th Cir. 2019). *See Torch v. Windsor Surry Co*., No. 3:17-CV-00918-AA, 2019 WL

_____

[9] As argued *infra*, the named Plaintiffs lack standing to sue. Even if, *arguendo*, this Court finds any of the named plaintiffs have standing, they should not get the benefit of even having their *individual* claims tolled given that the Western District Action was an illegitimate placeholder case. *See In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*, 2020 WL 2110931, at *5 (E.D. Va. May 4, 2020) (plaintiffs named in amended complaint could not rely on placeholder claims in initial complaint where the original plaintiffs lacked standing). And, to the extent that this Court disagrees and finds that a viable plaintiff does exist and his or her individual claim may be tolled, then all that remains for any individual is a $5,000 claim under Michigan state law. As a result, subject matter jurisdiction through CAFA no longer exists. 28 U.S.C. § 1332(d)(2). Accordingly, this Court should decline to retain or exercise jurisdiction over any individual claim and should dismiss any such claims for consideration in state court. *See Horton v. Dow Jones*, 804 Fed. App'x 81, 85 (2d Cir. 2020) (affirming trial court's decision to dismiss individual PPPA claim when plaintiff could not pursue a class; federal courts need not "'adjudicate state law claims'" upon a "'finding that a case cannot proceed as a class action'") (quoting *F5 Capital v. Pappas*, 856 F.3d 61, 77 n.14 (2d Cir. 2017)).

6709379, at *7 (D. Or. Dec. 9, 2019) (dismissing claims under *China Agritech* where Oregon law adopted *American Pipe*).

### B.   The COVID-19 Orders Are Inapplicable.

Plaintiffs also contend that their case is timely because the limitations period was tolled for 101 days based on the COVID-19 Orders. (FAC. ¶ 1, n.1.) In the FAC, Plaintiffs assert that there are two sources of law for such tolling: (a) Executive Orders 2020-58 and 2020-122 issued by the Governor of Michigan on April 22, 2020 and June 12, 2020, respectively; and (b) Administrative Orders 2020-3 and 2020-18, promulgated by the Michigan Supreme Court on March 23, 2020 and June 12, 2020, respectively. (*Id.*) But the COVID-19 Orders only apply to certain deadlines in 2020, none of which apply to Plaintiffs.

The explicit intent of the COVID-19 Orders was "to extend **all deadlines** pertaining to case initiation and the filing of initial responsive pleadings in civil and probate matters **during the state of emergency** declared by the Governor related to COVID-19." Mich. Sup. Ct., Administrative Order No. 2020-3 (March 23, 2020) (emphasis added); *see also* Executive Order No. 2020-58. When the Michigan Supreme Court and Governor Whitmer rescinded their initial COVID-19 Orders on June 12, 2020, the subsequent Orders providing for COVID-tolling periods contained the same tolling limitation: "all **deadlines** applicable to the commencement of all civil and probate actions and proceedings . . . are tolled from

March 10, 2020 to June 19, 2020."[10] Executive Order No. 2020-122 (emphasis added); *see also* Mich. Sup. Ct., Administrative Order No. 2020-18 (June 12, 2020).

The plain language of the COVID-19 Orders allows only for the tolling of deadlines that fall within the declared states of disaster and emergency, which spanned from March 10, 2020 through June 19, 2020. *Id.* Indeed, the Michigan Court of Appeals recently clarified that it interpreted one of the administrative orders "as tolling the statute of limitations for the commencement of actions and a concomitant tolling of the filing of responsive pleadings during the state of emergency." *Wenkel v. Farm Bureau Gen. Ins. Co. of Michigan*, No. 358526, 2022 WL 17364773, at *4 (Mich. Ct. App. Dec. 1, 2022). Tolling of the filing deadlines in 2020 makes sense based on, as the *Wenkel* court described it, "the reluctance of litigants and their attorneys to engage with the court during [the height of the COVID pandemic]." *Id*.

