# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

PHILLIP LEE; PAMELA WHITE; PATRICIA VANDUSEN; RONALD ALLIX; and RANDY WELCH, individually and on behalf of others similarly situated,

    *Plaintiffs*,

v.

BELVOIR MEDIA GROUP, LLC,

    *Defendant*.

Case No. 4:22-cv-12153
Hon. Shalina D. Kumar

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Kristen C. Rodriguez
Deborah H. Renner
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
kristen.rodriguez@dentons.com
deborah.renner@dentons.com

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
151 South Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant*
*Belvoir Media Group, LLC*

Plaintiffs understand full well that it is their burden to prove their Article III standing. They have failed to do so when challenged and the case must be dismissed. Plaintiffs also concede their case was filed too late even under a six-year limitations period, and they all but abandon their view that class action tolling saves their claims. Instead, they argue that the limitations period was tolled under the COVID-19 Orders. But those Orders are not applicable here by their very terms, and also because, as procedural orders, they have no bearing on this federal action. Moreover, the FAC, pled largely on information and belief, fails under Rule 12(b)(6), as held in virtual clones of this case by both Judge Stephen J. Murphy, III in *Nashel v. New York Times*, No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) and most recently by the Chief Judge for the Western District of Michigan, Hala Y. Jarbou, in *Bozung v. Christianbook, LLC*, No. 1:22-cv-00304, slip op. (W.D. Mich. Mar. 6, 2023) (Ex. 7 hereto). This case should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs Lack Article III Standing.

Plaintiffs must prove their standing by a preponderance of the evidence. *See, e.g.*, *Harris v. Lexington-Fayette Urb. Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) ("[W]hen a defendant produces evidence challenging the factual existence of standing, a plaintiff must generally prove standing with evidence, even at the motion-to-dismiss stage."); *Myslivecek v. FCA US LLC*, No. 21-10346, 2022 WL

17904526, at *7 (E.D. Mich. Dec. 23, 2022) (on Rule 12(b)(1) motion, plaintiffs did not prove standing); *Superior MRI Svs., Inc. v. Alliance Healthcare Svs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citations omitted)) (alterations original) ("'[t]o defeat a factual attack, a plaintiff 'must prove the existence of subject-matter-jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'"). Here, only Plaintiff Ronald Allix has even attempted to carry his burden, and as to the remaining Plaintiffs, the case must be dismissed. *See id.* Nor are Plaintiffs entitled to discovery to survive a motion to dismiss for information they themselves possess. *See, e.g.*, *Life for Relief & Dev. V. Charter One Bank, N.A.*, No. 12-cv-13550, 2013 WL 3810255, at *3 (E.D. Mich. 2013) (plaintiff cannot use discovery to craft complaint).

As to Allix, his claims, too, must be dismissed. Allix's Declaration provided additional address and subscription information not previously provided to Belvoir's counsel.[1] (Allix Dec. ¶ 3.) Belvoir was still unable to locate any subscription for Allix for *Cleveland Clinic Men's Health Advisor*. (Reply Declaration of Thomas Canfield, dated March 9, 2023 ("Reply Dec."), ¶ 3.) (Ex. 6 hereto). However, using

---

[1] Plaintiffs imply that it was incumbent on Belvoir to ask for additional address information from Plaintiffs' counsel. It was not. In a September 30, 2022 email, Plaintiffs' counsel represented that they would provide additional address information if they received any such information from their clients. They failed to do so until confronted with a motion to dismiss.

2

the new information, Belvoir was able to locate a subscription that Allix had to *Kitplanes*, which expired in 2008. (*Id.* ¶ 4.)

However, Allix purchased the *Kitplanes* subscription through a third-party subscription agent, not from Belvoir. (*Id.* ¶ 6.) Under controlling Sixth Circuit law, *Coulter-Owens v. Time, Inc.*, 695 Fed. Appx. 117, 124 (6th Cir. 2017), purchases made through a third-party subscription agent are not "at retail" and therefore are not covered by the PPPA. *See* MCL 445.1712 (forbidding a person "engaged in the business of selling at retail . . . written materials" from disclosing a "record or information concerning the purchase" other than to the customer). Affirming the district court's decision, the Sixth Circuit held that the sale to the customer in that case was not "at retail" because of the intervening sale from the publisher to the subscription agent:

> There were two types of sales here: Time's sale to the subscription agent and the subscription agent's sale to Coulter-Owens. Because Coulter-Owens is the end consumer, the sale to her was necessarily 'at retail'; the sale from Time to the subscription agent here was not 'at retail' under the facts of this case. The district court was correct that the PPPA does not govern this sale....

