# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY GAINES, individually and on
behalf of all others similarly situated,

  Plaintiff,

v.

NATIONAL WILDLIFE FEDERATION,

  Defendant.
_____ /

Case No. 22-11173

F. Kay Behm
United States District Judge

## OPINION AND ORDER DENYING MOTION TO DISMISS (ECF No. 18), GRANTING MOTIONS TO SUBMIT SUPPLEMENTAL AUTHORITY (ECF Nos. 25, 30, 31), AND <u>GRANTING MOTION FOR LEAVE TO FILE RESPONSE (ECF No. 34)</u>

## I. INTRODUCTION

  Plaintiff filed a proposed class action Complaint on May 30, 2022, and an

Amended Complaint on September 8, 2022. (ECF Nos. 1, 15). Plaintiff alleges that

the Defendant, National Wildlife Federation (NWF), disclosed detailed

information about her minor son's Ranger Rick magazine subscription data to

data aggregators and list brokers who, in turn, disclosed that information to

advertisers, political organizations, and others, resulting in a barrage of unwanted

junk mail. Plaintiff brings a claim for violation of Michigan's Preservation of

Personal Privacy Act (PPPA), Mich. Comp. Laws § 445.1711, *et seq*., and proposes

a class action for all those similarly situated.  Defendant moves to dismiss the

Amended Complaint, asserting that it fails to state a claim and that any such

claims are, in any event, barred by the statute of limitations.  Also pending before

the court are various motions to provide supplemental authority and a response

to those motions.

For the reasons set forth below, the motions to submit supplemental

authority and provide a response to same are **GRANTED** and Defendant's Motion

to Dismiss is **DENIED**.

## II.    FACTUAL BACKGROUND

In 1988, the Michigan Legislature enacted the PPPA to protect "privacy with

respect to the purchase, rental, or borrowing of certain materials" by prohibiting

companies from disclosing certain types of sensitive consumer information.  *See*

H.B. No. 5331, 1988 Mich. Legis. Serv. 378.  Subsection 2 of the PPPA states:

> [A] person, or an employee or agent of the person,
> engaged in the business of selling at retail, renting, or
> lending books or other written materials, sound
> recordings, or video recordings shall not disclose to any
> person, other than the customer, a record or
> information concerning the purchase . . . of those
> materials by a customer that indicates the identity of the
> customer.

Mich. Comp. Laws § 445.1712(1). In May 2016, the Michigan Legislature amended the PPPA. *See* S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016) (codified at Mich. Comp. Laws § 445.1711, *et seq*.). The earlier version of the PPPA allowed a customer to recover "[a]ctual damages, including damages for emotional distress, or $ 5,000.00, whichever [was] greater." *See* Mich. Comp. Laws § 445.1715 (1989). However, the 2016 amendment limits recovery to actual damages, removing the statutory-damages provision. *See* Mich. Comp. Laws § 445.1715 (2016). The May 2016 amendment to the PPPA, which became effective on July 31, 2016, does not apply retroactively to claims that accrued prior to its July 31, 2016 effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439-41 (S.D.N.Y. 2016) (holding that "the amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued.") (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 286 (1994)). Plaintiff contends that the claims alleged in the Amended Complaint accrued prior to the July 31, 2016 effective date of the amended version of the PPPA, and thus, the pre-amendment version of the PPPA applies in this case. *See e.g.*, *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018).

According to the Amended Complaint, Defendant maintains a large digital database comprised of all of its customers' information—namely the Private Reading Information (or "PRI") "as well as myriad other categories of individualized data and demographic information such as age, child's age, ethnicity, gender, homeowner status, and income."  (ECF No. 15, ¶¶ 7, 43).  The Amended Complaint alleges that during the relevant pre-July 31, 2016 period, Defendant continuously "rent[ed], exchang[ed], or otherwise disclos[ed] the Private Reading Information of its entire database of . . . subscribers" to various third parties.  *Id*. ¶ 5.  The Amended Complaint also alleges that as far back as 2015 and continuing up until the present, including throughout the entire relevant pre-July 31, 2016 period, Defendant "continuously" disclosed ("on a monthly basis") the PRI of all its customers (including Plaintiff) in three ways.  *Id*. ¶¶ 7, 62.  First, Defendant disclosed mailing lists containing Plaintiff's (along with all of its other customers') PRI to data aggregators and data appenders, who then supplemented the mailing lists with additional sensitive information from their own databases, before sending the mailing lists back to Defendant.  *Id*. ¶ 63. Second, Defendant disclosed mailing lists containing Plaintiff's (along with all of its other customers') PRI to data cooperatives, who in turn gave Defendant access to their own mailing list databases.  *Id*. ¶ 64.  Third, Defendant rented and/or

