UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP LEE et al.,

    Plaintiffs,

v.

BELVOIR MEDIA GROUP, LLC,

    Defendant.

Case No. 22-12153
Honorable Shalina D. Kumar
Magistrate Judge David R. Grand

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF NO. 18)**

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs Phillip Lee, Pamela White, Patricia Vandusen, Ronald Allix, Randy Welch, on behalf of themselves and others similarly situated, sue defendant Belvoir Media Group, LLC (ECF Nos. 1, 16) for violating Michigan's Preservation of Personal Privacy Act, M.C.L. § 445.1712 *et seq.* H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *Id.* § 5 (PPPA). ECF No. 16. Plaintiffs, all citizens of Michigan, allege that they were subscribers to Belvoir magazine and newsletter prior to July 31,

2016.[1] *Id*. at PageID.620-23. Plaintiffs allege that Belvoir disclosed, without the requisite consent or prior notice, plaintiffs' full names, titles of publications to which they subscribed, home addresses, and other demographic data such as gender and interests to data aggregators, data appenders, and/or data cooperatives. *Id*. at PageID.611, 617. As a result of the unauthorized disclosures, plaintiffs received a barrage of unwanted junk mail and other invasions of their protected right to privacy under the PPPA. *Id*. at PageID.617.

Belvoir moves to dismiss plaintiffs' amended complaint asserting that plaintiffs lack standing to assert their claims under the PPPA and under Article III of the Constitution, fail to state a claim under Fed. R. Civ. P. 12(b)(6), and are barred by the applicable statute of limitations. ECF No. 18. The motion is fully briefed, ECF Nos. 19, 23, and the Court finds the briefing sufficient to resolve the motion without a hearing. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the Court denies the motion.

---

[1] The Michigan legislature amended the PPPA in May 2015. Under the amended PPPA, effective July 31, 2016, the $5,000 statutory penalty was eliminated, and plaintiffs could recover only proven actual damages. M.C.L. § 445.1715(2).

## II.     ANALYSIS

### A.

Belvoir argues that plaintiffs' claims should be dismissed because plaintiffs lack Article III standing to bring their PPPA claims. Article III standing is a threshold jurisdictional issue and "[i]f no plaintiff has standing, then the court lacks subject-matter jurisdiction." *Tennessee v. U.S. Dep't of State,* 931 F.3d 499, 507 (6th Cir. 2019). Article III standing consists of three elements: a plaintiff suffering an "injury in fact"—an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical; a causal connection between the injury and the conduct complained of; and the injury must likely be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Belvoir argues that there is no "injury in fact" to confer Article III standing because plaintiffs lack statutory standing to sue under the PPPA. The argument that a plaintiff lacks statutory standing to bring a claim is "analytically distinct" from the issue of Article III or prudential standing and is not a question of subject matter jurisdiction. *Roberts v. Hamer*, 655 F.3d

578, 580 (6th Cir. 2011). Statutory standing assesses whether a plaintiff is within a class of persons authorized by statute to sue, or, in other words, "has a cause of action under the statute." *Galaria v. Nationwide Mut.l Ins. Co.*, 663 F. App'x 384, 391 (6th Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-28 (2014) (quotation marks omitted)). Accordingly, "statutory standing" is treated as a failure-to-state-a-claim argument and reviewed under the Rule 12(b)(6) standard. *Id.*; *Roberts*, 655 F.3d at 581.

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Golf Village N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts construe the complaint in the light most favorable to the plaintiffs and draw all reasonable inferences in their favor. *Golf Village*, 14 F.4th at 617 (citing *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019)).

When a complaint adequately states a claim, it may not be dismissed based on the court's "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

A 12(b)(6) motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations" because the statute of limitations is an affirmative defense. *Pratt v. KSE Sportsman Media, Inc.,* 586 F. Supp. 3d 666, 671 (E.D. Mich. 2022) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). Allegations demonstrating that relief is barred by the applicable statute of limitations, however, provide an exception to this general rule. *Id*. (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

**B.**

According to Belvoir, because plaintiffs were not subscribers to any Belvoir-owned publications during the relevant time period, they lack standing to bring claims under the PPPA. Because Belvoir challenges statutory standing, the Court reviews this issue as a failure-to-state-a-claim argument under the Rule 12(b)(6) standard. *See Galaria*, 663 F. App'x at 391; *Roberts*, 655 F.3d at 581.

