IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PHILIP LEE; PAMELA WHITE; PATRICIA VANDUSEN; RONALD ALLIX; and RANDY WELCH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BELVOIR MEDIA GROUP, LLC,<br><br>Defendant. | Case No. 4:22-cv-12153-SDK-DRG<br><br>Hon. Shalina D. Kumar<br><br>Mag. David R. Grand |

**RULE 26(F) JOINT DISCOVERY PLAN**

**RELATED CASES:**

Joint Position: There are currently no pending related cases to report.

**BASIS FOR COURT'S JURISDICTION:**

Plaintiffs' Position: Plaintiffs contend that the Court has subject-matter jurisdiction over this action because the Complaint alleges that (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) the proposed class is comprised of at least 100 members. *See* 28 U.S.C. §

1

1332(d)(2)(A), (5)(B). Plaintiffs further state that that their Article III standing is conferred by their allegations in the Complaint, and that the purported factual issues raised by Defendant in its statement below concern the merits of the Plaintiffs' claims for relief – not their Article III standing to seek relief in this Court.

<u>Defendant's Position</u>: Defendant contends that the Court lacks subject matter jurisdiction because none of the named Plaintiffs have Article III standing. Because none of them purchased a subscription from Belvoir to a Belvoir-owned subscription during the relevant timeframe, none could have been injured by Belvoir.

**VENUE:**

<u>Plaintiffs' Position</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391 because at least one of the Plaintiffs resides in this judicial District, Belvoir does substantial business in this judicial District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this judicial District.

<u>Defendant's Position:</u> Defendants concede that venue is proper in this District pursuant to 28 U.S.C. § 1391 because at least one of the Plaintiffs resides in this judicial District, Belvoir does business in this judicial District, and some of the events giving rise to Plaintiffs' claims took place within this judicial District.

**PLEASE PROVIDE A SUMMARY OF THE CASE AND ISSUES:**

<u>Plaintiffs' Summary</u>: On September 12, 2022, Plaintiffs Phillip Lee, Pamela White, Patricia VanDusen, Ronald Allix, and Randy Welch (collectively, "Plaintiffs") filed a Complaint (ECF No. 1) alleging that Defendant Belvoir rented, exchanged, and/or otherwise disclosed detailed information about Plaintiffs' subscriptions to Belvoir publications to data aggregators, data appenders, data cooperatives, and list brokers, among others, which in turn disclosed their information to aggressive advertisers, political organizations, and non-profit companies. As a result, Plaintiffs allege that they received a barrage of unwanted junk mail. By renting, exchanging, and/or otherwise disclosing Plaintiffs' Private Reading Information ("PRI") during the relevant pre-July 31, 2016 time period without providing them with prior notice or obtaining Plaintiffs' written consent, Plaintiffs contend that Belvoir violated Michigan's Preservation of Personal Privacy Act (the "PPPA"). On December 12, 2022, Plaintiffs filed a first amended complaint ("FAC"). *See* ECF No. 16.

In response to Plaintiffs' FAC, on January 27, 2023, Defendant filed its Motion to Dismiss (ECF No. 18) in which it contended that the Plaintiffs lacked standing to bring their claims, failed to state a claim under the PPPA, and the claims were time barred. The Court denied the motion to dismiss on September 27,

3

2023 (ECF No. 37). Defendant filed its Answer and Affirmative Defenses on October 10, 2023 (ECF No. 38) in which it generally denies the substantive allegations in Plaintiffs' FAC. It further contends that the putative class is not legally proper and that the action is not properly maintainable as a class action.

Plaintiffs will soon be seeking leave to file a Second Amended Complaint to remove Plaintiffs Lee, White, VanDusen, and Welch from the action and add two additional named plaintiffs.  Plaintiffs have begun the meet and confer process with Defendant's counsel concerning this proposed amendment, including by providing Defendant's counsel with a copy of the proposed Second Amended Complaint and, at counsel for Defendant's request, by providing Defendant's counsel the names and addresses of the two new plaintiffs (for Defendant to attempt to locate in its subscriber database). Defendant is considering whether it will stipulate to such an amendment, and Plaintiffs have requested that Defendant provide its position on the amendment prior to the upcoming hearing with the Court.  If Defendant does not consent to the amendment, Plaintiffs intend to file a motion for leave to amend prior to the upcoming hearing.

