# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| PHILIP LEE; PAMELA WHITE; PATRICIA VANDUSEN; RONALD ALLIX; and RANDY WELCH, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Case No. 4:22-cv-12153 <br><br> Hon. Shalina D. Kumar |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BELVOIR MEDIA GROUP, LLC, | ) | **ORAL ARGUMENT** |
| Defendant. | ) | **REQUESTED** |
| | ) | |
| | ) | |

## DEFENDANT BELVOIR MEDIA GROUP, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED ............................................................. vii

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY ..... viii

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................5

I.  The Actions Against Belvoir Have Never Had a Valid Named Plaintiff........5

II.  Plaintiffs' Counsel's Search For a Valid Plaintiff and the Filing of the
Proposed SAC.................................................................................................7

ARGUMENT ..........................................................................................................7

I.  Amendment Is Futile. .....................................................................................7

A.  Courts Deny Leave to Amend Where, as Here, Amendment
Would Be Futile....................................................................................7

B.  No Named Plaintiff Ever Had Article III Standing. ............................. 8

C.  Proposed Plaintiffs' Vandebunte's and Lepsetz's Claims Are
Untimely. ............................................................................................ 13

1.  Vandebunte And Lepsetz's Claims Do Not Relate Back to
the Initial Complaint. ............................................................... 13

2.  Vandebunte And Lepsetz Are Not Entitled to Tolling. ............ 15

a.  Class Action Tolling Cannot Save the Proposed Plaintiffs'
Claims....................................................................................15

b.  COVID-19 Tolling Cannot Save the Proposed Plaintiffs'
Claims....................................................................................18

II.  Plaintiffs Should Not Be Rewarded for Their Bad Faith, Delay, and
Prejudicial Gamesmanship. ...........................................................................19

III.  The Court Should Order Limited Discovery if Needed. ...............................23

CONCLUSION .....................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agarwal v. Lynch*,
   610 F. Supp. 3d 990 (E.D. Mich. 2022) .............................................................24

*Aguilar v. Boulder Brands, Inc.*,
   No. 3:12-cv-01862-BTM-BGS, 2014 WL 4352169 (S.D. Cal. Sept.
   2, 2014) ...................................................................................................................23

*Am. Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974)....................................................................13, 16, 17, 18, 19

*Armijo v. Bronson Methodist Hosp. et al.*,
   Nos. 165399-165400 (Mich.)....................................................................................18

*Barnes v. First Am. Title Ins. Co.*,
   473 F. Supp. 2d 798 (N.D. Ohio 2007) ...................................................13, 14, 15

*Boelter v. Hearst Commc'ns*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) .............................................................10

*Broadnax v. SSF Imported Auto Parts LLC*,
   No. 1:21-CV-295-MLB, 2022 WL 19974533 (N.D. Ga. March 25,
   2022) .....................................................................................................................21, 22

*Buchholz v. Meyer Njus Tanick, PA*,
   946 F.3d 855 (6th Cir. 2020) .................................................................................8

*Carter v. DTN Management Co.*,
   --- N.W.2d ---, 2023 WL 439760 (Mich. App. Jan. 26, 2023)............................18

*Cataldo v. U.S. Steel Corp.*,
   676 F.3d 542 (6th Cir. 2012) .................................................................................8

*China Agritech, Inc. v. Resh*,
   584 U.S. 732 (2018)......................................................................17, 18, 19

*Clabo v. Johnson & Johnson Health Care Sys., Inc.*,
   982 F.3d 989 (6th Cir. 2020) .................................................................................8

*In re Colonial Ltd. P'ship Litig.*,
854 F. Supp. 64 (D. Conn. 1994)..................................................................16, 17

*Corbin v. Blankenburg*,
39 F.3d 650 (6th Cir. 1994) ...........................................................................12

*Coulter-Owens v. Time Inc.*,
695 F. App'x 117 (6th Cir. 2017) ...........................................................2, 9, 10, 11

*In re Crazy Eddie Sec. Litig.*,
747 F. Supp. 850 (E.D.N.Y. 1990) ....................................................................17

*Crosby v. Bowater Inc. Ret. Plan for Salaried Emps. of Great N. Paper Inc.*,
382 F.3d 587 (6th Cir. 2004) ......................................................................14, 19

*Currithers v. FedEx Ground Package Sys., Inc.*,
No. 04-10055, 2012 WL 458466 (E.D. Mich. Feb. 13, 2012) ..........................15

*Doe v. Mich. State Univ.*,
989 F.3d 418 (6th Cir. 2021) ......................................................................19, 20

*Duchon v. Cajon Co.*,
791 F.2d 43 (6th Cir. 1986) ...........................................................................20

*Dziennik v. Sealift, Inc.*,
No. CV 2005-4659 (DLI) (MDG), 2009 WL 10705790 (E.D.N.Y. April 1, 2009)..........................................................................................15

*Elite Int'l Enter., Inc. v. Patton Wallcoverings, Inc.*,
No. 12-14620, 2013 WL 12182285 (E.D. Mich. Nov. 4, 2013) ......................12

*F5 Capital v. Pappas*,
856 F.3d 61 (2d Cir. 2017) ...........................................................................17

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
446 F. Supp. 3d 218 (E.D. Mich. 2020) ......................................................17, 19

*Foman v. Davis*,
371 U.S. 178 (1962)................................................................................12, 19

*Francisco v. Emeritus Corp.*,
    No. LACV 17-2871-VAP, 2018 WL 6070942 (C.D. Cal. Jan. 10,
    2018) ...............................................................................................................16

*Gilbert v. Ferry*,
    401 F.3d 411 (6th Cir. 2005) ...............................................................................23

*Hahn v. Star Bank*,
    190 F.3d 708 (6th Cir. 1999) ...............................................................................12

*Horton v. Dow Jones*,
    804 F. App'x 81 (2d Cir. 2020) ...........................................................................17

*Indus. Assets, Inc. v. Cap. Equip. Sales Co.*,
    No. 96-1737, 1997 WL 359061 (6th Cir. June 26, 1997) ...................................20

