UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PHILLIP LEE; PAMELA WHITE; PATRICIA VANDUSEN; RONALD ALLIX; and RANDY WELCH, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br>　v.<br><br>BELVOIR MEDIA GROUP, LLC,<br><br>　　　　　　　Defendant. | Case No. 4:22-cv-12153-SDK-DRG<br><br>Hon. Shalina D. Kumar<br><br>**CLASS ACTION** |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT**

## I. The Proposed Amendment is not Futile on Article III Standing Grounds

According to Defendant, Plaintiff Allix (a plaintiff in both the initial Complaint and proposed Second Amended Complaint ("Proposed SAC")) did not buy his Belvoir subscription directly from Defendant, but rather bought it "through" one of Defendant's agents. On that basis, Defendant argues that Plaintiff Allix's injury is not "traceable" to Defendant, as required to confer standing under Article III, and the Court has thus never had subject matter-jurisdiction over the case – rendering Plaintiffs' proposed amendment futile. This far-fetched argument fails at each of its various steps.

As a threshold matter, Michigan's federal courts have consistently granted PPPA plaintiffs leave to amend to add more suitable plaintiffs when defendants have called into question the existing plaintiffs' standing. *See, e.g.*, *Kittle v. Am.'s Test Kitchen LP*, 2019 WL 6496596, at *1 (E.D. Mich. Dec. 3, 2019) ("justice requires permitting [PPPA plaintiff] to amend his complaint" to add "two new named [p]laintiffs . . . who were in fact subscribers . . . and therefore more suitable class representatives"); *Lin v. Crain Commc'ns, Inc.*, 2020 WL 2043527, at *1–2 (E.D. Mich. Apr. 27, 2020). Plaintiffs seek the same relief sought in *Lin* and *Kittle*, at the same stage of litigation, and Defendant now opposes the Motion on the same grounds as the defendant opposed the amendment in *Lin*. This Court should adopt the reasoning of *Lin* and *Kittle* and reach the same result here. *See, e.g.*, *Lin*, 2020 WL 2043527, at *2 (rejecting argument that amendment should not be permitted because the plaintiff "failed to submit proof of his subscription to [defendant's publication] during the relevant period," explaining that

1

"at this stage of the proceedings, [plaintiff] need only allege that he was a subscriber").

In opposing the Motion, Defendant continues to conflate the merits of a plaintiff's claim for relief with his or her Article III standing to seek redress in federal court. *See* ECF No. 37, PageID.1839, 1842-43 (Court's opinion denying motion to dismiss, explaining to Defendant that "a plaintiff['s] statutory standing to bring a claim is 'analytically distinct' from the issue of Article III or prudential standing and is not a question of subject matter jurisdiction[,]" and concluding that "Belvoir's challenge to plaintiffs' Article III standing, based entirely on the purported lack of statutory standing, fails"). Whether Plaintiff Allix bought his subscription "at retail" within the meaning of the PPPA is a merits question that "is not a question of subject matter jurisdiction." *Id.*, PageID.1839 (quoting *Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011)).

The Sixth Circuit's decision in *Coulter-Owens v. Time Inc.*, 695 F. App'x 117 (6th Cir. 2017) – which, ironically, serves as the primary legal authority cited by Defendant in support of its ill-conceived argument that Plaintiff Allix lacks Article III standing, *see* ECF No. 44, PageID.2528 (the cases have "the same fact pattern") – conclusively confirms that the "at retail" issue has no bearing on a PPPA plaintiff's Article III standing. Although the Sixth Circuit concluded that the plaintiff's PPPA claim failed on the merits because he had not purchased his subscription "at retail" (based on undisputed case-specific facts), the Sixth Circuit also found, earlier in the opinion, that the same plaintiff had standing under Article III based on the privacy-based harm he suffered from the defendant's alleged disclosures of his reading information. *See Coulter-*

2

*Owens*, 695 F. App'x at 121 (holding that "the disclosure of . . . information [reflecting a person's reading materials] is a cognizable injury in fact for purposes of Article III standing"). By affirming the district court's dismissal of the plaintiff's PPPA claim on the merits (on the grounds that his subscription was not purchased "at retail" within the meaning of the statute), after first finding that he had Article III standing, *Coulter-Owens* makes clear that Plaintiff Allix's Article III standing is not contingent on him having purchased his subscription directly from Defendant.[1]