Moreover, applying the COVID-19 Orders only to claims with deadlines falling during the short tolling period in 2020 is the more sensible and equitable way to interpret COVID-19 Orders. Otherwise, under Plaintiffs' logic, any plaintiff with a statute of limitations period that expires after the close of Michigan's state of emergency would still be entitled to 101 more days to file their complaint pursuant to the COVID-19 Orders. For example, under their theory, if an individual breached

---

[10] Governor Whitmer's first executive order was issued on March 10, 2020, which declared the state of emergency across the state of Michigan. Executive Order No. 2020-4.

a contract in Michigan on March 1, 2020—just prior to the declared state of emergency—the plaintiff would receive the benefit of an additional 101 days beyond the close of the six-year statute of limitations on March 1, 2026 to file a claim, even though years have passed after the state of emergency was rescinded. This makes no sense, and the COVID-19 Orders must be interpreted in a way that avoids absurd results. *See e.g.*, *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 254 (6th Cir. 2020); *People v. Tennyson*, 790 N.W.2d 354, 361 (Mich. 2010).[11]

Here, Plaintiffs had no filing deadlines between March 10, 2020 and June 19, 2020. Under their statute of limitations theory, their deadlines to file their claims fell over two years after the end of the COVID-19 tolling period. Moreover, Plaintiffs' counsel has been filing PPPA class actions for years and were not prevented from commencing this action before the July 30, 2022 deadline. The COVID-19 Orders do not apply to Plaintiffs' claims.

---

[11] Although some courts have applied the COVID-19 Orders to allow for additional time to file even when the limitations period did not end during the declared state of emergency, those cases are not instructive here because those courts did not have the benefit of briefing on this issue. *See, e.g.*, *Bownes v. Borroughs Corp.*, No. 20-cv-964, 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021) (defendant's motion to dismiss admitted the COVID-19 Orders applied but argued the orders only allowed for a "60-day grace period" not 101 days); *Bowles v. Sabree*, No. 20-cv-12838, 2022 WL 141666, at *9 (E.D. Mich. Jan. 14, 2022) (defendant failed to address the COVID tolling argument); *Mackey v. Rising*, No. 20-cv-13408, 2021 WL 4034226, at *2 (E.D. Mich. Sept. 3, 2021) (defendant's only argument against application of the COVID-19 Orders was that they do not apply to federal cases, and the court found, relying on Second Circuit precedent, that federal courts borrow state tolling orders for 42 U.S.C. §1983 claims).

Plaintiffs' counsel's attempt to extend the enforcement of the pre-July 31, 2016 version of the PPPA through COVID tolling is not only nonsensical, but it also subverts the Michigan Legislature's decision to put an end to no-injury suits like this one that are brought solely to cash in on the $5,000 statutory penalty that no longer exists. For this reason, too, this Court should reject Plaintiff's counsel's COVID tolling theory and dismiss this suit with prejudice.

Finally, while the Court need not decide the constitutionality of the COVID-19 Orders to rule them inapplicable on their face, Belvoir notes that several states have found such orders unconstitutional in violation of the separation of powers provisions in state constitutions.[12] In fact, one of the COVID Orders at issue here has already been held unconstitutional. *See In re Certified Questions from the U.S. District Court for the Western District of Michigan*, 958 N.W.2d 1, 24 (Mich. 2020) (holding the executive orders issued pursuant to the Emergency Powers of the Governor Act of 1945 exceeded state statutory and constitutional authority).[13]

Plaintiffs' claims are thus untimely and should be dismissed with prejudice.

---

[12] *See*, *e.g.*, *Dickey v. Hoff*, No. 21-0859, 2022 WL 12127101 (Iowa Oct. 21, 2022) (affirming district court ruling that COVID-19 Supervisory Orders tolling statute of limitations violated the Iowa's separation of powers doctrine); *PNC Bank, Nat'l Ass. v. Page*, 186 NE.3d 633, 638-39 (Ind. Ct. App. 2022) (holding the Indiana Supreme Court could not change substantive law and, therefore, the Emergency Order could not be construed as suspending accrual of non-discretionary interest).