*Coulter-Owens*, 695 F. App'x at 124.

The same fact pattern appears here. Allix ordered and paid for the magazine through a third-party subscription agent; the third-party subscription agent sent the order information to Belvoir, who then filled it. (Reply Dec. ¶ 5.) Under these circumstances, as in *Coulter-Owens*, there is no PPPA claim against Belvoir.

3

Furthermore, unlike *Coulter-Owens*,[2] the only count here is for violation of the PPPA statute. (ECF No. 16.) Lacking any statutory injury, as set forth in Belvoir's moving brief (ECF No. 18, PageID.1191-92.), Allix thus lacks both statutory and Article III standing to sue, and the action must also be dismissed for this reason.

## II. This Action Was Filed Too Late.

Plaintiffs admit that even under a six-year limitation period, their action is too late unless the limitations period is tolled.[3] But neither COVID tolling nor class action tolling is applicable here.

### A. COVID Tolling Does Not Apply.

One intermediate state court recently held that COVID tolling applies beyond the narrow window of the 2020 deadlines in the COVID-19 Orders. *Carter v. DTN Mgmt. Co.*, No. 360772, 2023 WL 439760 (Mich. Ct. App. Jan. 26, 2023). But that case, an individual slip and fall case, is not binding on this Court. *Horizon Lawn*

---

[2] The *Coulter-Owens* complaint included claims for breach of contract and unjust enrichment. No. 2:12-cv-14390, ECF No. 1 (E.D. Mich. 2012).

[3] Plaintiffs do not specifically respond to Belvoir's arguments on the applicability of a three-year limitations period. They instead argue that because this Court and other federal district courts in Michigan have held that a six-year limitations period applies to PPPA claims, the issue is settled. However, the Michigan Supreme Court has not decided the issue, so it is far from settled.

4

*Maint., Inc. v. Columbus-Kenworth, Inc.*, 188 F. Supp. 3d 631, 635 (E.D. Mich. 2016) (intermediate state appellate court decisions not binding on federal courts).

Even if the Court were to follow the logic of *Carter*, that case holds that tolling is a procedural, not a substantive, matter. 2023 WL 439760, at *4. As such, the COVID-19 Orders would not apply to federal court actions, even when courts are sitting in diversity. *See Barnes v. Sun Chem. Corp.*, 164 F. Supp. 3d 994, 999 (W.D. Mich. 2016) ("*State rules of procedure*, particularly those promulgated by a state supreme court, usually have no effect in federal courts because they do not embody a 'substantial policy of the state") (quotation omitted, emphasis in original). The federal cases on which Plaintiffs rely—*Bownes*, *Bowles*, *Mackey*, and *Wenkel*— are inapposite because they did not consider the procedural nature of the COVID-19 Orders. (ECF No. 18, PageID.1180-81 n.11.)

Federal procedural rules pertain to this action because Michigan does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. MCR 3.501(A)(5). Plaintiffs thus invoked federal jurisdiction through CAFA. Because this case is governed by the Federal Rules of Civil Procedure, state court procedures, such as those embodied in the COVID-19 Orders, do not apply. While the *Carter* court stated that it may not have the power to decide the constitutionality of the COVID-19 Orders, it found that because those Orders are procedural, they

are not unconstitutional.[4] 2023 WL 439760 at *6. Finally, the *Carter* decision says nothing about tolling as to absent class members.

### B. Class Action Tolling Does Not Apply.

Plaintiffs argue that the Michigan state statute on class actions would permit tolling. But, as set forth in Belvoir's moving brief, the governing court rule, MCR 3.501(F), is wholly inapplicable because this PPPA class action is not permitted under that rule, and thus is not governed by that rule.[5] Plaintiffs further contend that tolling is a substantive issue calling for the application of state law, but the *Carter* case, upon which Plaintiffs rely, says just the opposite, as discussed above. Finally, Plaintiffs argue that *China Agritrech* is inapplicable because there was no denial of class certification here as in that case. This Court has the ability, particularly given the Plaintiffs' gamesmanship (ECF No. 18, PageID.1165-67), to apply *China Agritech* even without class certification. *See, e.g.*, *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Pharm., Inc.*, Nos. 18-1146, 18-1147, 915 F.3d 1, 17 (1st Cir. 2019) (applying *China Agritech*, declining to toll despite no denial of class certification).