exchanged its mailing lists containing Plaintiff's (along with all of its other customers') PRI – enhanced with additional information from data aggregators and appenders – to third parties, including other consumer-facing companies, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes.  *Id*. ¶ 65.

To support its allegations, the Amended Complaint includes a screenshot of the Ranger Rick subscriber "data card" publicly available on list broker NextMark, Inc.'s website, in which Defendant offers to rent or exchange the PRI of all of its subscribers – current "through" March 1, 2022 – to anyone interested in purchasing it.  *Id*. ¶ 2; ECF No. 15-2.  Plaintiff further alleges that "[t]he same or a substantially similar 'data card' as the one shown [in ¶ 2 of the FAC], with the same rates and the same advertised demographic and personal information about each U.S. based purchaser of a subscription as listed above, was also publicly advertised by Defendant as far back as the beginning of 2015 and throughout the entire pre-July 31, 2016 time period[.]"  *Id*.  The Amended Complaint also indicates that "during relevant pre-July 31, 2016 time period, NextMark also offered to provide renters access to the mailing list titled 'Ranger Rick Marketing Genetics Masterfile', which contains the PRI of all 753,350 of Defendant's then-active and recently expired U.S. subscribers at a base price of

'$105.00/M [per thousand],' (i.e., 10.5 cents apiece).")*. Id*. ¶ 3. Thus, according

to the Amended Complaint, "[Defendant] was renting, selling, exchanging, and

otherwise disclosing all of its customers' Personal Reading Information (including

Plaintiff's and all Class members' Personal Reading Information) to third parties

during the relevant pre-July 31, 2016 time period." *Id*. ¶ 2. And, "[a]s a result of

[Defendant]'s practices of disclosing [her] Private Reading Information during the

relevant pre-July 31, 2016 time period, Plaintiff[] saw a dramatic uptick of junk

mail in [her] mailbox[] following [her] purchases of subscriptions to [Defendant's]

publications over the same time period." *Id*. ¶ 4. Finally, by renting, exchanging,

or otherwise disclosing the PRI of Plaintiff and its other Michigan-resident

subscribers during the relevant pre-July 31, 2016 time period, the Amended

Complaint maintains that Defendant violated the PPPA. *Id*. ¶¶ 5, 67. Plaintiff

seeks $5,000.00 for herself and each class member pursuant to PPPA § 5(a) and

costs and reasonable attorneys' fees pursuant to PPPA § 5(b). *Id*. ¶ 75.

## III.   ANALYSIS

### A.   Motions Regarding Supplemental Authority (ECF Nos. 25, 30, 31, 34)

The parties have moved to provide the court with supplemental authority

and additional briefing on recently issued decisions pertinent to the matters

before it.   The court will grant each of these requests and has considered the

parties' supplemental authority and related briefs.

    B.    <u>Rule 12(b)(6) Standard of Review</u>

In deciding a motion to dismiss under Rule 12(b)(6), the court "must

construe the complaint in the light most favorable to the [nonmoving party] ...

[and] accept all well-pled factual allegations as true*." League of United Latin Am.*

*Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush*

*Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a

short and plain statement of the claim showing that the pleader is entitled to

relief,' in order to 'give the defendant fair notice of what the ... claim is and the

grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the

complaint must "contain[ ] sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677

(2009).