To support its argument that plaintiffs lack statutory standing because they were not subscribers, Belvoir relies on the declaration of its employee, Thomas E. Canfield, who denied that plaintiffs were Belvoir publication subscribers from February 21, 2016 to July 30, 2016. ECF No. 18-1. But if "matters outside the pleadings are presented to and not excluded" by the Court, the Court must convert the motion into one for summary judgment and afford all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see, e.g.*, *Rogers v. Stratton Indus., Inc.*, 798 F.2d at 915 (6th Cir. 1986) (holding on a Rule 12(b)(6) motion in which matters outside the record were relied upon, with each party filing an affidavit, the motion must be converted to a Rule 56 motion). The Court declines to convert Belvoir's motion to dismiss to that for summary judgment and thus excludes the declaration proffered to refute plaintiffs' well-pleaded allegations that they were Belvoir subscribers. *See* Fed. R. Civ. P. 12(d). Accordingly, the Court must accept plaintiffs' allegations as true. As discussed in greater detail below, it finds that the allegations are sufficient to state a plausible claim. As a result, plaintiffs have statutory standing to sue under the PPPA, and Belvoir's challenge to

plaintiffs' Article III standing, based entirely on the purported lack of statutory standing, fails.

## C.

Although separate from its statutory standing argument, Belvoir also argues that plaintiffs' amended complaint fails to state a claim under the PPPA and thus should be dismissed under Rule 12(b)(6). To plead a claim under the PPPA, a plaintiff must allege facts that show (i) the defendant disclosed the relevant information about the plaintiff without the plaintiff's consent and (ii) the information specifically identified the plaintiff to the party receiving the information. M.C.L. § 445.1712 (prohibiting disclosure "to any person, other than the customer, [of] a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer").

Plaintiffs' amended complaint alleges that:

- Plaintiffs purchased subscriptions to Belvoir publications before July 31, 2016 (ECF No. 16, ¶¶ 14, 15, 16, 17, 18, 68);

- Belvoir disclosed, rented, and/or exchanged lists containing plaintiffs' Private Reading Information (PRI)[2] to data aggregators, data appenders, data cooperatives, and other

---

[2] Private Reading Information includes subscribers' full names, titles of publications subscribed to, and home addresses. ECF No. 16, ¶ 10.

Page **7** of **18**

- third parties during the pre-July 31, 2016 time period (*Id*. ¶¶ 1, 70-75);

- Belvoir advertised its subscribers' PRI (and other categorized personal data such as gender) by way of data cards containing its rates and other terms for the exchange of PRI during the pre-July 31, 2016 time period (*Id*. ¶¶ 2, 3, 5, 6);

- Plaintiffs never consented to the disclosure of their PRI (*Id*. ¶ 77);

- Plaintiffs did not receive notice before Belvoir disclosed their PRI to third parties (*Id*. ¶¶ 54, 78);

- Plaintiffs experienced a "dramatic uptick of junk mail" during the pre-July 31, 2016 period (*Id*. ¶ 7); and

- Belvoir's disclosure of plaintiffs' PRI subjected them to various scams and fraudulent solicitations (*Id*. ¶¶ 39-40).

Belvoir contends that plaintiffs offer no facts to support their allegations that it disclosed identifying information about any customer prior to July 31, 2016. More specifically, it argues that while plaintiffs allege "that Belvoir disclosed subscriber names and addresses to unnamed 'data aggregators, data appenders, data cooperatives and list brokers' . . . [p]laintiffs do not . . . provide sufficient facts from which this Court could draw a plausible inference that Belvoir violated Plaintiffs' rights under the PPPA . . . ." ECF No. 18 PageID.1186.