The principal factual and legal issues include: (i) whether Defendant is or was engaged in the business of selling magazines, newsletters, and books "at retail" and whether Plaintiffs and putative class members purchased subscriptions from Defendant "at retail"; (ii) whether Defendant rented exchanged, and/or

otherwise disclosed Plaintiffs' and the putative Class's subscription records between February 21, 2016 to July 30, 2016 to any other person; (iii) whether Belvoir obtained consent before disclosing to third parties Plaintiffs' and the Class's Private Reading Information; and (iv) whether Belvoir's disclosures of Plaintiffs and the Class's Private Reading Information this matter is properly maintainable as a class action.

    <u>Defendant's Summary</u>: Before addressing any of the issues stated above, there is a case-dispositive and threshold issue as to whether the named Plaintiffs purchased a Belvoir-owned publication from Belvoir during the relevant time period. If they did not, then at a minimum they lack statutory standing and, also, potentially lack Article III standing. By way of background, this case originated May 2022 in the Western District of Michigan with different named plaintiffs and the same Plaintiffs' counsel as here. *Taylor v. Belvoir Media Group, LLC*, No. 1:22-cv-00477 (W.D. Mich.). When confronted with Defendant's motion to dismiss on standing grounds (*id.*, ECF No. 20), the plaintiffs voluntarily dismissed their action. (*Id.*, ECF No. 24). Rather than litigate the motion, Plaintiffs' counsel filed the instant action, with entirely different named Plaintiffs. (ECF No. 1). Defendant promptly moved to dismiss that action also on standing grounds. (ECF No. 15). Instead of opposing that motion, the named Plaintiffs filed their First Amended Complaint ("FAC"). (ECF No. 16). Defendant once again promptly

5

moved to dismiss the operative complaint because none of the named Plaintiffs have standing to pursue this action. (ECF No. 18). Four of the named Plaintiffs did not subscribe to a Belvoir-owned publication during the relevant time period. (ECF No. 18-1, at ¶¶ 6-14, 17-18). Plaintiffs' counsel concedes as much with respect to these four named Plaintiffs they are now voluntarily dismissing. The remaining named Plaintiff, Ronald Allix, did not purchase his subscription from Belvoir (ECF No. 23-1, at ¶¶ 2-7), and thus his purchase was not "at retail," and falls outside the scope of the PPPA under Sixth Circuit precedent. *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 123–24 (6th Cir. 2017). Defendant submitted two sworn declarations in support of these facts, which it also attached to its Answer in this case. (ECF Nos. 38-1, 38-2). Of the five named Plaintiffs, only one of them, Ronald Allix, submitted a declaration in opposition—a declaration that did not address from whom he purchased his subscription. (ECF No. 19-4). The Court did not consider any of these declarations on procedural grounds and has allowed the suit to continue. (ECF No. 37, PageID.1842-43). Thus, the principal issue at this stage is whether any of the named Plaintiffs have standing to bring this case as an initial matter. Based on these facts, Defendant intends to move for summary judgment on standing grounds and put an end to this already costly suit which has gone on for a year and half even though there has never been an authentic named Plaintiff, as described further below in response to Question 1. As also described in

response to Question 1, Defendant opposes any amendment to add plaintiffs precisely because this case has continued despite there never having been a Plaintiff with standing. If the Court allows Plaintiffs' counsel to nevertheless move for leave to amend to add plaintiffs, Defendant will evaluate its position when it sees Plaintiffs' motion.