*Innovation Ventures, LLC v. Bhelliom Enters. Corp.*,
    No. 09-13783, 2010 WL 3170080 (E.D. Mich. Aug. 11, 2010) ....................7, 8

*Kittle v. America's Test Kitchen, LP*,
    No. 2:19-cv-11757, 2019 WL 6496596 (E.D. Mich. Dec. 3, 2019) ............21, 22

*Klein by Klein v. Caterpillar Inc.*,
    581 F. Supp. 3d 912 (E.D. Mich. 2022) ..............................................................23

*Kruse v. Wells Fargo Home Mortg., Inc.*,
    No. 02-CV-3089 (ILG), 2006 WL 1212512 (E.D.N.Y. May 3,
    2006) ....................................................................................................................16

*LaDrigue v. City of Bay City*,
    No. 1:19-cv-11196, 2022 WL 1205000 (E.D. Mich. April 22,
    2022) ....................................................................................................................13

*Lin v. Crain Communications Inc.*,
    No. 19-11889, 2020 WL 2043527 (E.D. Mich. April 27, 2020).........................22

*Lin v. Crain Communications Inc.*,
    No. 19-11889, 2020 WL 248445 (E.D. Mich. Jan. 16, 2020).....................10, 11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................................9, 10

*Martin v. Trott L., P.C.*,
198 F. Supp. 3d 794 (E.D. Mich. 2016) ...............................................................8

*Moore v. City of Paduch*,
790 F.2d 557 (6th Cir. 1986) ...............................................................22

*Morse v. McWhorter*,
290 F.3d 795 (6th Cir. 2002) ...............................................................19

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
No. 08 CV 8781(HB), 2010 WL 5222127 (S.D.N.Y. Dec. 22,
2010) ...............................................................16

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-1952, 2011 WL 6178891 (E.D. Mich. Dec. 12, 2011) ...............11

*Phillips v. Ford Motor Co.*,
435 F.3d 785 (7th Cir. 2006) ...............................................................3

*Reese v. Herbert*,
527 F.3d 1253 (11th Cir. 2008) ...............................................................23

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*,
601 F.3d 505 (6th Cir. 2010) ...............................................................7, 8

*Spokeo v. Robins*,
578 U.S. 330 (2016)...............................................................8, 10, 11

*Summit Office Park, Inc. v. U.S. Steel Corp.*,
639 F.2d 1278 (5th Cir.1981) ...............................................................12

*Thiel v. Baby Matters, LLC*,
No. 11-15112, 2013 WL 5913394 (E.D. Mich. Oct. 31, 2013) ........................22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...............................................................10

*Walters v. Edgar*,
163 F.3d 430 (7th Cir. 1998), *cert. denied*, 526 U.S. 1146 (1999) .11, 14, 16, 19

*Warth v. Seldin*,
422 U.S. 490 (1975)...............................................................8

*Zangara v. Travelers Indem. Co.*,
  No. 1:05CV731, 2006 WL 825231 (N.D. Ohio March 30, 2006) ....................14

*Zurich Ins. Co. v. Logitrans, Inc.*,
  297 F.3d 528 (6th Cir. 2002) ..............................................................14

**Statutes**

28 U.S.C. § 1332(d)(2)................................................................................17

Mich. Comp. Laws § 445.1712...................................................................9

**Other Authorities**

3 James Wm. Moore, et al., Moore's Fed. Prac. § 15.14[3] (3d ed.
  1997 & Supp. 2006)...........................................................................15

Fed. R. Civ. P. 12(b)(1) .....................................................................6, 7, 23

Fed. R. Civ. P. 12(b)(6) ........................................................................7, 8

## STATEMENT OF ISSUES PRESENTED

1. Whether this Court should permit the named Plaintiffs to amend their complaint a second time where such an amendment: (1) would be futile because (a) the current named Plaintiffs, including Ronald Allix, lack Article III standing, and (b) the claims of the proposed named Plaintiffs are untimely; and (2) is in bad faith and prejudicial because no named Plaintiff has ever had Article III standing to pursue a PPPA claim against Belvoir.

   Defendant's Answer: No.

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

The controlling authority for this Motion includes:

1. Federal Rule of Civil Procedure 15.

2. Michigan Preservation of Personal Privacy Act, Mich. Comp. Laws §§ 445.1711-445.1715 (1989) (amended eff. July 31, 2016).

3. *Barnes v. First Am. Title Ins. Co.*, 473 F. Supp. 2d 798 (N.D. Ohio 2007).

4. *China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018).

5. *Coulter-Owens v. Time Inc.*, 695 F. App'x 117 (6th Cir. 2017).

6. *Crosby v. Bowater Inc. Ret. Plan for Salaried Emps. of Great N. Paper Inc.*, 382 F.3d 587 (6th Cir. 2004).

7. *Currithers v. FedEx Ground Package Sys., Inc.*, No. 04-10055, 2012 WL 458466 (E.D. Mich. Feb. 13, 2012).

8. *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).

## <u>INTRODUCTION</u>

This case has had numerous incarnations and none of them has had a named plaintiff with standing to pursue a PPPA claim against Belvoir. Instead, playing the system, Plaintiffs' counsel filed and dropped their original case in the Western District of Michigan, re-filed here with new named Plaintiffs, and are now playing musical chairs with their named Plaintiffs to avoid dismissal on standing grounds. It is time to put an end to their gamesmanship.

In their motion to dismiss the First Amended Complaint, Belvoir argued and submitted declarations in support of the fact that none of the five current named Plaintiffs ever purchased a subscription of a Belvoir-owned publication from Belvoir. (ECF 18-1 and 23-1, attached here for convenience to the Declaration of Kristen Rodriguez, dated January 18, 2024 (the "Rodriguez Dec.") as Exs. A and B.) Four of those Plaintiffs failed to respond to Belvoir's evidence with their own declarations, and we now see that, unsurprisingly, they seek to drop out as named plaintiffs in the proposed Second Amended Complaint (the "Proposed SAC"). (ECF 42-1.) Indeed, Plaintiffs impliedly concede their lack of standing, arguing that their Motion to Amend would "moot" the issue of their standing. (ECF 42, PageId.1953, 1958.) Their counsel further admits that they have no record of any of these four named Plaintiffs ever having purchased a Belvoir-owned publication or a

subscription to such a publication during the relevant time period. (*Id.* at PageID.1963 n2.)