And that makes sense. The injury giving rise to Plaintiff Allix's Article III standing was not his purchase of a Belvoir subscription, but rather was Defendant's disclosures of records reflecting his purchase of a Belvoir subscription to third parties. It was these disclosures, which were plainly traceable to Defendant (the disclosing

---

[1] Even though Plaintiff Allix's Article III standing does not depend on his purchase of a Belvoir subscription "at retail," Defendant attempts to prematurely shoehorn the "at retail" issue into the case by submitting a declaration from one of its employees (which also fails to answer questions relevant to determining if Plaintiff Allix's or any of the other original Plaintiffs' subscriptions were purchased "at retail" within the meaning of the statute). But now is not the time for the Court to resolve questions concerning the merits of Plaintiff Allix's claim. *See, e.g.*, *New York State Nat. Org. for Women v. Cuomo*, 182 F.R.D. 30, 35 (S.D.N.Y. 1998) (holding that considering an amendment is not the time to address the merits). The Court should thus decline to consider this unnecessary declaration in resolving Plaintiffs' Motion, just as it previously declined to consider similar extrinsic evidence in resolving Defendant's motion to dismiss (*see* ECF No. 37, PageID.1842 ("The Court declines to convert Belvoir's motion to dismiss to that for summary judgment and thus excludes the declaration proffered to refute plaintiffs' well-pleaded allegations that they were Belvoir subscribers.")). By that same token, the Court should decline Defendant's invitation to authorize a period of discovery concerning the various distracting and plainly irrelevant issues Defendant focuses on in the opposition brief before deciding the Motion. *See* ECF No. 44, PageID.2541-42.

3

party), that acutely invaded Plaintiff Allix's privacy in a concrete and particularized way, manifesting an injury-in-fact sufficient to satisfy Article III – regardless whether he purchased his subscription "at retail" or not.[2] *See Coulter-Owens*, 695 F. App'x at 121 (holding the plaintiff had standing to pursue a PPPA claim because "the violation at issue" involved "the privacy in one's reading materials"); *see also Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 676–77 (E.D. Mich. 2022) (explaining that "the nonconsensual dissemination of information that reflects a plaintiff's personal reading choices . . . inflicts harm in a concrete and particularized way—albeit intangibly," and is thus sufficient for purposes of Article III). Because Plaintiff Allix's Article III standing has existed since the outset of the case, the proposed amendment is not futile for lack of subject-matter jurisdiction. *See* 1 Newberg on Class Actions § 2:8 (5th ed.) ("Substitution among class representatives is otherwise allowed so long as there are several and at least one has standing throughout the case").

In fact, the proposed amendment is likely to succeed. Notably absent from

---

[2] Defendant nonetheless argues that Plaintiff Allix lacks Article III standing because he "is definitively not within the class of people to which the PPPA gives a protected privacy interest under binding Sixth Circuit precedent," having purportedly purchased his subscription from one of Defendant's third-party agents. ECF No. 44, PageID.2528-29 n.3 (emphasis added). Here again, Defendant confuses Article III standing, a jurisdictional requirement, with statutory standing, which concerns the merits of a claim. It is "statutory standing," not Article III standing (as Defendant argues), that "assesses whether a plaintiff is within a class of persons authorized by statute to sue, or, in other words, 'has a cause of action under the statute.'" ECF No. 37, PageID.1840 (quoting *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 391 (6th Cir. 2016)) (emphasis added). And a lack of statutory standing cannot deprive a federal court of subject-matter jurisdiction.

4

Defendant's opposition is any attack on the sufficiency of the claims alleged by Ms. Lynne Vandebunte and Mr. Steven Lepsetz (together, the "Proposed Plaintiffs"), who intend to serve as plaintiffs alongside Plaintiff Allix in the Proposed SAC. When the parties met and conferred on this Motion, counsel for Belvoir requested the Proposed Plaintiffs' names and addresses so Belvoir could locate them in its records, to determine whether it would consent to the proposed amendment. Plaintiffs' counsel promptly provided this information (as well as additional information concerning the Belvoir publications to which they subscribed and their unique subscription numbers). After Defendant searched its records, its counsel advised that Defendant would still not consent to the proposed amendment. In other words, after investigating the Proposed Plaintiffs' subscription histories and realizing that their claims are meritorious, Defendant not only refused to consent to the proposed amendment but is now fighting tooth and nail in opposition to the Motion (asserting one specious argument after another, to put it charitably) in an attempt to avoid having to defend against their claims on the merits – a remarkably disingenuous and wasteful litigation strategy.