[13] Governor Whitmer also issued Executive Orders pursuant to the Emergency Management Act of 1976 (the "EMA"). The Governor usurped legislative powers

**C.     The Three-Year Limitations Period Applies, Rendering Plaintiffs'
Claims Time-Barred Even if Tolling Were Permitted.**

In any event, a three-year limitations applies here, so the case could not be

saved by any theory of tolling. M.C.L. § 600.5805(2) provides that "the period of

limitations is 3 years after the time of the death or injury for *all* actions to recover

damages for the death of a person or for injury to a person or property." Michigan

courts consistently apply M.C.L. § 600.5805(2)'s three-year statute of limitations to

common law privacy-based claims. *See, e.g., Green v. Lansing Automakers Fed.

Credit Union*, No. 342373, 2019 WL 3812108, at *5 (Mich. Ct. App. Aug. 13, 2019)

(three-year limitation period applied to invasion of privacy, unlawful intrusion

claim); *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159-60 (Mich. Ct.

App. 2004) (three-year limitations period applied to invasion of privacy, false-light

---

through the EMA, too, in violation of the Michigan constitution, because tolling
statutes of limitation does not assist with the Governor's ability to respond to a
disaster or emergency, as required for a constitutional implementation of the EMA.
M.C.L. § 30.405(1)(a) (allowing the governor to "[s]uspend a regulatory statute,
order, or rule prescribing the procedures for conduct of state business, when strict
compliance with the statute, order, or rule would prevent, hinder, or delay necessary
action in coping with the disaster or emergency.") And at least one Michigan
Supreme Court Justice, in dissent, has cast doubt on the constitutionality of the
judiciary's COVID order as violating the separation of powers provision of the state
constitution. *Browning v. Buko*, No. 163538, 2022 WL 4117478, at *197 (Mich.
Sept. 9, 2022) (Viviano, J., dissenting) (separation of powers issue was not
considered, but should have been given the substantive nature of statutes of
limitation.).

claim); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984) (three-year limitations period applied to invasion of privacy claim).

Plaintiffs contend that a PPPA claim should be subject to the catch-all six-year limitations period in M.C.L. § 600.5813 because the PPPA does not contain an express limitations period.[14] (FAC ¶ 1, n.1.) But there are decades of Michigan cases that have applied the three-year limitations period of M.C.L. § 600.5805(2) to *statutory* claims that, as here, allege injury to *persons*, even when the statute was otherwise silent on a limitations period. *See, e.g.*, *Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir. 2020) (three-year limitations period applies to claims brought under Michigan's Ethnic Intimidation statute, M.C.L. § 750.147b, a specific right not found in common law); *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010) (applying M.C.L. § 600.5805(2)'s limitations period to statutory nuisance claim under M.C.L. § 600.2940(1)); *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (three-year limitations period applies to Housing Act and Truth in Renting Act). In

---

[14] Although three judges in this District and one judge in the Western District of Michigan agree with Plaintiffs' position, there has yet to be a Sixth Circuit or Michigan Supreme Court holding on the applicable limitations period for a PPPA claim. *See Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666 (E.D. Mich. Feb. 15, 2022) (Ludington, J.); *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF 26 (E.D. Mich. April 5, 2022) (Lawson, J.) slip op.; and *Krassick v. Archaeological Inst. of Am.*, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022) (Jarbou, J.); *Nashel*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) (Murphy, J.).

light of these precedents, this Court should review this issue anew and find a three-year period applies.

## II.    Plaintiffs Fail to State a Claim.

To survive a motion to dismiss, Plaintiffs must allege facially plausible *facts* surrounding their claims that Belvoir is liable under the PPPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). And of course, a court must not presume the truth of legal conclusions in a complaint. *Iqbal*, 556 U.S. at 678.

To plead a claim under the PPPA, a plaintiff must allege facts that, if proved, would show both that (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information. M.C.L. § 445.1712 (prohibiting disclosure "to any person, other than the customer, [of] a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer.").