---

[4] Belvoir discusses the constitutionality of the COVID-19 Orders in its moving brief. (ECF No. 18, PageID.1182.)

[5] Belvoir distinguished *Boelter*, relied on by Plaintiffs, on this basis in its moving brief. (ECF No. 18, PageID.1176.)

### III. The FAC Is Inadequately Pled.

Plaintiffs contend that they need not prove their claims at this stage. True enough, but the Court need not accept as true conclusory allegations, legal conclusions, or unwarranted factual inferences. *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 550 (6th Cir. 2020). Plaintiffs further contend that their allegations are similar to those in other cases that have survived dismissal. But of the five cases they cite, four do not even consider whether the complaints pled sufficient allegations to establish an actionable disclosure under the PPPA.[6] The remaining case, *Horton v. GameStop, Inc.*, relied on a website printout dated less than two months prior to the time the complaint was filed. 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018).[7] Here, in contrast, as two district courts have now held in virtually the same case, a 2022 data card cannot create a reasonable inference that

---

[6] *See Boelter v. Hearst Commc'ns*, 192 F. Supp. 3d 427, 452–54 (S.D.N.Y. 2016) (finding PPPA exception did not warrant dismissal); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 874 (E.D. Mich. 2017) (addressing standing and unjust enrichment claims); *Perlin v. Time, Inc.*, 237 F. Supp. 3d 623, 639–43 (E.D. Mich. 2017) (same); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 587–590 (S.D.N.Y. 2016) (deciding standing, jurisdiction, unjust enrichment and constitutionality).

[7] Belvoir is aware that Plaintiffs have submitted a Report and Recommendation ("R&R") from *Briscoe v. NTVB Inc.*, Case No. 4:22-cv-10352 (E.D. Mich. March 3, 2023) as proposed supplemental authority in this case. At this time, the R&R has not been adopted by the court, and Chief Judge Jarbou considered and rejected the reasoning of the R&R in *Bozung*. (Slip op. at 10.) Belvoir will address the R&R in its opposition to the notice of supplemental authority. Belvoir further reserves all rights to address the reasoning of the R&R should the *Briscoe* court adopt it in any form.

7

Belvoir subscriber lists were sold in 2016. Rather, just as in *Nashel* and *Bozung,* the 2022 data card is from an irrelevant time period and cannot give rise to a plausible inference of disclosure of Plaintiffs' or anyone else's PRI in 2016. *Nashel*, 2022 WL 6775657, at *5 (finding the data cards from an irrelevant time period did not create a reasonable inference that defendant violated the PPPA); *Bozung*, slip op. at 8 (holding the 2022 data card could not permit a reasonable inference that a similar data card was available in 2016). This is all the more true given that the allegations pertaining to the data cards are pled on information and belief. As Judge Jarbou reasoned:

> Bozung ostensibly *believes* that this information was available for sale in 2016. But allegations based solely on belief 'are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency.' *16630 Southfieled Ltd. P'ship*, 727 F.3d at 506. Likewise, they are not sufficient here.

(Slip op. at 10.) (emphasis in original). Plaintiffs attempt to distinguish *Nashel* because the data cards cited there pre-dated rather than post-dated 2016. But that is a distinction without a difference as Plaintiffs have alleged nothing from 2016.[8] And

---

[8] Contrary to Plaintiffs' assertion, Belvoir does not concede it is reasonable to infer that Belvoir was responsible for disclosing PRI based on a NextMark data card or that the data card is evidence of disclosure of any PRI whatsoever. Moreover, also contrary to Plaintiffs' attempts to broaden the scope of the PPPA's prohibitions, the statute on its face only prohibits disclosure of information concerning the *materials* being purchased, leased, rented, or borrowed. M.C.L. § 445.1712. Indeed, according to Plaintiffs' own allegations, the way Belvoir violated the PPPA was by purportedly

8

Plaintiffs' argument that the 2022 data card is "cumulative" does not mean that Plaintiffs' data was disclosed in 2016. The data card merely states "*COUNTS THROUGH* 04/30/2022" with no further details provided—it does not state, "cumulative from 2016." As the *Bozung* Court reasoned: a 2022 data card "does not mention buyers from 2016 or earlier. Indeed, common sense suggests there would be less value in outdated information from years earlier." (Slip op. at 8.)