A complaint is subject to dismissal for failure to state a claim if the

allegations, taken as true, show the plaintiff is not entitled to relief, such as "when

an affirmative defense ... appears on its face."  *Jones v. Bock*, 549 U.S. 199, 215

(2007) (quotation marks omitted).  A claim has "facial plausibility" when the

nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

B.   <u>Violation of the Michigan PPPA</u>

In evaluating the allegations in the Amended Complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id.* at 556 ("[A] well-pleaded complaint may

proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, the "sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel."  *Iqbal*, 556 U.S. at 696 (dissent by Souter, J.).  Accordingly, the court must take care on a motion to dismiss to draw all reasonable inferences in plaintiff's favor and not to impose a heightened pleading standard where none is mandated by the Federal Rules of Civil Procedure or other authority.

To plead a claim under the PPPA, a plaintiff must allege facts that, if proved, would show both that (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent, and (ii) the information specifically identified the plaintiff to the party receiving that information.  Mich. Comp. Laws § 445.1712 (prohibiting disclosure "to any person, other than the customer, [of] a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer.").  Defendant contends that Plaintiff offers no facts to support her allegations that it disclosed identifying information about any customer prior to July 31, 2016.  More specifically,

Defendant contends that, while Plaintiff alleges that she has "[d]ocumented evidence" that it "rented, exchanged, and/or otherwise disclosed" the Plaintiff's Private Reading Information prior to July 31, 2016 (ECF No. 15, ¶ 1-2), that evidence is a recent NextMark, Inc. data card regarding accounts through March 1, 2022, which says nothing about 2016. *Id*. ¶ 2, Ex. A. Defendant points to *Nashel v. The New York Times*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022), *Wheaton v. Apple, Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), and *Bozung v. Christianbook, LLC*, 2023 WL 2385004 (W.D. Mich. Mar. 6, 2023) in support of its assertion that the allegations in the Amended Complaint are insufficient. In response, Plaintiff argues that the Amended Complaint contains sufficient allegations to state a claim under the PPPA, pointing to several supportive decisions, including *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018); *Briscoe v. NTVB Media Inc.*, 2023 WL 2950623 (E.D. Mich. Mar. 3, 2023) (report and recommendation by Altman, J.); and *Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339 (D. Mass. 2020).

In the court's view, a comparison of the allegations in the Amended Complaint here with those in the cases on which Defendant relies illustrate why Plaintiff's PPPA claim is plausible. For example, in *Bozung*, the court found the plaintiff's reliance on a 2022 data card problematic because it post-dated the

relevant period by several years. *Bozung*, 2023 WL 2385004, at *5. The court found deficient plaintiff's attempt to remedy the time gap by alleging that the "same 'datacard,' with the same rates shown above, was also publicly advertised by Defendant during the relevant pre-July 31, 2016 time period, with a slightly different title." *Id*. While the internet link identified in the complaint for the 2016 data card was broken, the plaintiff alleged that the link "was accessible during the relevant pre-July 31, 2016 time period[.]" *Id*. The court concluded, however, that it made little sense that a data card from 2016 was the "same" as the one from 2022 given that the latter would have contained different information than one from 2016. Based on the foregoing, the court concluded that the allegations in the complaint left the reader to speculate about "what information was advertised in the card from 2016." *Id.*

In the present case, the Amended Complaint cites a 2022 data card showing Ranger Rick subscription information for sale. (ECF No. 15, ¶ 2, PageID.663). Unlike the complaint in *Bozung*, the Amended Complaint here sufficiently addresses the time gap between the pre-July 2016 period and the 2022 data card. More specifically, it alleges (1) defendant advertised a similar data card during the pre-July 31, 2016 period; and (2) during relevant pre-July 31, 2016 period, NextMark offered to provide renters access to the mailing list titled

"Ranger Rick Marketing Genetics Masterfile," which contains the PRI of all 753,350 of NWF's then-active and recently expired U.S. subscribers at a base price of "$105.00/M [per thousand]," (i.e., 10.5 cents apiece). (ECF No. 15, ¶¶ 2-3, PageID.663-664). At this stage of the proceedings, Plaintiff need not prove her claim, and thus the court does not find the failure to proffer a copy of the data card from the relevant period to be fatal. Instead, the presentation of the 2022 data card, when combined with the allegations that a similar data card existed for the relevant time period and specific allegation quoting the contents of that card for the relevant period – that NextMark offered to provide renters access to the mailing list titled "Ranger Rick Marketing Genetics Masterfile," containing the PRI of all 753,350 of NWF's then-active and recently expired U.S. subscribers at a base price of "$105.00/M [per thousand]" – causes the Amended Complaint to pass the threshold of plausibility.