"A complaint survives a motion to dismiss under Rule 12(b)(6) by simply alleging facts sufficient to state a claim to relief that is plausible on its face." *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) (quotation omitted). No "evidentiary support" – whether "in an affidavit or any other form" – is necessary "for a claim to be plausible." *Id*. The complaint must only include "(1) a short and plain jurisdictional statement, (2) a short and plain statement of the claim, and (3) an explanation of the relief sought . . . [t]hat's it." *Id.*; see also Fed. R. Civ. P. 8(a). Accordingly, when a federal court reviews "the sufficiency of a complaint" its "task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (emphasis added); *see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (holding that "[t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.").

Here, the amended complaint alleges that during the relevant pre-July 31, 2016 period, Belvoir "offer[ed], through list broker, Nextmark, Inc. ('NextMark'), to provide renters access to the mailing list titled 'BELVOIR

Page **9** of **18**

MEDIA GROUP ELITE MASTERFILE Mailing List.'" ECF No. 16, PageID.614. This mailing list contained the PRI of all active Belvoir subscribers at a base price of "$110.00/M [per thousand]" (i.e.,11 cents apiece). *Id.* In support of this allegation, plaintiffs reference and incorporate a "data card" which was advertised by Belvoir through April 30, 2022. This data card includes the PRI of all of Belvoir's subscribers and includes an order ID for interested third parties to call NextMark and order the aforementioned mailing list. *Id.* Plaintiffs allege that a similar data card was publicly advertised by Belvoir for the entire duration of the relevant pre-July 31, 2016 time period and provide a link to where that data card was accessible. *Id*. at PageID.615, n.3.

Belvoir points to the decision in *Nashel* v. *The N.Y. Times*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022), to support its argument that "the relied upon data card from an irrelevant time period does not rise to the level of the requisite plausible inference." ECF No. 18 PageID.1187. In *Nashel*, the district court found that similar data cards predating the relevant period were too speculative to support the plaintiffs' claims. 2022 WL 6775657, at *5. However, unlike the complaint in *Nashel*, which did not contain the specific allegations regarding the data offered for sale during the relevant

period, the amended complaint here cites a 2022 data card showing Belvoir subscriber data on offer and alleges that a similar data card advertised subscriber data in the pre-July 31, 2016 period. Because plaintiffs need not prove their claims at this stage of the proceedings, the presentation of the 2022 data card, along with specific allegations regarding a similar data card which existed for the relevant time period, suffices to state a plausible PPPA claim. *See Gaines v. Nat'l Wildlife Fed'n*, No. 22-11173, 2023 WL 3186284, at *4 (E.D. Mich. May 1, 2023).

Belvoir also argues that the data card incorporated in the amended complaint is deficient to create a plausible PPPA claim because it does not indicate the disclosed PRI originated from Belvoir. Again, Belvoir relies on *Nashel*, 2022 WL 6775657, at *5. The *Nashel* plaintiffs argued that it "necessarily originated from" the defendant and that it must have been disclosed by the defendant at some point to be available to third parties. *Id*. However, the district court concluded this to be "a large inferential leap" and therefore the complaint was subject to dismissal. *Id*.

The Court joins others in this district in rejecting the *Nashel* court's analysis.

> [T]o the extent *Nashel* suggests that to cross the threshold of plausibility, the data card (as opposed to the complaint) must indicate the origin of the allegedly violative information or itself prove that the defendant disclosed the [private reading information] that was listed for sale, . . . such a requirement imposes an unnecessary burden of proof on the plaintiff at the pleading stage.

*Nock v. Boardroom, Inc.*, 2023 WL 3572857, at *5 (E.D. Mich. May 19, 2023) (quoting *Gaines,* 2023 WL 3186284, at *4); *see also Horton v. GameStop Corp.*, 380 F. Supp.3d 679, 682 (W.D. Mich. 2018) ("Given that GameStop possessed the Game Informer subscription information and that NextMark purported to sell that information, the implication that GameStop disclosed the information to NextMark or other data-mining companies passes the threshold of plausibility.").