In addition to the threshold issue regarding Plaintiffs' standing, and the issues identified above by Plaintiffs, there are additional factual and legal issues in this matter including, for example: (i) whether Defendant provided written notice and an opportunity to opt out of disclosures pursuant to the PPPA's marketing exception (M.C.L. 445.1713(d)(1989)); (ii) whether Plaintiffs consented to any disclosures or otherwise waived their ability to claim Defendant violated the PPPA; (iii) whether any complained of disclosures were to Defendant's "agents" as permitted under the PPPA; and (iv) whether the relevant class period is extended by class action tolling and/or so-called "COVID" tolling.

---

1. **What changes should be made in the timing, form, or disclosures under Rule 26(a)? Please include when initial disclosures were made or will be made.**

    <u>Joint Position</u>: The Parties propose initial disclosures be made by December 21, 2023, in accordance with this Court's Rules on Efficient Discovery.

**2. What are the subjects on which discovery may be needed? When should discovery be completed? Should discovery be completed in phases or be limited to or focused on particular issues?**

<u>Plaintiffs' Position</u>: Plaintiffs believe that discovery will be needed in the following areas: (i) the manner by which Defendant purported to obtain its customers' consent to rent, exchange, and/or otherwise disclose their subscription records prior to July 31, 2016; (ii) any written notice Defendant provided to Plaintiffs and the putative Class of their right to remove their names from any rentals, exchanges, and/or disclosures of customer lists prior to July 31, 2016, and the manner by which any such notice was provided; (iii) the identities of any third parties that received Defendant's customers' subscription records between February 21, 2016 to July 30, 2016; (iv) copies of all transmissions of customers' subscription records to third parties between February 21, 2016 to July 30, 2016; (v) the contracts between Defendant and third parties relating to the rentals, exchanges, and other disclosures at issue; (vi) any and all contracts between Defendant and Plaintiffs and the members of the putative Class; (vii) subscription and payment records of Plaintiffs and the members of the putative class; and (viii) the size and identities of the members of the putative Class. Discovery is capable of completion by October 25, 2024 and should proceed in the ordinary course. In counsel for Plaintiffs' experience, having litigated close to 100 PPPA matters, the

8

"phasing" that Defendant proposes below would lead to unnecessary delay, needlessly duplicative discovery[1], and wasted judicial resources resulting from motions to resolve disputes about whether a particular discovery request seeks individual merits or class certification-related discovery. Notably, Defendant does not even deny disclosing its **entire** subscriber database to third parties during the relevant time period – the only question is whether the named Plaintiffs' information was included within that database. So discovery concerning the named Plaintiffs' claims is inexorably intertwined with the claims of the putative Class members and issues related to the certification of the putative Class. There is thus no cogent reason to "phase" or "bifurcate" discovery in this matter.[2]

---

[1] Oddly, Defendant proposes an exception to its own proposal for duplicative periods of "phased" discovery by declaring below that "[t]he named Plaintiffs would only be deposed once in the case, during Phase I discovery, as to the entirety of their claims and their capacity to represent a class." Defendant, however, would force Plaintiffs to take Defendant's deposition and the deposition of various third party recipients of Defendant's transmitted subscriber database multiple times, first in "phase I" and again in "phase II." This makes no sense, and would be plainly contrary to Rule 1's mandate for a just, speedy, and expeditious resolution to this matter.

[2] To the extent the Court were to adopt Defendant's misguided proposed "phased" plan for discovery, Defendant says that it would like to file a motion for summary judgment at the conclusion of "phase I." If that were to occur, Defendant will have waived the rule against one-way intervention and Plaintiffs would likewise be entitled to move for summary judgment at the conclusion of phase I of discovery, without being precluded from later moving for class certification. *See Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 429 (6th Cir. 1999) (discussing rule against one-way intervention); *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 46 (W.D.N.Y. 2009) (discussing and finding waiver of the

9

Defendant's Position:  Discovery should be phased given the threshold issue of the named Plaintiffs' standing to pursue this case, as set forth above. For Phase I, Defendant proposes discovery as to the named Plaintiffs' standing, to be completed by March 8, 2024. Such discovery would be limited to include: (i) Each named Plaintiffs' evidence of their alleged purchases of a Belvoir-owned publication prior to July 30, 2016, including but not limited to title(s), payment information, vendor information;[3] and (ii) Defendant's subscription records for the named Plaintiffs. After the conclusion of Phase I discovery, Defendant would make its motion for summary judgment for lack of standing. Moreover, to the extent the Michigan Supreme Court may have ruled by that time as to the legitimacy of Covid-tolling, Defendant reserves the right to move for summary judgment on that basis as well at that time.[4]

---

rule against one-way intervention where defendant proposed filing motions for summary judgment on individual merits issues prior to class certification).