Only one of the named Plaintiffs, Ronald Allix, submitted a declaration opposing Belvoir's factual submission on the motion to dismiss. (ECF 19-4.) But Belvoir submitted a reply declaration showing that Mr. Allix's purchase was from a third party, not from Belvoir. (Rodriguez Dec., Ex. B.) Under Sixth Circuit law, Mr. Allix has no claim against Belvoir under the PPPA. *See Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 123-24 (6th Cir. 2017) (holding that purchases made through a third-party subscription agent are not "at retail" and therefore are not covered by the PPPA). Plaintiffs have no response to this argument except that they do not want it resolved now. (ECF 42, PageID.1958, n.1.)

Plaintiffs contend that they can continue with Mr. Allix until Belvoir shows that he purchased his subscription from a third party through more than just a declaration. (*Id.*) Lest there remain any doubt about Mr. Allix's standing, Belvoir is now submitting a screenshot to show that Mr. Allix did not purchase a Belvoir-owned publication from Belvoir. (Declaration of Thomas E. Canfield, dated January 18, 2024 (the "2024 Canfield Dec."), at ¶ 3.) Belvoir also submits the declarations it filed in the Western District of Michigan and here to show that none of the named plaintiffs in either case purchased a Belvoir-owned publication from Belvoir on or before July 30, 2016, which is the last day that the version of the PPPA under which

Plaintiffs bring suit was effective. (Rodriguez Dec., Exs. A-C.) In essence, all of the named Plaintiffs are "strangers" to Belvoir because they had no actionable transactions with Belvoir. Under these circumstances, Belvoir could not have injured them, and there can be no Article III standing.

As to the two proposed named Plaintiffs, the fact that none of the named Plaintiffs here—or in the prior placeholder suit in the Western District of Michigan—ever had Article III standing to pursue their PPPA claims against Belvoir has repercussions:

*First*, it means that any effort to amend would be futile because the claims of any new Plaintiff would be time-barred. Because there was never a valid suit to begin with, there is nothing to "relate back to," an argument that the named Plaintiffs ignore as they blithely advise the Court that the amendment they are seeking is commonplace and uncontroversial "housekeeping." (ECF 42, PageID.1953.) Nor is there any sort of tolling available. Class action tolling cannot apply, among other reasons, because there was never a valid class action that could toll the claims here. Similarly, with respect to COVID-19 tolling, the tolling period expired 13 months ago for the proposed Plaintiffs, and, again, the invalid claims of Mr. Allix and the other named Plaintiffs cannot provide a safe harbor for the proposed named Plaintiffs. In short, the claims of the proposed named Plaintiffs are too late.

***Second***, the amendment should not be permitted because it is being brought in bad faith and is prejudicial. No doubt knowing that they lacked a valid named Plaintiff, Plaintiffs' counsel admit that they have been advertising for named Plaintiffs during the pendency of this action. (ECF 42, PageID.1963 n.2.) They promised a potential "cash award of $5,000, and possibly more as a service award" to encourage people eager to make money to contact them. (Rodriguez Dec., Ex. D-2.) While Plaintiffs' counsel attempted to conjure up a viable plaintiff, Belvoir had to file three motions to dismiss and submit numerous oppositions to supplemental authority to defend these meritless suits, diverting time and resources away from its normal business operations as a small publisher to do so. (*See* Rodriguez Dec., Ex. E (attaching docket from Western District of Michigan).)

Plaintiffs argue that Belvoir cannot meet its burden to prove bad faith and dilatory tactics. But Plaintiffs' counsel's musical-chairs litigation shows bad faith, as does their admission that four of the five named Plaintiffs here had no written record of a subscription to a Belvoir-owned publication during the relevant time period. (ECF 42, PageId.1963 n.2.) To the extent the Court believes more evidence is required to show that counsel knew that none of their Plaintiffs had standing, Belvoir requests limited discovery on that issue. Similarly, to the extent the Court requires additional factual information to show that Mr. Allix, too, lacks Article III standing, Belvoir requests limited discovery on that point.

Deciding the issue of standing before proceeding with an amendment is crucial because standing goes to this Court's subject matter jurisdiction. If standing never existed, amendment must be denied, and the case must be dismissed.

## STATEMENT OF FACTS

### I.   The Actions Against Belvoir Have Never Had a Valid Named Plaintiff.

On May 30, 2022, the same Plaintiffs' counsel as herein filed a placeholder class action against Belvoir in the Western District of Michigan captioned *Taylor v. Belvoir Media Group, LLC*, No. 1:22-cv-00477 (W.D. Mich.). The original named plaintiff was Jason Taylor, who also filed suit with the same counsel against another publisher. (*See Taylor v. Active Interest Media, Inc.*, No. 1:22-cv-00447 (W.D. Mich.).[1]) On July 23, 2022, Plaintiffs' counsel amended the *Taylor* complaint to add five more named plaintiffs, Mary Scott-Mooney, Ericka Killingbeck, Francine Leggett, Cheryl Lockhart, and Martha Lentz. (*Taylor v. Belvoir Media Group, LLC*, No. 1:22-cv-00477, at ECF 1 (May 30, 2022); *see also id.* at ECF 15 (July 12, 2022).) Belvoir moved to dismiss the action, among other reasons, because the named Plaintiffs lacked standing. To that end, Belvoir submitted a declaration showing that none of the named plaintiffs had subscribed to a Belvoir-owned publication prior to July 31, 2016. (Rodriguez Dec., Ex. C.)