**II.  The Proposed Amendment is not Futile on Statute of Limitations Grounds**

The Proposed SAC relates back to the Complaint's filing pursuant to Rule 15(c) for statute of limitation purposes, and the COVID tolling orders extended the applicable limitation period by 101 days (resulting in a period that spans from June 4-July 30, 2016). And the Proposed SAC, like the FAC before it, adequately states PPPA claims that accrued during that period. None of Defendant's arguments to the contrary

5

stands up to scrutiny.

**A. The Proposed SAC will Relate back to the Complaint's Filing**

Defendant argues that the Proposed SAC will not relate back to the Complaint's filing, so Lepsetz's and Vandebunte's claims are futile on statute of limitation grounds. This argument runs headlong into Rule 15(c).

Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back[.]". Fed. R. Civ. P. 15(c)(1)(A). And here, Michigan law specifically provides that "[t]he statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action." *Cowles v. Bank West*, 719 N.W.2d 94, 101 (Mich. 2006) (citing M.C.R. § 3.501(F)(1)); *see also Boelter v. Hearst Commnc'ns Inc.*, 269 F. Supp. 3d 172, 187-89 (S.D.N.Y. 2017) (applying M.C.R. 3.501(F)(1) in federal court, and finding that filing of PPPA class action tolled limitation period for putative class members).

Thus, because the Proposed Plaintiffs were within the putative class described in the initial Complaint, *see* ECF No. 1 ¶ 53, the Proposed SAC will relate back to the date the Complaint was filed for statute of limitation purposes. *See* Fed. R. Civ. P. 15(c)(1)(A); M.C.R. § 3.501(F)(1)); *see also, e.g., Boelter*, 2016 WL 11898864, at *3 (S.D.N.Y. Dec. 16, 2016) (in PPPA case, "Plaintiffs are correct that the [amending and adding plaintiff] relates back to original complaint and 'speaks as of' the date of original filing. Time-sensitive procedural issues, such as statute of limitation or standing, are

6

therefore evaluated as of the date of the original complaint.") (citing, *inter alia*, 6A Wright, Miller, & Kane, Fed. Prac. & Proc. § 1496 (3d ed. 2010)).

Defendant argues that the Proposed SAC will not relate back to the Complaint on the ground that Plaintiff Allix and the other Plaintiffs who filed the Complaint lacked Article III standing. *See* ECF No. 44, PageID.2532. This argument fails (and the cited legal authority is inapposite) because Article III standing has existed since the outset. *See supra* Part I.

The Proposed SAC relates back to the filing of the Complaint for statute of limitations purposes, and the proposed amendment is not futile on timeliness grounds.

**B. The COVID-19 Pandemic Orders Tolled the Applicable Limitation Period**

Defendant next argues that the Proposed Plaintiffs cannot benefit from tolling pursuant to the Michigan Supreme Court's "COVID Orders", rendering the proposed amendment futile on statute of limitations grounds.

But this Court has already concluded that the COVID Orders tolled the applicable statute of limitations for 101 days. ECF No. 37, PageID.1852-54. And because the Proposed SAC will relate back to the initial Complaint for statute of limitations purposes, *see supra* Part II.A, the statutory period applicable to the Proposed SAC (with the 101 days of tolling) will run from June 4, 2016 through July 30, 2016. *See* ECF No. 37, PageID.1853 (Court's calculation of relevant period).

Against this backdrop, the proposed amendment is plainly not futile. The Proposed SAC, like the FAC, alleges that "during the relevant pre-July 31, 2016 time

7

period," Defendant "continuously," and "<u>at least as frequently as once a month</u>," rented, exchanged, or otherwise disclosed the private reading information of its entire database of its Michigan-based subscribers, inclusive of Plaintiffs' reading information, to various third parties without its subscribers' consent. *See* FAC & Proposed SAC ¶¶ 1, 4, 6, 10 & 50-56. Thus, the Proposed SAC's allegations, like those of the FAC, show that Defendant's systematic practice of disclosing its customers' reading information to third parties, at least as often as once a month, would necessarily have occurred during the nearly two-month period of June 4-July 30, 2016. *See* ECF No. 37, PageID.1845-49 (Court finding such allegations stated a PPPA claim, and denying motion to dismiss).