Plaintiffs' PPPA claims are conclusory and pled largely on information and belief, alleging that Belvoir disclosed subscriber names and addresses to unnamed "data aggregators, data appenders, data cooperatives, and list brokers . . . during the relevant pre-July 31, 2016 time period." (FAC ¶ 1.) Plaintiffs do not substantiate this barebones statement, thus failing to provide sufficient facts from which this Court could draw a plausible inference that Belvoir violated Plaintiffs' rights under the PPPA in 2016. *See Ashcroft*, 556 U.S. at 678; *Nashel*, 2022 WL 6775657, at *4-6 (Ex. 4).

In *Nashel*, a PPPA action filed by the same plaintiff's counsel as here, Judge Murphy granted defendant's motion to dismiss for failure to plead a plausible claim under the PPPA. *Id.* Just as Plaintiffs attempt to do here with their citation to a 2022 data card published by a third party, the *Nashel* plaintiffs supported the allegations in their complaint with third-party data cards from a different time period. *Nashel*, No. 2:22-cv-10633, ECF No. 16, PageID.687-88 (submitting data cards from nearly a decade before the relevant 2016 time period). The *Nashel* plaintiffs went even further and made allegations about the defendant's privacy policy and cited a case study concerning Virginia Beach renting a list of defendant's subscriber's email addresses. *Id.* at PageID.689-90. Nonetheless, the *Nashel* court found that "Plaintiff's allegations, even in light of that evidence, fail to clear the plausibility threshold." *Nashel*, No. 2022 WL 6775657, at *4. Judge Murphy found that the

evidence relied upon by plaintiffs—the third-party data cards, the defendant's privacy policy, and the Virginia Beach case study—"create[d] only suspicion as to whether Defendant violated the PPPA during the pre-July 31, 2016 period." *Id.* Further, the court held that, "a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Id.* (citing *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)).

Here, as in *Nashel*, Plaintiffs create, if anything, nothing more than mere suspicion of a PPPA violation, which is insufficient to satisfy *Iqbal*. The "documented evidence" Plaintiffs rely upon is a third-party data card published by NextMark, similar to the one attached to the *Nashel* complaint. (FAC ¶ 2; Ex. A.) Neither the timing nor the content of this data card supports Plaintiffs' allegations that Belvoir violated the PPPA in the pre-July 31, 2016 time period. At most, the data card shows that after April 30, 2022—nearly *six years* after any alleged statutory violation—a third party offered to sell certain information about some of Belvoir's active subscribers. (*Id.*) Just as in *Nashel*, the relied upon data card from an irrelevant time period does not rise to the level of the requisite plausible inference. *Iqbal*, 556 U.S. at 678; *Nashel*, 2022 WL 6775657, at *4-6.

Plaintiffs' allegations here necessarily rely "on a legal-conclusion inference" that Defendant systematically violated the PPPA from 2022 backwards to 2016. *Nashel*, 2022 WL 6775657, at *5 (Ex. 4). This Court cannot "presume the truth of

legal conclusions" and because "Plaintiffs cannot otherwise account for the . . . time gap, the data cards make the complaint's allegations merely *possible* rather than plausible." *Id.* (internal citation omitted).

Plaintiffs also refer to and make conclusory allegations about a data card that supposedly existed during 2016. (FAC ¶ 3.) However, that data card is not reproduced and the link Plaintiffs provide to it does not work. (*Id.* at n.3; *see* Renner Dec. ¶ 3, Ex. 3 hereto.) Further, while Plaintiffs yammer on about how Belvoir made representations on this elusive data card, they admit that the data card is from a third party, not Belvoir, so their allegations attributing any alleged representations on that card to Belvoir must be disregarded. (*Id.* ¶¶ 3-4.) *See Nashel*, 2022 WL 6775657, at *5 (Ex. 4). Moreover, their allegations that Belvoir had a contractual relationship with a data cooperative and that, therefore, it must therefore have disclosed PRI, are speculative—both factually and legally—and also should be disregarded. (*Id.*)