Similarly, Plaintiffs urge the Court to accept their conclusory information and belief allegation that a "substantially similar" data card was available in 2016, but one which they now admit cannot be accessed through the webpage they cite and which they do not otherwise attach. (ECF 19, PageID.1245.); *see Nashel*, 2022 WL 6775657, at *4-6 (holding the court would not rely on a "legal conclusion" to cure timing issues with the alleged data cards). Judge Jarbou squarely rejected this same allegation in *Bozung*:

> Bozung provides a link to the alleged data card, but the link is broken. He alleges, without any apparent basis for doing so, that this link 'was accessible during the pre-July 31, 2016 time period[.] Of course, it makes no sense that a datacard from 2016 was the 'same' as the one from 2022. The latter is dated February 28, 2022 and would have contained different information from the one in 2016. Nor does it make sense that 'Defendant' would have advertised such a card. Bozung does not allege that Christianbook is a list broker like NextMark. … Bozung's skeletal allegations do not permit a reasonable inference that a datacard like the one available in 2022 was also available in 2016. His allegations amount to 'naked assertion[s] devoid of further factual

---

disclosing "their full names, *titles of publications subscribed to*, and home addresses" to third parties. (FAC ¶¶ 10, 67-82.)

9

enhancement' that do not suffice to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

(Slip op. at 9.) This Court should reject this allegation for the same reasons. And while Plaintiffs contend the source of subscriber information had to be Belvoir because of the "Masterfile" designation on the data card, that is not pled, requires pure speculation from the Court, and is contrary to Plaintiffs' other allegations that there are numerous sources from which data aggregators, brokers and others acquire information on consumers.[9] (*See, e.g.*, FAC, ¶¶ 31-43); *see Nashel*, 2022 WL 6775657, at *5 ("nothing on the data cards explains how the list brokers received Defendant's subscription list.")

Moreover, while Plaintiffs claim the *Nashel* decision is an "outlier," *Bozung* has now been decided consistent with *Nashel*, and at least one other court, *Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019), cited in Belvoir's moving brief, is aligned with those cases. Contrary to Plaintiffs' arguments, the *Wheaton* decision did not turn on the type of media at issue. Rather, the court scrutinized the allegations of unlawful disclosure, akin to

---

[9] Nor does *Horton*, 380 F. Supp. 3d at 682, support the notion that the "Masterfile" designation on the data card means that information was disclosed by Belvoir. (*See* ECF No. 21, PageID.1277.) Plaintiff's reliance on *Cain v. Redbox Automated Retail, LLC*, is also unavailing because no one disputes well-pled allegations must be taken as true. 981 F. Supp. 2d 674, 685 (E.D. Mich. 2013) (issue was whether defendant's vendors were considered "agents" under the PPPA).

10

those here, and found they could not support a plausible PPPA claim. 2019 WL 5536214, at *4-5.

In addition, Plaintiffs repeat their allegation about an "uptick in junk mail" as proof of disclosure, as argued in Belvoir's opening papers, an alleged "uptick in junk mail" without a causal connection to an alleged disclosure by Belvoir, is merely a conclusory allegation that should not be credited by the Court. (ECF No. 19, PageID.1247.)

Finally, Plaintiffs contend no plaintiff could ever allege enough for a plausible allegation of disclosure. But that is not true, and the Court cannot ignore the *Iqbal* standard. *See, e.g.*, *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (in data breach context, alleging specific injuries close in time to breach).

## CONCLUSION

For the foregoing reasons and those set forth in Belvoir's moving papers, the FAC should be dismissed with prejudice.

Date: March 13, 2023

Respectfully submitted,

/s/ *Kristen C. Rodriguez*
DENTONS US LLP
*Counsel for Defendant*

## Certificate of Service

I hereby certify that on March 13, 2023, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen C. Rodriguez