In this vein, the court finds *Horton* persuasive. There, the court concluded that the plaintiff plausibly alleged that the defendant-publisher provided subscription information in violation of the PPPA to a third party, NextMark, based on a printout from the NextMark website in which NextMark claimed to sell the publication's mailing list. *Horton*, 380 F. Supp. 3d at 682 ("Given that GameStop possessed the *Game Informer* subscription information and that

NextMark purported to sell that information, the implication that GameStop

disclosed the information to NextMark or other data-mining companies passes

the threshold of plausibility.").  The same inferences may be drawn here based on

the data card and the allegations in the Amended Complaint.  In sum, the

Amended Complaint sufficiently alleges that Defendant disclosed PRI in violation

of the PPPA, as evidenced by that information being available for sale from

NextMark during the relevant pre-July 31, 2016 period.

The court also finds *Nashel* distinguishable.  In *Nashel*, the district court

found that similar "data cards" predating the relevant period were too

speculative to support the plaintiffs' claims.  *Nashel*, 2022 WL 6775657, at *5.

The district court explained that the bare allegation that the defendant

"continued to systematically engage[ ] in the same wholesale disclosure practices

as advertised in the 2007 and 2008 data[ ]cards over the course of the next

decade plus" did not satisfy the plausibility requirements of *Twombly* and *Iqbal*.

*Id*.  The court in *Nashel* also found that the data card did not indicate from where

the allegedly violative information originated.  The plaintiffs argued that it

"necessarily originated from" the defendant and that it must have been disclosed

by the defendant at some point to be available to third parties.  *Id*.  However, the

district court concluded this to be "a large inferential leap" and therefore the

complaint was subject to dismissal. *Id*. Because data card did not explain the source of any information available in the mailing list, "nothing on the data cards explains how [NextMark] received Defendant's subscription list" and therefore "fail[s] to support a crucial element of Plaintiffs' alleged action: that Defendant engaged in the business of selling written material to disclose information personally identifying the customer." *Nashel*, at *5. Like the complaint in *Bozung*, the complaint in *Nashel* did not contain the specific allegations regarding the data offered for sale during the relevant pre-July 31, 2016 period and that the defendant sold and disclosed that information. *See Nashel v. New York Times*, Case No. 22-10633, ECF No. 16, Amended Complaint, compare, *E.R. v. National Wildlife Federation*, ECF No. 15, ¶¶ 1-3, Amended Complaint (reciting text from earlier data card). And, to the extent that *Nashel* suggests that to cross the threshold of plausibility, the data card (as opposed to the complaint) must indicate the origin of the allegedly violative information or itself prove that the defendant disclosed the PRI that was listed for sale, the court believes that such a requirement imposes an unnecessary burden of proof on the plaintiff at the pleading stage.

Next, the court does not find *Wheaton* applicable here. There, the district court ruled that similar exhibits did not contain enough information to state a

viable claim under Michigan's PPPA or Rhode Island's privacy statute.  *Wheaton*, 2019 WL 5536214, *4-5.  The district court highlighted that the third-party data broker listing proffered by the plaintiff did not contain the name of the third-party broker; the defendant, Apple; or the defendant's app, iTunes, meaning the listing could not be used to establish that the protected information originated from either Apple or iTunes.  *Id*.  The data card here does not appear to suffer from such defects, and even if it did, the allegations in the Amended Complaint address any such purported deficiencies.

Finally, Defendant argues that the data card does not establish that it plausibly violated the PPPA because the identifying information was "slugged." (ECF No. 18, PageID.1214); *see* ECF No. 15-2, "Ranger Rick Masterfile SUBSCRIBER names re provided TITLE SLUGGED only, 'To the _____ Family'.  GIFT GIVER names are provided TITLE SLUGGED AND FIRST NAME/LAST NAME.").  Defendants says "slugged" means that "the subscriber's name is not associated with the subscribed-to publication" and further contends that the "data card provides no suggestion as to what information was accessible through the mailing list."  (ECF No. 18, PageID.1214).  This is important because, to be actionable under the PPPA, the information disclosed must "specifically identify the plaintiff to the party receiving that information."  Mich. Comp. Laws § 445.1712.