Belvoir also relies on *Wheaton v. Apple, Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), which held that plaintiffs failed to plausibly allege enough facts because the data cards, attached as exhibits to the complaint, did not show that the defendant disclosed plaintiffs personal listening information to third-party data brokers. 2019 WL 5536214, at *5. In *Wheaton*, the data cards did not display the third-party broker name, the defendant's name, or the defendant's application name. *Id*. The *Wheaton* court thus concluded that the data card exhibits, and by extension the

complaint, did not plausibly allege that the defendant disclosed plaintiffs' names. *Id*. By contrast, in this case, the data card incorporated and attached to the amended complaint contains the "Belvoir Media Group" name and trademark and advertises that the list on offer "consist[s] of the subscribers to all of Belvoir's newsletters." ECF No. 16-1. It also identifies NextMark as a list broker. *Id*. The data card here thus does not suffer from the same defects that were fatal to the *Wheaton* plaintiffs' claims. *See Gaines*, 2023 WL 3186284, at *5.

In sum, the Court finds that plaintiffs' allegations state a plausible claim for relief under the PPPA and are sufficient to withstand Rule 12(b)(6) scrutiny.

**D.**

Belvoir alternatively argues for dismissal based on the statute of limitations. Plaintiffs contend that Michigan's six-year catch-all limitations period under M.C.L. § 600.5813 applies to actions brought under the PPPA. Belvoir, citing M.C.L. § 600.5805(2), argues that a three-year limitations period applies to the instant case because a PPPA claim is a common law privacy-based claim. Belvoir also argues that even if the Court applies the six-year statute of limitations, plaintiffs' claims are still

untimely because they filed their claims past the expiration of that limitations period. Plaintiffs, in response, argue that their claims are tolled by Michigan's COVID-19 Orders[3] and class action tolling. The Court will address each argument in turn.

First, consistent with the now well-established rulings from courts within the circuit, the Court finds that the six-year limitations period applies to the plaintiffs' claims. *See Gaines*, 2023 WL 3186284, at *6 (collecting cases).

In Michigan, "a civil cause of action arising from a statutory violation is subject to the six-year limitation period found in § 5813, if the statute itself does not provide a limitation period." *DiPonio Constr. Co. v. Rosati Masonry Co.*, 631 N.W. 2d 59, 66 (Mich. Ct. App. 2001); *see also Palmer Park Square v. Scottsdale Ins. Co.*, 878 F.3d 530, 539-40 (6th Cir. 2017). *Palmer Park* and *DiPonio* do not simply conclude that where a statutory cause of action is at issue, the six-year limitations period is automatically applicable. *Gaines*, 2023 WL 3186284, at *7. They also assess whether the

---

[3] Michigan COVID-19 Orders refer collectively to Executive Orders 2020-58 and 2020-122 issued by the Governor of Michigan on April 22, 2020 and June 12, 2020, respectively, and Administrative Orders 2020-3 and 2020-18 promulgated by the Michigan Supreme Court on March 23, 2020 and June 12, 2020, respectively.

claimed statutory violation is like a traditional common-law tort or creates a new cause of action. *Id*. "Where a *new* statutory cause of action is at issue, and no specific limitations period is provided, then the six-year provision governs." *Id*.

An injury to the right to privacy in reading materials is not a traditional common-law tort. *Krassick*, 2022 WL 2071730, at *3. "Although such a right is 'similar in kind' to rights protected by the common-law tort of invasion of privacy, the right to privacy in one's reading materials is nonetheless the creation of a statute; it did not exist under common law." *Id*. (citing *Perlin*, 237 F. Supp. 3d at 640). Because the PPPA "lacks an explicit limitations period" and creates a new statutory cause of action, the six-year limitations period applies. *Nashel*, 2022 WL 6775657, at *3; *Krassick*, 2022 WL 2071730, at *3 (citing *Nat'l Sand, Inc. v. Nagel Constr., Inc.*, 451 N.W. 2d 618, 622 (Mich. Ct. App. 1990)); *see also Pratt*, 586 F. Supp. 3d at 673.