[3] The named Plaintiffs would only be deposed once in the case, during Phase I discovery, as to the entirety of their claims and their capacity to represent a class. Contrary to Plaintiffs' argument in footnote 1, allowing a one-day deposition for each named Plaintiff as to their claims is efficient because the case cannot proceed unless their claims are viable. The named Plaintiffs' apples to oranges comparison regarding discovery as to Defendant and third parties makes no sense: that discovery is massive and unnecessary if the named Plaintiffs cannot proceed.

[4] The Michigan Supreme Court is considering the issue of Covid-tolling. *Carter v. DTN Mgmt. Co.*, 991 N.W.2d 586 (Mich. 2023) (Mem.); *see also Armijo v. Bronson Methodist Hospital*, 2023 WL 324450 (Mich. Ct. App. Jan. 19, 2023); *Compagner v. Burch*, No. 359699, 2023 WL 3766734 (Mich. Ct. App. June 1, 2023).

Plaintiffs' counsel should not be permitted to add any more named plaintiffs at this juncture. If they can find someone with standing, it will only be because they prolonged a case where none of the plaintiffs ever had standing and which was therefore not properly before the Court. If the case proceeds on that basis, Defendant reserves the right to pursue further discovery as to what counsel knew about their named Plaintiffs' purchases of Belvoir-owned publications during the relevant time period both prior to bringing suit and after Belvoir's challenges to standing.

Should the case survive Defendant's motion for summary judgment at the close of Phase I discovery, then Phase II discovery would begin, with dates keyed off of the date of the order on Defendant's motion for summary judgment, as set forth below. Such discovery would be aimed at the class allegations. Should the case proceed into Phase II discovery, Defendant contemplates making a second motion for summary judgment after the close of discovery based on the lack of actionable disclosures under the Michigan PPPA, and asks the Court to grant it leave to do so now in light of the special facts of this case, given the Court's Practice Guidelines that a party may only move for summary judgment once without leave of Court. (Practice Guidelines, Motion Practice, (F) Summary Judgment.)

The named Plaintiffs state without basis that Belvoir must have disclosed its entire database of subscribers because Belvoir never denied it. But Belvoir never stated that, and tellingly, Plaintiffs do not point to the Answer or anything else for that statement. Moreover, the named Plaintiffs contend that "the only question is whether the named Plaintiffs' information was included within that database." But they are wrong. The very first question is whether the named Plaintiffs have standing to proceed on their own, without resort to the claims of the putative class. *Warth v. Seldin*, 422 U.S. 490, 498-502 (1975); *Lewis v. Casey*, 518 U.S. 343, 357-58 (1996). If the named Plaintiffs lack standing because they did not purchase a Belvoir-owned publication directly from Belvoir, the case must be dismissed, and discovery as to the putative class is wasteful and inefficient. Individual and class discovery are not "intertwined" at all at this juncture. Finally, Defendant is not seeking to "bifurcate" class and merits discovery. Rather, Defendant seeks to phase discovery to first determine whether the named Plaintiffs have standing, and if they do, to then proceed to class and merits discovery.

3. **Are there any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced?**

    Joint Position: The Parties agree to preserve all relevant documents, communications, and other evidence within their possession, custody, or control, and to produce it electronically, where possible. Production of electronically stored

12

information should be in PDF format, and hardcopy documents should be scanned and produced as PDF images. Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape). To the extent possible, documents should be made searchable through Optical Character Recognition ("OCR"). The Parties agree to use best efforts to ensure that any OCR processes do not compromise text quality or legibility. Any settings such as "auto-skewing," "auto-rotation," and the like should be turned on when documents are run through the process, except to the extent that applying these automatic settings would unduly risk compromising or distorting a document.