---

[1] Mr. Taylor was a "placeholder plaintiff" who dropped out of both lawsuits. (*See* Rodriguez Dec. Ex. E (docket sheet from Western District showing voluntary dismissal) and ECF 1 therein (Taylor not named).)

Rather than respond to Belvoir's motion to dismiss, Plaintiffs' counsel then voluntarily dismissed the *Taylor* action. (*See Taylor v. Belvoir Media Group, LLC*, No. 1:22-cv-00477, at ECF 24 (Sept. 14, 2022).) Plaintiffs' counsel never had a legitimate named plaintiff in the *Taylor* action but would not allow the court in the Western District to make that finding, instead running to the Eastern District of Michigan with entirely new named plaintiffs. Two days before voluntarily dismissing the *Taylor* action, on September 12, 2024, Plaintiffs' counsel filed this putative class action (the "Initial Complaint") with named Plaintiffs Lee, White, VanDusen, Allix, and Welch. (*See* ECF 1.) Belvoir moved to dismiss the Initial Complaint, and Plaintiffs responded by amending the complaint on December 12, 2022 (the "FAC"). (*See* ECF 15; ECF 16.)

On January 27, 2023, Belvoir moved to dismiss the FAC, arguing that Plaintiffs' claims were time-barred, Plaintiffs failed to state a viable claim, and Plaintiffs lacked standing to sue. (*See* ECF 18.) With respect to the third argument, pursuant to Federal Rule of Civil Procedure 12(b)(1), Belvoir submitted two declarations from Thomas E. Canfield, Vice President, Belvoir Media Group, LLC, showing that none of the named Plaintiffs to this action purchased any Belvoir-owned publication from Belvoir prior to July 31, 2016 (the "Canfield Declarations"). (Rodriguez Dec., Exs. A and B.) The Court declined to consider the Canfield Declarations on the Motion to Dismiss. (*See* ECF 37, at 3-6.)

II.   **Plaintiffs' Counsel's Search For a Valid Plaintiff and the Filing of the Proposed SAC.**

Despite their continued assertions that Plaintiffs have standing, as they admit, Plaintiffs' counsel were actively advertising for new named plaintiffs (ECF 42, PageId.1963), even as late as November 2023 (Rodriguez Dec., Ex. D-1), tempting the public with a "cash award of $5,000, and possibly more as a service award" (*id.*, Ex. D-2). Having found new potential plaintiffs no doubt eager for a $5,000 award, Plaintiffs' counsel filed the Motion to Amend on December 11, 2023, which was over 17 months after the filing of the Initial Complaint in this action, over 14 months after any possible COVID-19 tolling, and over 18 months after the initial filing in *Taylor*. (*See* ECF 42.) The Proposed SAC envisions the removal of Plaintiffs Lee, White, VanDusen, and Welch and the addition of two new named plaintiffs to join Plaintiff Allix: Lynne Vandebunte and Steven Lepsetz. (*Id.* at 1; *see also* ECF 42-1.)

## **ARGUMENT**

I.   **Amendment Is Futile.**

A.   **Courts Deny Leave to Amend Where, as Here, Amendment Would Be Futile.**

Leave should be denied where amendment would be futile. *E.g.*, *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). An amendment is futile where, as here, an amended complaint could not withstand dismissal under Rule 12(b)(1) or 12(b)(6). *See, e.g.*, *Innovation Ventures, LLC v. Bhelliom Enters. Corp.*, No. 09-13783, 2010 WL 3170080, at *3 (E.D. Mich. Aug.

11, 2010) ("The Court also finds that amending the complaint would be futile because [counterclaim plaintiff] has not provided the Court with any other facts that would support the existence of Article III standing for this claim."); *Riverview Health*, 601 F.3d at 512 (finding that "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss") (quotations and citations omitted); *see also Martin v. Trott L., P.C.*, 198 F. Supp. 3d 794, 814 (E.D. Mich. 2016) (denying leave to amend portions of the first amended complaint where the proposed amendment "offer[ed] no basis to resurrect [plaintiff's] time-barred claims"); *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 995 n.2 (6th Cir. 2020) (denial of amendment is "permissible if the complaint affirmatively shows that the plaintiff's claims are barred by an applicable statute of limitations") (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)).

## B.   No Named Plaintiff Ever Had Article III Standing.

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In order to satisfy the federal courts' jurisdictional requirement of Article III standing, the plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Spokeo v. Robins*, 578 U.S. 330, 338

(2016)); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (the injury in fact must be both "(a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical"). While the Court considered Plaintiffs' subscriber status based solely on the allegations pled, the issue of whether the Plaintiffs (in particular, Mr. Allix, who is the only Plaintiff willing to proceed) have Article III standing is squarely before the Court, because without standing, amendment is futile.

Mr. Allix purchased his subscription from a third party, which means as a matter of law he did not suffer an injury traceable to Belvoir. Under controlling Sixth Circuit law, *Coulter-Owens*, 695 F. App'x at 124, purchases made through a third-party subscription agent are not "at retail" and therefore are not covered by the PPPA. *See* Mich. Comp. Laws § 445.1712 (forbidding a person "engaged in the business of selling at retail . . . written materials" from disclosing a "record or information concerning the purchase" other than to the customer). Affirming the district court's decision, the Sixth Circuit held that the sale to the customer in that case was not "at retail" because of the intervening sale from the publisher to the subscription agent:

> There were two types of sales here: Time's sale to the subscription agent and the subscription agent's sale to Coulter-Owens. Because Coulter-Owens is the end consumer, the sale to her was necessarily 'at retail'; the sale from Time to the subscription agent here was not 'at retail' under the facts of this case. The district court was correct that the PPPA does not govern this sale….

*Coulter-Owens*, 695 F. App'x at 124.