Defendant also argues that the Proposed Plaintiffs' claims are futile because they would not benefit from tolling during the pendency of *Taylor v. Belvoir Media Grp., LLC*, No. 1:22-cv-477 (W.D. Mich.). But this is a red herring. In denying Defendant's motion to dismiss, this Court explained that the timeliness of Plaintiffs' claims (and thus the Proposed Plaintiffs' claims in the Proposed SAC) does not depend on tolling from *Taylor*, because they are timely even with only the benefit of tolling pursuant to the COVID Orders.[3] *See* ECF No. 37, PageID.1853 n.4 ("Because Plaintiffs' PPPA claims survive without class action tolling, the Court need not decide this issue now . . . Belvoir

---

[3] As explained in response to the motion to dismiss, "the Court need not reach this additional basis for tolling in order to deny the Motion because the six-year limitation period, with the benefit of tolling pursuant to the COVID-19 Orders (June 4[-]July 30, 2016), is of a sufficient duration for the Court to conclude that Plaintiffs have adequately stated claims for relief that accrued within that time[.]" ECF No. 19, PageID.1234.

8

may argue the unavailability of class action tolling to preserve such claims in a summary judgment motion."); *see also Boelter*, 269 F. Supp. 3d at 188-89 (finding that plaintiff's claims were tolled by the filing of a previous putative class action where that plaintiff did not have standing to represent the class, stating "Plaintiff could rely on *Grenke* even though it turned out that the *Grenke* plaintiff did not have standing to represent the class."). So while Defendant fixates on *Taylor*, baselessly accusing Plaintiffs' counsel of filing it as a "placeholder" (ECF No. 44, PageID.2521, 2523), the reality is that *Taylor* has no relevance to the issues before the Court in deciding the Motion.

Finally, Defendant argues that the Proposed Plaintiffs are not entitled to any form of tolling on the basis that the Plaintiffs in the initial Complaint lacked Article III standing. *See* ECF No. 44, PageID.2536-37. This argument fails because, as noted, Article III standing has existed since the outset. *See supra* Part I.

Accordingly, even without the benefit of class tolling from *Taylor*, the Proposed Plaintiffs' claims are timely as a matter of law with the benefit of tolling pursuant to the COVID Orders. The proposed amendment is not futile on timeliness grounds.

### III. There has been no "undue delay," "bad faith" or "gamesmanship"

Lastly, Defendant argues that the Motion should be denied because of a "lack of diligence, undue delay, bad faith, and prejudicial gamesmanship" on the part of Plaintiffs and their counsel. *Id.*, PageID.2538. Nothing could be further from the truth.

Although Defendant claims that "Plaintiffs have delayed for over 17 months to try to find a suitable named plaintiff" (*id.*, PageID.2540), the reality is that Plaintiffs filed

9

the instant Motion just two months after Defendant filed its Answer to the FAC. Defendant's Answer was the first pleading in which Defendant denied any of the Plaintiffs had purchased subscriptions from Defendant "at retail" prior to July 31, 2016.

Defendant also baselessly argues that "Plaintiffs' counsel clearly failed to conduct an adequate investigation prior to filing their complaints or conducted an adequate investigation and used inadequate plaintiffs as placeholders." *Id.*, PageID.2540-41. All of the Plaintiffs have consistently and credibly maintained, including during counsel's investigation prior to the filing of this action, that they purchased Belvoir subscriptions prior to July 31, 2016 while residing in Michigan. Upon reviewing Defendant's statements concerning Plaintiffs' subscribership in its motion to dismiss and accompanying declaration, and the formal denials to allegations of the FAC in its Answer, Plaintiffs' counsel promptly conferred further with each Plaintiff concerning Defendant's statements and requested that they continue searching for records evidencing their Belvoir subscriptions purchases. And while each Plaintiff continues to maintain that he or she purchased a Belvoir subscription prior to July 31, 2016 while residing in Michigan, the passage of time between the pre-July 31, 2016 period and the present has unfortunately resulted in most of them being unable to locate their purchase records. Thus, to protect the interests of the putative class, Plaintiffs' counsel promptly began communicating with and investigating potential claims of other Michigan subscribers who were able to locate proof of purchase of a Belvoir subscription prior to July 31, 2016. And immediately after being retained by the Proposed Plaintiffs,