Furthermore, the content of the alleged data cards does not plausibly establish that Belvoir violated the PPPA. The data card provides no suggestion as to what information was accessible through the mailing list. (*See* FAC ¶ 2, Ex. A.) A violation of the PPPA only occurs if the Plaintiffs' PRI—*i.e.*, their names, home addresses, and the specific "titles of publications subscribed to"—is disclosed to third parties without consent or notice. M.C.L. § 445.1712 (1989). The third-party data card, titled "Belvoir Media Group Elite Masterfile Mailing List," does not

specify whether information about a specific Belvoir publication an individual subscribed to would be disclosed—a necessary prerequisite of PRI under Plaintiffs' own definition and the PPPA's requirements. (*Id.* FAC ¶¶ 10, 76.) In fact, the data card states it contains information only as to Belvoir's newsletters. (*See* FAC ¶ 2, Ex. A.) Therefore, for the data card to even support any of the Plaintiffs' claims, they would need to be a subscriber to one of Belvoir's newsletters during the relevant pre-July 31, 2016 time period. But Plaintiffs make no specific allegations as to which publications and/or newsletters they allege they subscribed to, which is information they should know. (FAC ¶¶ 14-18.)[15]

Nor does the data card explain the *source* of any information available in the mailing list, meaning that there is no connection between the data card and any alleged conduct by Belvoir. (*Id.* ¶ 2, Ex. A) As a result, "nothing on the data cards explains how [NextMark or SRDS] received Defendant's subscription list" and therefore "fail[s] to support a crucial element of Plaintiffs' alleged action: that *Defendant* engaged in the business of selling written material to disclose information personally identifying the customer." *Nashel*, No. 2022 WL 6775657, at *5 (Ex. 4) (internal citation omitted). This is a "gaping omission" that requires a "large

---

[15] In paragraph 19 of the FAC, Plaintiffs generally allege a listing of Belvoir's publications, which does not speak to what publications existed, or which were owned by Belvoir, in the narrow February 21, 2016 through July 30, 2016 timeframe Plaintiffs claim is relevant here.

inferential leap" to connect Belvoir's alleged conduct to the data cards, and Plaintiffs fail to "create a reasonable inference of Defendant's culpability." *Id.*

In addition to *Nashel*, in another action alleging claims under the Michigan PPPA brought by the same lawyers as here, the court dismissed a similar complaint against Apple for failure to plead plausible facts supporting its PPPA claim. *See Wheaton v. Apple Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), attached hereto as Exhibit 5. Just as in the FAC against Belvoir, the *Wheaton* plaintiffs claimed that "to supplement its revenues," Apple "rents, transmits, or otherwise discloses" its customers' private information "to data aggregators, data miners, data brokers, data appenders, and other third parties." *Id. Wheaton* held that plaintiffs' PPPA "complaint fail[ed] to plausibly allege with enough facts that Apple disclosed plaintiffs' personal listening information to third-party data brokers and similar entities," and the data cards, "d[id] not show that Apple disclosed customers' personal listening information." 2019 WL 5536214, at *5.

Finally, the only other remaining allegation supporting Plaintiffs' claims of PRI disclosure is that they allegedly saw a "barrage of unwanted" junk mail during the undefined relevant timeframe. (FAC ¶ 1.) But Plaintiffs do not specify any causal connection between their subscription to a Belvoir publication and that alleged uptick. (*Id.*) There could be any number of reasons for an uptick in their junk mail, including reasons Plaintiffs themselves plead concerning numerous players in a vast

"information marketplace."[16] Moreover, if Belvoir had been making monthly disclosures of all customers' information, why would Plaintiffs suddenly receive a "barrage of unwanted" junk mail only during a short window of time in 2016?

Without factual allegations "facially support[ing] the conclusion" that their personal information was wrongfully disclosed to a third party, Plaintiffs have not pled the requirements for a claim under the PPPA. *Bishop*, 520 F.3d at 520. The Sixth Circuit has consistently found that bare allegations of purported disclosures are insufficient in cases alleging illegal disclosures of private information. *Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022) (bare allegations of disclosure insufficient in case alleging disclosure of private information); *Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 792 (6th Cir. 2015) (affirming dismissal because plaintiffs failed to plead defendant knowingly divulged plaintiffs' information).