The court agrees with Plaintiff that this argument is an attempt to hold her to an inapplicable evidentiary standard at the pleading stage. The court cannot, and need not, in the context of this motion to dismiss, determine the meaning of the term "slugged" or the precise scope and nature of the information accessible through the mailing list. *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (In assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged.") (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

## C.   Statute of Limitations

### 1.   Sufficiency of allegations in the complaint

Defendant's first statute of limitations argument is that, whether the three- or six-year limitations period applies, Plaintiff fails to plead that her claim is timely. That is, Defendant argues that Plaintiff's claims are not timely unless her PRI was disclosed within six years of when she brought her claim. Based on the initial filing date of May 30, 2022, Plaintiff's PRI would have had to have been disclosed in the May 30, 2016 to July 30, 2016 timeframe for her claim to be timely under the pre-July 30, 2016 statute. According to Defendant, the

Amended Complaint does not plead that; instead, it only refers to the "relevant pre-July 2016 time period," without any specificity.  (ECF No. 15, ¶¶ 1-5, 11, 48, 51, 67, 71-74).  Because there is no allegation in the Amended Complaint that Plaintiff's PRI was disclosed from May 30, 2016 to July 30, 2016, Defendant maintains that the PPPA claim fails, even assuming a six-year limitations period.

As the Sixth Circuit has admonished, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations," unless "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).  Accordingly, the court agrees with Plaintiff that that she is not required to affirmatively plead compliance with the statute of limitations.  Thus, there is no requirement for her to identify in the complaint the precise date her own PRI was disclosed.

Additionally, the complaint does not affirmatively show that Plaintiff's claims are time barred, where the six-year limitations period applies, as the court concludes, *infra*.  In her Amended Complaint, Plaintiff alleges that the "relevant pre-July 31, 2016 time period" is the period that begins on the earliest possible date of an actionable statutory violation (six years prior to the case's filing) pursuant to the governing six-year statutory period set forth in Mich. Comp. Laws

17

§ 600.5813 (which the Governor of Michigan tolled for 101 days during the COVID-19 pandemic), and ends on July 30, 2016 (the last date on which the version of the statute invoked in this case existed prior to the effective date of its amendment).  *See* ECF No. 15, ¶ 1 n.1 (stating that "[t]he statutory period for this action is six years," and citing Mich. Comp. Laws § 600.5813); *id*. ¶ 1 n.2 ("Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case.").  Thus, according to the Amended Complaint, the relevant period is from February 20, 2016 through July 30, 2016.[1]  Even using Defendant's more limited time frame of May 30, 2016 to July 30, 2016, the Amended Complaint does not suggest, on its face, that its allegations of wrongful disclosure of PRI fall outside the six-year limitations period.  Accordingly, dismissal on this basis is unwarranted.

---

[1] The parties dispute whether the applicable statute of limitations is tolled and how this affects the present controversy and the scope of the class claims.  However, this issue appears to fall outside the scope of the motion to dismiss, which is limited to three discrete issues: (1) whether Plaintiff's Amended Complaint states a PPPA claim; (2) whether the statute of limitations bars the PPPA claim based on the face of the Amended Complaint; and (3) whether the three-year or six-year limitations period is applicable to the PPPA claim.  Notably, the parties agreed at the hearing that the court need not address tolling at this stage of the proceedings.