Belvoir argues that decades of Michigan law apply the three-year statute of limitations to statutory claims, even if the statute is silent on a limitations period. To illustrate this point, Belvoir cites an unpublished Sixth Circuit case and two unpublished Michigan Court of Appeals cases, none of which address the PPPA, the six-year statute of limitations under M.C.L.

§ 600.5813, or the injury-at-issue's relationship to traditional common-law tort. *See, e.g.*, *Dabish v. McMahon*, 818 F. App'x 423, 427-29 (6th Cir. 2020) (three-year limitations period applies to Michigan's Ethnic Intimidation statute); *Marks v. Hulstrom*, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010) (applying three-year limitations period to statutory nuisance claim); *McCree v. Cont'l Mgmt., LLC*, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021) (applying three-year limitations period to Michigan Housing Act and Truth in Renting Act). Neither Belvoir's general contention, nor the cases it cites, persuades the Court to depart from the specific post-*Palmer Park* holdings applying the six-year statute of limitations under M.C.L. § 600.5813 to plaintiffs' PPPA claims. *See Gaines*, 2023 WL 3186284, at *7 (holding that given the lack of analysis of whether § 5813 applies to PPPA, *Dabish* "is less than compelling and does not appear controlling").

Second, Belvoir maintains that, even under the six-year limitations period, plaintiffs' claims are untimely and that plaintiffs cannot rely on tolling to save them. *See* ECF No. 18, PageID.1173-82. Belvoir argues that "the plain language of the COVID-19 Orders only allows tolling if the deadline to file fell in 2020 during Michigan's state of emergency[.]" *Id.* at PageID.1174.

Page **16** of **18**

The Court finds Belvoir's argument limiting the scope of the tolling provided by Michigan's COVID-19 Orders unavailing.

In *Carter v. DTN Management Co.*, the Michigan Supreme Court found that AO 2020-3 "excluded *any day* within the state of emergency '*for purposes of determining the deadline* applicable to the commencement of *all* civil and probate case types under MCR 1.108(1)." ___ N.W.2d ___, 2023 WL 439760, at *3 (Mich. Ct. App. Jan. 26, 2023) (emphasis in original); *see also Linstrom v. Trinity Health-Mich.*, ___ N.W.2d ___, 2023 WL 1482428, at *6 (Mich. Ct. App. Feb. 2, 2023) (concluding the same). The Michigan COVID-19 Orders thus tolled the statute of limitations for 101 days. *See Gaines*, 2023 WL 3186284, at *6. Accordingly, based on their September 12, 2022 filing date, plaintiffs may assert PPPA claims for disclosures going back to at least June 4, 2016.[4] *See Pratt*, 586 F. Supp.3d

---

[4] Plaintiffs allege that the statute of limitations for their PPPA claims was further tolled for 104 days—for a recovery period dating back to February 21, 2016—during the pendency of the putative class action, which was brought on behalf of the same putative class in the Western District of Michigan and dismissed the day before this action was filed. ECF No. 16, PageID.612-13, n.2. Belvoir argues that federal law prohibits such class action tolling. ECF No. 18, PageID.1174-78. Because Plaintiffs' PPPA claims survive without class action tolling, the Court need not decide this issue now. To the extent any of plaintiffs' claims rely on disclosures between February 21, 2016 and June 4, 2016, Belvoir may argue the

at 675 n.6 (calculating limitation period by adding 101 days to 2,190 days—six years—and subtracting the 2,291 days from the date original complaint filed). Because plaintiffs' amended complaint asserts at least some timely PPPA claims, it survives Belvoir's motion to dismiss.

### III.  CONCLUSION

For these reasons, the Court **DENIES** Belvoir's motion to dismiss. ECF No. 18.

Dated: September 27, 2023

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

---

unavailability of class action tolling to preserve such claims in a summary judgment motion.