4. **Are there any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the Court to include their agreement in an order under Federal Rule of Evidence 502?**

    Joint Position: Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties will petition the Court to enter a Stipulated Protective Order.

5. **What changes should be made in the limitation on discovery imposed under these rules or by local rule, and what other limitations should be imposed?**

    Joint Position: No changes should be made.

6. **Are there any other orders that the Court should issue under Rule 26(c) or under Rule 16(b) and (c)?**

14

<u>Joint Position</u>: None at this time.

## PROPOSED DATES

| EVENT | PLAINTIFFS' POSITION | DEFENDANT'S POSITION |
|---|---|---|
| Exchange of Initial Disclosures under Fed. R. Civ. R. 26(a)(1): | December 21, 2023 | December 21, 2023 |
| Deadline to Amend Pleadings: | April 5, 2024 | December 15, 2023—but no amendment allowed to add named Plaintiffs |
| Deadline for Identification of all witnesses (including experts): | May 24, 2024 | Three months after ruling on motion for summary judgment as to standing as to Phase 1, or to be determined by future order |
| Reports pursuant to Fed. R. Civ. P. 26(a)(2)(B) or disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(C) by **Plaintiffs'** experts are due: | July 12, 2024 | Five months after ruling on motion for summary judgment as to standing as to Phase I, or to be determined by future order |
| Reports pursuant to Fed. R. Civ. P. 26(a)(2)(B) or Disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(C) | August 16, 2024 | Seven months after ruling on motion for summary judgment as to standing, or to be determined by future order |

| EVENT | PLAINTIFFS' POSITION | DEFENDANT'S POSITION |
|---|---|---|
| by **Defendant's** experts are due: | | |
| Rebuttal reports are due: | September 20, 2024 | Eight months after ruling on motion for summary judgment as to standing, or to be determined by future order |
| Deadline for **completing discovery**: | October 25, 2024 | <u>Phase 1:</u><br>March 8, 2024<br><br><u>Phase 2:</u><br>Ten months after ruling on motion for summary judgment as to standing, or to be determined by future order |
| Status Conference date and time: | November 22, 2024 | 21 days after ruling on motion for summary judgment as to Phase 1 standing |
| Dispositive Motions must be filed by: | December 20, 2024 | <u>Phase 1:</u><br>April 5, 2024<br><br><u>Phase 2:</u><br>Twelve months after ruling on motion for summary judgment as to standing, or to be determined by future order |

**HAS A JURY DEMAND BEEN FILED IN THIS CASE?  [X] YES  [ ] NO**

**WHAT IS THE ESTIMATED LENGTH OF THE JURY TRIAL?**

<u>Joint Position:</u> The parties estimate that the trial will last 5-7 days.

**WHAT IS THE ESTIMATED LENGTH OF THE BENCH TRIAL?**

<u>Joint Position:</u> N/A

**PLEASE REVIEW THE COURT'S PRACTICE GUIDELINES FOR DISCOVERY.**

Dated: November 30, 2023

Respectfully submitted,

**PHILIP LEE; PAMELA WHITE; PATRICIA VANDUSEN; RONALD ALLIX; AND RANDY WELCH**, individually and on behalf of all others similarly situated,

By: *E. Powell Miller*
E. Powell Miller (P39487)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin

17

Arun G. Ravindran
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801
fhedin@hedinhall.com
aravindran@hedinhall.com

*Counsel for Plaintiffs and the putative class*

Respectfully submitted,

By: __/s/ Kristen C. Rodriguez w/permission__
Kristen C. Rodriguez
Deborah H. Renner
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
kristen.rodriguez@dentons.com
deborah.renner@dentons.com

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
220 Park Street, Suite 200
Birmingham, MI 48009
(248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant
Belvoir Media Group*

Dated: November 30, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2023, I electronically filed the foregoing document(s) using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