9

The same fact pattern appears here. Mr. Allix ordered and paid for the magazine through a third-party subscription agent; the third-party subscription agent sent the order information to Belvoir, who then filled it. (Rodriguez Dec., Ex. C, ¶ 5; 2024 Canfield Dec., ¶¶ 3-5.) Under these circumstances, as in *Coulter-Owens*, there is no PPPA claim against Belvoir. Furthermore, unlike in *Coulter-Owens*, the only count here is for violation of the PPPA statute. (ECF 16, ¶¶ 65-83; ECF 42-1, ¶¶ 63-81.) Lacking any statutory injury, as set forth in Belvoir's moving brief (*see* ECF 18, PageID.1191-93), Mr. Allix lacks Article III standing to sue—he is a stranger to Belvoir from an injury perspective.

This is not a question of whether a statutory injury creates Article III standing, which has been widely litigated. *See Spokeo*, 578 U.S. at 339-40, 342; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425-26, 437-38 (2021).[2] Rather, the issue here is whether a stranger to Belvoir—someone who never transacted with Belvoir within the meaning of the only cause of action pled, the PPPA—can claim injury from Belvoir. He cannot. *See, e.g.*, *Spokeo*, 578 U.S. at 338 (injury must be "fairly traceable to the challenged conduct of the defendant"); *see also Lujan*, 504 U.S. at 560-61.[3]

---

[2] *See also, e.g.*, *Boelter v. Hearst Commc'ns*, 192 F. Supp. 3d 427, 452-54 (S.D.N.Y. 2016) (Michigan PPPA case).

[3] In contract to *Lin v. Crain Communications Inc.*, No. 19-11889, 2020 WL 248445, at *4-6 (E.D. Mich. Jan. 16, 2020), where the court found a non-Michigan subscriber had Article III standing in a PPPA case because the "PPPA gives Lin a legally

Similarly, neither any of the other current named Plaintiffs nor the ones previously named in the lawsuit in the Western District of Michigan action ever had Article III standing because they never subscribed to a Belvoir-owned publication prior to or during the relevant time period. (*See* Rodriguez Dec, Exs. A, B, E.) They, too, are strangers to Belvoir in this sense and could not have been injured by Belvoir. *See Spokeo*, 578 U.S. at 338.

The Court "never acquired jurisdiction over the present suit" because the named Plaintiffs "lacked standing when they filed the suit," which "doom[ed]" this case. *Walters v. Edgar*, 163 F.3d 430, 432, 437 (7th Cir. 1998), *cert. denied* 526 U.S. 1146 (1999) (rejecting plaintiffs' contention that "even if they do lack standing, the suit should not have been dismissed but instead other members of the class should have been named as the class representatives" because "plaintiffs never had standing to bring this suit, and so federal jurisdiction never attached").

Because the Plaintiffs did not have standing in the first instance, amendment here would be futile, as the new proposed plaintiffs' ability to assert claims relies upon an existing federally justiciable controversy's existence, which is absent here. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-1952, 2011 WL 6178891,

---

protected interest in the privacy of his reading choices," here, Mr. Allix is definitively not within the class of people to which the PPPA gives a protected privacy interest under binding Sixth Circuit precedent. *Coulter-Owens*, 695 F. App'x at 124.

at *7 (E.D. Mich. Dec. 12, 2011) (quoting *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1283 (5th Cir.1981)) (holding that plaintiffs without standing "cannot cure this lack of standing by adding plaintiffs who, unlike the original . . . plaintiffs, may have standing to assert such claims. Simply put, these . . . plaintiffs were never entitled to bring [their] claims" because "they suffered no injury" within the ambit of the laws they sued under and "cannot be permitted to cure that deficiency by adding new plaintiffs who may have"); *Corbin v. Blankenburg*, 39 F.3d 650, 653 (6th Cir. 1994) (noting in dicta that "if the action had been brought by a person not statutorily authorized to bring it, the absence of subject matter jurisdiction could not have been cured by substituting an authorized plaintiff for the unauthorized plaintiff").[4]

In short, this case, and that filed in the Western District, were "headless" class actions, over which this Court never acquired subject matter jurisdiction.

---

[4] For this reason, all of the cases cited by Plaintiffs on futility are inapposite. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (finding that the appellate court erred in affirming denial of petitioner's motion to vacate judgment to amend the complaint where the district court did not justify its reasoning for denial, and not considering whether the initial plaintiffs to the suit had standing); *Elite Int'l Enter., Inc. v. Patton Wallcoverings, Inc.*, No. 12-14620, 2013 WL 12182285, at *2 (E.D. Mich. Nov. 4, 2013) (granting leave to amend where counterclaim plaintiffs satisfied the necessary elements for their claim and the counterclaim defendant "offer[ed] nothing to indicate any prejudice"); *Hahn v. Star Bank*, 190 F.3d 708, 715-18 (6th Cir. 1999) (affirming district court's denial of leave to amend where each of plaintiffs' proposed claims were "futile").

## C.     Proposed Plaintiffs' Vandebunte's and Lepsetz's Claims Are Untimely.

The proposed named plaintiffs' claims are untimely, also rendering amendment futile. Vandebunte's and Lepsetz's new claims, brought in December 2023 (over 17 months after the statute of limitations on their claims expired on July 30, 2022), do not relate back to the filing of the Initial Complaint, nor were their claims tolled during the pendency of this action.

### 1.     Vandebunte And Lepsetz's Claims Do Not Relate Back to the Initial Complaint.

The claims asserted by the proposed named plaintiffs, Vandebunte and Lepsetz, do not relate back to the filing of the Initial Complaint on September 12, 2022, and, therefore, their claims are untimely. Although in general, in the class action context, courts have found that "when a putative class member is added as a named plaintiff, her claims will relate back to the date of the original pleading," *see, e.g.*, *LaDrigue v. City of Bay City*, No. 1:19-cv-11196, 2022 WL 1205000, at *2 (E.D. Mich. April 22, 2022) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) and *Phillips v. Ford Motor Co.*, 435 F.3d 785, 788 (7th Cir. 2006)), that principle does not apply here.