10

Plaintiffs' counsel commenced a thorough meet and confer process, and, upon request, provided extensive information concerning the Proposed Plaintiffs in hopes of obtaining Defendant's consent to the filing of the Proposed SAC. These efforts were undertaken by Plaintiffs' counsel with diligence and expediency, with the best interests of the class in mind. *See, e.g., Lin*, 2020 WL 2043527, at *1–2 ("Allowing this amendment will not cause undue delay[,]" where, following the Answer, "[o]nly 20 days later, Lin filed this motion to add additional class representatives. This does not begin to approach undue delay."); *Kittle*, 2019 WL 6496596, at *1 ("[T]he Court finds [PPPA plaintiff] did not engage in undue delay by taking approximately 30 days to identify additional potential class representatives and file a motion for leave to amend[.]").

Nor have Plaintiffs or their counsel exhibited any "bad faith" or "gamesmanship," "prejudicial" or otherwise, in filing the Motion. It was filed roughly two months after the filing of the Answer, following the Court's denial of the motion to dismiss, and after a lengthy meet and confer process. Courts of this District presiding over other PPPA actions, at analogous stages of litigation, have consistently rejected defendants' attempts to attribute "bad faith" motives to plaintiffs' counsel for seeking leave to add additional plaintiffs. *See Lin*, 2020 WL 2043527, at *1–2 (rejecting argument that the plaintiff's "attempt to amend is done in bad faith because [he] fails to provide proof of standing to support his PPPA claim," explaining that "this Court already determined that [plaintiff] has standing to bring suit" and "[plaintiff] seeks to add class representatives a mere 20 days after [defendant] filed its Answer," and finding that

11

"[plaintiff] properly sought leave in good faith to add two more plaintiffs who were subscribers during the class period") (citation omitted); *Kittle*, 2019 WL 6496596, at *1 (court found "no evidence of bad faith or repeated failure to cure previous deficiencies" and "d[id] not believe permitting [the filing of the] Amended Complaint will cause prejudice to Defendant" where the allegations remained largely the same, and where it took roughly 30 days for a PPPA plaintiff to identify additional representatives and file a motion for leave to amend). Simply put: Defendant fails to show any "bad faith" or "gamesmanship" by Plaintiffs or their counsel, because there has been none. *See Aguilar v. Boulder Brands, Inc.*, 2014 WL 4352169, at *4 (S.D. Cal. Sept. 2, 2014) ("Defendant has the burden of establishing that Plaintiff's proposed amendment is made in bad faith.").[4]

## CONCLUSION

For the foregoing reasons, the Motion should be granted.

Dated: February 8, 2024       Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

---

[4] Additionally, Defendant cites no prejudice, let alone any "significant prejudice," that it would suffer if the proposed amendment is permitted. *See Duggins v. Steak N' Shale, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("To deny a motion to amend, a court must find at least some significant showing of prejudice to the opponent.").

12

>Joseph I. Marchese **(P85862)**
>Philip L. Fraietta (P85228)
>BURSOR & FISHER, P.A.
>1330 Avenue of the Americas, 32nd Floor
>New York, New York 10019
>Tel: 646.837.7150
>Fax: 212.989.9163
>jmarchese@bursor.com
>pfraietta@bursor.com
>
>Frank S. Hedin
>Arun G. Ravindran
>**HEDIN LLP**
>1395 Brickell Avenue, Suite 1140
>Miami, Florida 33131
>Tel: 305.357.2107
>fhedin@hedinllp.com
>aravindran@hedinllp.com
>
>*Attorneys for Plaintiffs and*
>*the Putative Class*

## **CERTIFICATE OF SERVICE**

I, E. Powell Miller, an attorney, hereby certify that on February 8, 2024, I served the above and foregoing brief on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF system.

*/s/ E. Powell Miller*
E. Powell Miller