## III.   Plaintiffs Lack Standing to Sue.

Under Fed. R. Civ. P. 12(b)(1), a defendant can submit evidence that the Court lacks subject matter jurisdiction. *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). Here, that evidence shows that, contrary to the Plaintiffs' allegations that they purchased subscriptions to Belvoir publications prior to July 31, 2016, they did

---

[16] *See* FAC ¶¶ 31-43 (describing a vast "information marketplace" where "data aggregators purchase, trade, and collect massive databases of information about consumers" from "*numerous offline and online sources*.") (emphasis added).

not do so. (Canfield Dec. ¶¶ 8-18, Ex. 1.) Accordingly, they are not "customers" under the PPPA and thus lack both Article III and statutory standing to sue.

The Michigan Supreme Court has held that "[u]nder MCL 445.1715, only a 'customer' may bring a civil action for a violation of the PPPA." *In re Certified Question from U.S. Ct. of Appeals for Ninth Cir.*, 885 N.W.2d 628, 631 (Mich. 2016). As used in the PPPA, "[c]ustomer means a person who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording." M.C.L. § 445.1711. Here, because the Plaintiffs never "purchase[d], rent[ed], or "borrow[ed]" any magazines or newsletters from Belvoir prior to July 31, 2016, they do not have statutory standing to bring their claims. *See Roberts v. Hamer*, 655 F.3d 578, 583 (6th Cir. 2011) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A*., 530 U.S. 1, 6–7 (2000)) (alterations original) (emphasis added) ("'Where a statute names the parties granted the right to invoke its provisions, such parties *only* may act.'").

Because Plaintiffs do not have statutory standing, they also lack Article III standing to pursue their claims under the PPPA. In order to establish their right to be before this Court, it is Plaintiffs' burden to show, among other things, that they have suffered concrete injuries traceable to the Defendant's actions. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiffs' only claim is that they have each suffered a statutory injury, but under a statute which does not apply

to them. Accordingly, there is no "case or controversy" under Article III and the Court must dismiss the Complaint under Fed. R. Civ. P 12(b)(1). *See, e.g.*, *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

### CONCLUSION

For the foregoing reasons, Belvoir respectfully requests that the FAC be dismissed with prejudice.

Dated: January 27, 2023                Respectfully submitted,

                                       /s/ *Kristen C. Rodriguez*
                                       DENTONS US LLP
                                       Deborah Renner
                                       Kristen C. Rodriguez

                                       CLARK HILL PLC
                                       Peter B. Kupelian (P31812)
                                       Carol G. Schley (P51301)
                                       *Counsel for Defendant*
                                       *Belvoir Media Group, LLC*

## **Certificate of Service**

I hereby certify that on January 27, 2023, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen Rodriguez

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

PHILLIP LEE; PAMELA WHITE;          )
PATRICIA VANDUSEN; RONALD           )
ALLIX; and RANDY WELCH,             )
individually and on behalf of others )
similarly situated,                 )
                                    )   Case No. 4:22-cv-12153
                                    )
               Plaintiffs,          )
                                    )
        v.                          )
                                    )
BELVOIR MEDIA GROUP, LLC,           )
                                    )
                                    )
               Defendant.           )

## INDEX OF EXHIBITS CITED IN DEFENDANT BELVOIR MEDIA GROUP, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT

**Exhibit 1:** Declaration of Thomas Canfield

**Exhibit 2:** Plaintiffs' Counsel's PPPA Cases Chart

**Exhibit 3:** Declaration of Deborah H. Renner

**Exhibit 4:** Omnibus Opinion and Order, *Nashel v. The New York Times,* No. 2:22-cv-10633-SJM-DRG, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).

**Exhibit 5:** Unpublished opinion, *Wheaton v. Apple Inc.,* No. C 19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).