2.    Applicable Statute of Limitation

Since the Sixth Circuit issued its decision in *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530 (6th Cir. 2017), several district courts have revisited whether the three- or six-year limitations period applies to the PPPA under Michigan law.  Before *Palmer Park*, a number of district courts had applied the three-year limitations period from Mich. Comp. Laws § 600.5805, but did not address whether the six-year limitations period found in Mich. Comp. Laws § 600.5813 was more appropriate.  *See Briscoe*, at *10-11 (collecting cases).  In *Palmer Park*, the Sixth Circuit held that a statutory claim for penalty interest was governed by the six-year statute of limitations at § 600.5815 because it did not arise under the underlying insurance policy or an injury from a traditional tort. Mich. Comp. Laws § 600.5813 is the "catch all" limitation, which states: "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes." After the *Palmer Park* decision, several district court decisions have held that the six-year limitations period, not the three-year limitations period, applies to PPPA claims.  *See Briscoe*, at *11 (citing *Krassick v. Archaeological Inst. of Am.*, 2022 WL 2071730, at *5 (W.D. Mich. June 9, 2022) (Jarbou, J.); *Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Grp., Inc.*, 586 F. Supp. 3d 666, 673 (E.D.

Mich. 2022) (Ludington, J.); *Nashel,* 2022 WL 6775657, at *3-4 (Murphy, J.); *Hall v. Farm Journal, Inc.*, 2:21-cv-11811, ECF No. 26, PageID.718 (E.D. Mich. Apr. 5, 2022) (Lawson, J.)).

As explained in *Krassick*, the Sixth Circuit in *Palmer Park* and the Michigan Court of Appeals in *DiPonio Constr. Co. v. Rosati Masonry Co.*, 631 N.W.2d 59, 66 (Mich. Ct. App. 2001) both concluded that § 600.5813 applies to statutory causes of action if the statute itself does not provide a limitation period. *Krassick*, 2022 WL 2071730 at *3. The *Krassick* court further explained that this reasoning stems from *Citizens for Pretrial Justice v. Goldfarb*, 327 N.W.2d 910 (Mich. 1982), in which the Michigan Supreme Court addressed which limitations period applied to the plaintiffs' claim that the defendant had overcharged them, in violation of various bail bond statutes. *Krassick*, 2022 WL 2071730 at *3. The *Goldfarb* court considered whether the overcharge claim was subject to § 5805 or § 5813 and concluded that the latter applied because § 5805 "applies to traditional, primarily common-law torts," and the "injury complained of" by the plaintiffs "is not a traditional tort." *Goldfarb*, 327 N.W.2d at 915. Based on the foregoing authority, the various post-*Palmer Park* district court decisions have concluded that the right to privacy in reading materials is <u>not</u> a traditional common law tort and while similar to the common law tort of invasion of privacy, it was still a creature of

statute not found in the common law, making § 5813 applicable. *See Krassick*, 2022 WL 2071730 at *3; *Nashel*, 2022 WL 6775657, at *4; *Pratt*, 586 F.Supp.3d at 673. The court finds the reasoning of these decisions persuasive and concludes that the six-year limitations period applies to the PPPA claim.

Defendant's arguments to the contrary are unavailing. Defendant insists that *Palmer Park* and *DiPonio* do not govern because neither involved a personal injury, like the PPPA. And Defendant points out that the Sixth Circuit in *Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir. 2020), applied the three-year limitations period to a claim brought under Michigan's Ethnic Intimidation statute, Mich. Comp. Laws § 750.147b, suggesting that merely because a cause of action arises from a statute does not mean that that six-year period applies. In *Dabish*, the Sixth Circuit did not, however, discuss which statute of limitations should apply or address whether a claim under the Ethnic Intimidation statute was akin to any tort found at common law. Given the lack of analysis in *Dabish* of the issue before this court, its ultimate conclusion on the applicable statute of limitations is less than compelling and does not appear controlling. More importantly, *Palmer Park* and *DiPonio* do not simply conclude that where a statutory cause of action is at issue, the six-year limitations period is automatically applicable. Instead, the courts also examined, consistent with

*Goldfarb*, whether the claimed statutory violation is like a traditional common-law tort or creates a *new* cause of action. Where a *new* statutory cause of action is at issue, and no specific limitations period is provided, then the six-year provision governs. Thus, *Dabish* provides no basis for this court to reconsider the analysis found *Krassick* and *Nashel*.

## IV.     CONCLUSION

For the reasons set forth above, the motions to submit supplemental authority and provide a response to same are **GRANTED** and Defendant's Motion to Dismiss is **DENIED**.

**SO ORDERED**.

<u>s/F. Kay Behm</u>
F. Kay Behm
United States District Judge

Dated: May 1, 2023