Rather, courts in the Sixth Circuit have expressly held that substitution is improper when the original named plaintiff lacks standing to assert claims. *Barnes v. First Am. Title Ins. Co.*, 473 F. Supp. 2d 798, 800 (N.D. Ohio 2007) (citing

*Zangara v. Travelers Indem. Co.*, No. 1:05CV731, 2006 WL 825231 (N.D. Ohio March 30, 2006) and *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528 (6th Cir. 2002)); *see also Zangara*, 2006 WL 825231, at *3 (plaintiff's "lack of standing precludes him from amending the complaint to substitute new plaintiffs" and "his lack of standing divests this Court of subject matter jurisdiction necessary to even consider such a motion"); *Zurich Ins. Co.*, 297 F.3d at 531 (denying motion for leave to substitute a new plaintiff under Rule 17(a) where, because the original plaintiff "admittedly has not suffered injury in fact by the defendants, it had no standing to bring this action and no standing to make a motion to substitute the real party in interest").

Here, relation back is not appropriate because federal jurisdiction never attached to the original named Plaintiffs' claims, because, as discussed above, they did not have Article III standing. *See Crosby v. Bowater Inc. Ret. Plan for Salaried Emps. of Great N. Paper Inc.*, 382 F.3d 587, 597 (6th Cir. 2004) ("Where the named plaintiff's claim is one over which 'federal jurisdiction never attached,' there can be no class action.") (quoting *Walters*, 163 F.3d at 432-33); *see also Barnes*, 473 F. Supp. 2d at 801 ("Plaintiffs seek to amend to substitute new parties because the defenses raised by Defendants present serious concerns that named plaintiffs may not have standing to assert the claims presently before this Court. Therefore, this Court finds that the proposed new Plaintiffs' claims do not relate back to the original

complaint and must be defined as new parties and new claims."); *Dziennik v. Sealift, Inc.*, No. CV 2005-4659 (DLI) (MDG), 2009 WL 10705790, at *5 (E.D.N.Y. April 1, 2009) ("Plaintiffs cannot retroactively create subject matter jurisdiction against these defendants where none existed at the commencement of the action by adding plaintiffs with standing to sue."); 3 James Wm. Moore, et al., Moore's Fed. Prac. § 15.14[3] (3d ed. 1997 & Supp. 2006) ("A plaintiff may not amend the complaint to substitute a new plaintiff in order to cure a lack of jurisdiction, because a plaintiff may not create jurisdiction by amendment when none exists").

Accordingly, the proposed named plaintiffs' claims are untimely as they were filed in December 2023, over 17 months after the statute of limitations on their claims expired on July 30, 2022, and therefore, amendment would be futile. *See, e.g.*, *Currithers v. FedEx Ground Package Sys., Inc.*, No. 04-10055, 2012 WL 458466, at *8 (E.D. Mich. Feb. 13, 2012) (denying leave to amend where "the relation back doctrine is not available or applicable"); *Barnes*, 473 F. Supp. 2d at 800 (same).

### 2.    Vandebunte And Lepsetz Are Not Entitled to Tolling.

#### a.    Class Action Tolling Cannot Save the Proposed Plaintiffs' Claims.

Nor are Vandebunte and Lepsetz entitled to class action tolling. Because this case did not involve a legitimate plaintiff in the first instance, the proposed named Plaintiffs' claims were not tolled during the pendency of this action by class action

tolling. The United States Supreme Court set the standard for class action tolling in *American Pipe and Construction Co. v. Utah*: "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. However, courts have held that limitations periods are not tolled where, as here, the original named plaintiff lacks standing. *See, e.g.*, *Walters*, 163 F.3d at 432 (holding that the filing of a purported class-action complaint by a plaintiff who lacks standing does not toll the statute of limitations for those who later seek to intervene as plaintiffs); *Francisco v. Emeritus Corp.*, No. LACV 17-2871-VAP (SSx), 2018 WL 6070942, at *3 (C.D. Cal. Jan. 10, 2018) (denying leave to amend where plaintiff lacked standing to bring the claims in the first instance, therefore, the commencement of the case did not toll the statute of limitations for the other putative class members); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781(HB), 2010 WL 5222127, at *6 (S.D.N.Y. Dec. 22, 2010) (*American Pipe* tolling does not apply to claims that "were otherwise untimely because the original class action plaintiff lacked standing to assert claims relating to the securities at issue"); *Kruse v. Wells Fargo Home Mortg., Inc.*, No. 02-CV-3089 (ILG), 2006 WL 1212512 (E.D.N.Y. May 3, 2006) (intervention is not "the proper mechanism by which plaintiffs can resuscitate a suit in which the original named plaintiffs never had standing to sue."); *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp.

64, 82 (D. Conn. 1994) ("[I]f the original plaintiffs lacked standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members for the purported class."); *In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 856 (E.D.N.Y. 1990) (class action complaint did not toll statute of limitations on claims for which the original putative class representatives lacked standing to sue).

Additionally, the Supreme Court in *China Agritech, Inc. v. Resh* held that *American Pipe* class action tolling only applies to putative class members who choose to sue *individually* after the initial class action was unsuccessful. 584 U.S. 732, 740 (2018). Therefore, even if this Court were to find that the proposed named plaintiffs' claims were tolled (which it should not), the Court should only allow Vandebunte and Lepsetz to assert *individual* claims against Belvoir.[5] *Id.*; *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 224 (E.D. Mich. 2020) ("[*American Pipe* tolling] applies to [plaintiff's] individual claims, but

---

[5] If only individual claims survive, Plaintiffs could not meet the jurisdictional amount for federal jurisdiction. As a result, the subject matter jurisdiction through CAFA no longer exists. 28 U.S.C. § 1332(d)(2). Accordingly, this Court should decline to retain or exercise jurisdiction over her individual claim and should dismiss it for consideration in state court. *See Horton v. Dow Jones*, 804 F. App'x 81, 85 (2d Cir. 2020) (affirming trial court's decision to dismiss individual PPPA claim when plaintiff could not pursue a class; federal courts need not "'adjudicate state law claims'" upon a "'finding that a case cannot proceed as a class action'") (quoting *F5 Capital v. Pappas*, 856 F.3d 61, 77 n.14 (2d Cir. 2017)).

the Supreme Court recently held that *American Pipe* cannot be applied to rescue untimely class claims.") (citing *China Agritech*, 584 U.S. at 735).

**b.   COVID-19 Tolling Cannot Save the Proposed Plaintiffs' Claims.**

The Court found that the COVID-19 Orders[6] apply to Plaintiffs' claims to toll the statute of limitations for 101 days (*i.e.*, until November 8, 2022). (*See* ECF 37, PageID.1852-53.)[7] However, the proposed Plaintiffs' claims were not brought by November 8, 2022. They are facially too late. To the extent the proposed Plaintiffs believe that their claims were tolled by virtue of the current named Plaintiffs' claims, that argument has no merit. The Michigan Supreme Court has not ruled on the validity of COVID-19 tolling, let alone its availability for a putative class. More importantly, again, even if the proposed Plaintiffs could bootstrap their claims to those of Mr. Allix and the other named Plaintiffs, because those named Plaintiffs

---

[6] The "COVID-19 Orders" refer collectively to Executive Orders 2020-58 and 2020-122 issued by the Governor of Michigan on April 22, 2020 and June 12, 2020, respectively, and Administrative Orders 2020-3 and 2020-18 promulgated by the Michigan Supreme Court on March 23, 2020 and June 12, 2020, respectively.

[7] The Court relied upon *Carter v. DTN Management Co.*, --- N.W.2d ---, 2023 WL 439760 (Mich. App. Jan. 26, 2023), a Michigan Court of Appeals decision (which the Court incorrectly identified as a Michigan Supreme Court decision). (ECF 37, PageID.1853.) *Carter*, along with two other cases considering the constitutionality of the COVID-19 Orders, is now before the Michigan Supreme Court, and oral argument was held on January 11, 2024. The outcome of that case, as well as the companion case heard the same day, *Armijo v. Bronson Methodist Hosp. et al.*, Nos. 165399-165400 (Mich.), may affect the Court's original ruling allowing COVID-19 tolling.

never had Article III standing, COVID-19 tolling could not attach for all the same

reasons that relation back and class action tolling could not save their claims. *See,*

*e.g.*, *Crosby*, 382 F.3d at 597 ("Where the named plaintiff's claim is one over which

'federal jurisdiction never attached,' there can be no class action.") (quoting *Walters*,

163 F.3d at 432-33); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F.

Supp. 3d at 224 ("[*American Pipe* tolling] applies to [plaintiff's] individual claims,

but the Supreme Court recently held that *American Pipe* cannot be applied to rescue

untimely class claims.") (citing *China Agritech*, 584 U.S. at 735).

## II.    Plaintiffs Should Not Be Rewarded for Their Bad Faith, Delay, and Prejudicial Gamesmanship.

The United States Supreme Court has long held that, while leave to amend is

generally freely granted "[i]n the absence" of a reason otherwise, courts may deny

leave to amend due to "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment,

[and] futility of amendment[.]" *Foman*, 371 U.S. at 182-83 (holding that the district

court must consider various factors, such as the above, in determining whether to

deny a motion for leave to amend).

Denying a motion for leave to amend "'may be appropriate . . . where there is

undue delay' in filing." *Doe v. Mich. State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021)

(citing *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)) (internal citations

omitted). "Although delay alone is not ordinarily a reason in and of itself to disallow amendment of pleadings, it may be considered in conjunction with other factors, such as, prejudice in denying leave to amend." *Duchon v. Cajon Co.*, 791 F.2d 43, 47 n.1 (6th Cir. 1986). Importantly, undue delay justifies denial of leave to amend where the amendment is based on "facts" that were "available to [the plaintiff] at the time of his first amendment, and that [plaintiff] failed to offer any excuse for omitting them when he first amended his complaint." *Doe*, 989 F.3d at 426; *Duchon*, 791 F.2d at 47 n.1, 48 (holding that district court's denial of leave to amendment was "manifest[ly]" proper in part because plaintiff "inexplicably waited" to seek leave to add facts known at time of a "previous amendment of" the complaint).

Moreover, bad faith or dilatory motivations for pursuing an amendment justify denial of leave to amend. *Indus. Assets, Inc. v. Cap. Equip. Sales Co*., No. 96-1737, 1997 WL 359061, at *3 (6th Cir. June 26, 1997). Courts properly deny leave to amend a complaint due to the plaintiff's "apparent bad faith in asserting a spurious claim" before then asserting a proper claim in order to gain an advantage in litigation. *Id.* at *4.

The Proposed SAC represents Plaintiffs' counsel's *fifth attempt* at securing legitimate named plaintiffs for the putative class. Plaintiffs' counsel should not be rewarded for their lack of diligence, undue delay, bad faith, and prejudicial gamesmanship. Plaintiffs' counsel have known since the *Taylor* case that they did

20

not have satisfactory named plaintiffs. As discussed above, counsel amended *Taylor* to add new plaintiffs and then, when faced with a motion to dismiss for lack of standing, filed this action and dismissed *Taylor*. They realized that they did not have legitimate Plaintiffs here but failed to apprise the Court until now. (ECF 42, PageID.1963 n.2.) Holding the case in place with bad plaintiffs (and that includes Mr. Allix, who, as discussed above, lacks Article III standing), counsel sought new plaintiffs, as late as November 2023, and seek to amend yet again, over 17 months after they commenced the *Taylor* suit.

Plaintiffs' counsel's undue delay and lack of diligence in securing satisfactory named plaintiffs has led to the significant expenditure of time and resources by the parties and this Court, with three motions to dismiss and numerous submissions of supplemental authority having had to be made by Belvoir. (*See* Court docket here and Rodriguez Dec. Ex. E (Western District docket).) Such behavior should not be rewarded. *See, e.g.*, *Broadnax v. SSF Imported Auto Parts LLC*, No. 1:21-CV-295-MLB, 2022 WL 19974533, at *2 (N.D. Ga. March 25, 2022) ("This motion for leave to amend smacks of gamesmanship, and such gamesmanship is inappropriate, prejudicial, and causes undue delay.").

Plaintiffs' counsel cite to two of their own cases where they have gotten away with similar games of "musical plaintiffs." But those cases do not present facts nearly as egregious as those here. In *Kittle v. America's Test Kitchen, LP*, No. 2:19-

cv-11757, 2019 WL 6496596 (E.D. Mich. Dec. 3, 2019), the plaintiff sought leave

to amend only 30 days after he realized that he might not have standing to bring the

claims. 2019 WL 6496596, at *1. Similarly, in *Lin v. Crain Communications Inc.*,

No. 19-11889, 2020 WL 2043527 (E.D. Mich. April 27, 2020), the plaintiff sought

leave to amend only 20 days after defendant answered the original complaint and

raised issue with the named plaintiff's standing. 2020 WL 2043527, at *1-2. Here,

Plaintiffs have delayed for over **17 months** to try to find a suitable named plaintiff.[8]

Where a plaintiff (or their counsel) knows of facts that could affect a court's subject

matter jurisdiction, they may not make representations contrary to those facts in

order to achieve an advantageous outcome "and then seek to amend the complaint

. . . once the jurisdictional issue has been addressed." *Broadnax*, 2022 WL

19974533, at *2. Plaintiffs' counsel clearly failed to conduct an adequate

investigation prior to filing their complaints or conducted an adequate investigation

---

[8] Plaintiffs also rely upon *Moore v. City of Paduch*, 790 F.2d 557 (6th Cir. 1986), in support of their proposition that Belvoir would not suffer prejudice if they were allowed leave to amend. (ECF 42, PageID.1955.) In *Moore*, the court found that a finding of prejudice is not required, and undue delay *alone* does not justify denial of leave to amend. 790 F.2d at 559-60. This is irrelevant here: Belvoir has cited various reasons that Plaintiffs should be denied leave to amend besides their undue delay, including futility, prejudice, lack of diligence, bad faith, and gamesmanship. Plaintiffs also cite to *Thiel v. Baby Matters, LLC*, No. 11-15112, 2013 WL 5913394 (E.D. Mich. Oct. 31, 2013), in which the statute of limitations had not run and plaintiffs did not need to rely on tolling or relation back. 2013 WL 5913394 at *4. That is not relevant here; the proposed plaintiffs cannot file their claims in a new action, and are relying solely on the pending action to save their time-barred claims.

and used inadequate plaintiffs as placeholders. Either way, they should not be rewarded for their lack of diligence and gamesmanship now.[9] *See Reese v. Herbert*, 527 F.3d 1253, 1264, n.14 (11th Cir. 2008). The Motion to Amend should be denied.

## III.  The Court Should Order Limited Discovery if Needed.

Belvoir believes that it has submitted sufficient evidence under Rule 12(b)(1) to demonstrate that no named Plaintiff ever had standing to sue Belvoir. However, if the Court determines that in order to ascertain whether the new Plaintiffs' claims are timely further discovery is needed, Belvoir respectfully requests that the Court order limited discovery on whether Mr. Allix and the other currently named Plaintiffs here ever had Article III standing, and thus whether this Court has subject matter jurisdiction, before ruling on the Motion to Amend. *See, e.g.*, *Gilbert v. Ferry*, 401 F.3d 411, 415 (6th Cir. 2005) ("When a defendant challenges a court's actual subject matter jurisdiction, as opposed to the sufficiency of the allegations of subject matter jurisdiction in the complaint, the parties must be given an opportunity to secure and

---

[9] Plaintiffs' counsel's other cases in support of their argument that their efforts are not in bad faith are also readily distinguishable. *See, e.g.*, *Aguilar v. Boulder Brands, Inc.*, No. 3:12-cv-01862-BTM-BGS, 2014 WL 4352169, at *4 (S.D. Cal. Sept. 2, 2014) (plaintiff's proposed amendments were not in bad faith where they were merely clarifications of prior allegations and did not introduce any "new claim"); *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 916, 918 (E.D. Mich. 2022) (finding plaintiff did not file a motion for leave to amend in bad faith where the proposed amended complaint addressed deficiencies raised for the very first time in defendant's motion to dismiss and plaintiff's motion came only *three days after* those deficiencies were raised).

present relevant evidence to the existence of jurisdiction."); *Agarwal v. Lynch*, 610 F. Supp. 3d 990, 1001 (E.D. Mich. 2022) (granting leave to engage in limited jurisdictional discovery to address whether the court had subject matter jurisdiction).

Similarly, Belvoir believes that there is sufficient evidence of Plaintiffs' counsel's bad faith in bringing claims on behalf of named Plaintiffs without adequate investigation or knowing of their inadequacy yet proceeding with them nonetheless. Their bad faith is evidenced by their game of musical chairs and their own admission that four of the named Plaintiffs to the FAC had no written documentation of having subscribed to a Belvoir-owned publication during the relevant time period. (ECF 42, PageID.1963. n.2.) If the Court requires further proof, Belvoir respectfully requests limited discovery into Plaintiffs' counsel's investigation and knowledge of the basis of the claims of the named Plaintiffs here and in the Western District.

## CONCLUSION

Accordingly, Plaintiffs' Motion to Amend should be denied, or in the alternative, the Court should order limited discovery on the current named Plaintiffs' Article III standing, as well as Plaintiffs' counsel's diligence and knowledge of the standing of all of the current named Plaintiffs.

Date: January 18, 2024                      Respectfully submitted,


                                            /s/ *Kristen C. Rodriguez*
                                            Kristen C. Rodriguez
                                            Deborah H. Renner

DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
kristen.rodriguez@dentons.com
deborah.renner@dentons.com

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
220 Park Street, Suite 200
Birmingham, MI 48009
(248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant,*
*Belvoir Media Group*

## Certificate of Service

I hereby certify that on January 18, 2024, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen C. Rodriguez